Pages 1  -  28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CR 17-0533 EMC |
| | ) | |
| JEREMY DANIEL GREER, et al, | ) | |
| | ) | San Francisco, California |
| Defendants. | ) | Wednesday |
| | ) | December 13, 2017 |
| | ) | 2:30 p.m. |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

| | |
|---|---|
| **For Plaintiff:** | BRIAN STRETCH |
| | United States Attorney |
| | 450 Golden Gate Avenue |
| | San Francisco, California  94102 |
| BY: | **KEVIN JAMES BARRY** |
| | **ERIN A. CORNELL, ESQ.** |
| | **ASSISTANT UNITED STATES ATTORNEYS** |

| | |
|---|---|
| **For Defendant Burke:** | LAW OFFICES OF ERIK BABOCK |
| | 717 Washington Street |
| | 2nd Floor |
| | Oakland, California 94607 |
| BY: | **ERIK G. BABCOCK, ESQ.** |

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
*Official Reporter - US District Court*
*Computerized Transcription By Eclipse*

**APPEARANCES:   (CONTINUED)**

For Defendant            LAW OFFICES OF MICHAEL CLOUGH
Lyles:                   6114 LaSalle Avenue
                         Suite 833
                         Oakland, California 94611
                   BY:   **MICHAEL WILLIAM CLOUGH, ESQ.**


For Defendant            LAW OFFICES OF GARY K. DUBCOFF
Ranieri:                 584 Castro Street
                         Suite 439
                         San Francisco, California 94114
                   BY:   **GARY K. DUBCOFF, ESQ.**


                         **MARK G. MILIOTIS**
                         Attorney at Law
                         63 Atlantic Avenue
                         Third Floor
                         Boston, Massachusetts 02110


For Defendant            LAW OFFICES OF BRIAN P. BERSON
Cliff:                   1000 Branon Street
                         Suite 488
                         San Francisco, California 94103
                   BY:   **BRIAN P. BERSON, ESQ.**


For Defendant            **JAI M. GOHEL**
Nelson:                  Attorney at Law
                         819 Eddy Street
                         San Francisco, California 94610


For Defendant            LAW OFFICES OF HARRIS B. TABACK
Diaz:                    345 Franklin Street
                         Suite 102
                         San Francisco, California 94102
                   BY:   **HARRIS BRUCE TABACK, ESQ.**

```
 1   APPEARANCES:   (CONTINUED)

 2

 3   For Defendant          LAW OFFICE OF ROBERT WAGGENER
     Ott:                   214 Duboce Avenue
                            San Francisco, California 94103
 4                     BY:  ROBERT FREDERICK WAGGENER, ESQ.

 5

 6   For Defendant          PETER L. ARIAN LAW OFFICES
     Greer:                 407 San Anselmo Avenue
 7                          Suite 201
                            San Anselmo, California 94960
 8                     BY:  PETER LANGDON ARIAN, ESQ.

 9

10   For Defendant          LAW OFFICES OF ERICK L. GUZMAN
     Cesena:                740 4th Street
11                          Santa Rosa, California 95404
                       BY:  ERIK L. GUZMAN, ESQ.
12

13                           —   —   —

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Wednesday - December 13, 2017**                    **2:53 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---000---** |
| 4 | **THE CLERK:**  Calling Case CR 17-0533, USA versus |
| 5 | Jonathan Nelson, Russell Lyles, Jeremy Greer, Russell Ott, |
| 6 | Christopher Ranieri, Damien Cesena, Brian Burke, Jason Cliff, |
| 7 | and David Diaz. |
| 8 | Counsel, please come to the podium and state your name for |
| 9 | the record. |
| 10 | **MR. BARRY:**  Good afternoon.  Kevin Barry for the |
| 11 | United States. |
| 12 | **THE COURT:**  All right, Mr. Barry. |
| 13 | **MS. CORNELL:**  Erin Cornell for the United States, |
| 14 | your Honor. |
| 15 | **THE COURT:**  All right.  Thank you, Ms. Cornell. |
| 16 | **MR. BABCOCK:**  Good afternoon, your Honor.  Erik |
| 17 | Babcock for Brian Burke, who is present in the light blue shirt |
| 18 | directly behind me.  Present out of custody. |
| 19 | **THE COURT:**  All right.  Thank you.  And good |
| 20 | afternoon, Mr. Burke. |
| 21 | **MR. CLOUGH:**  Michael Clough for Mr. Lyles, who is |
| 22 | right there in custody. |
| 23 | **THE COURT:**  All right.  Good afternoon, Mr. Lyles. |
| 24 | **MR. DUBCOFF:**  Good afternoon, your Honor.  My name is |
| 25 | Gary Dubcoff.  I'm going to be local counsel for |

1    Mr. Christopher Ranieri.

2          With me is Mark Miliotis, who has come in from Boston.

3    He's in the process of completing his pro hac vice admission

4    papers and we anticipate he will be admitted soon.  He's going

5    to be ultimately representing Mr. Ranieri.

6                **THE COURT:**  All right.  Thank you.  Good afternoon.

7                **MR. MILIOTIS:**  Thank you.

8                **THE COURT:**  And Mr. Ranieri is here, right?

9                **MR. DUBCOFF:**  Yes.  Second from the left, your Honor.

10               **MR. BERSON:**  Good afternoon, your Honor.  Brian

11   Berson.  I'm here for Jason Cliff, who is second to your right

12   back there out of custody.

13               **THE COURT:**  All right.  Thank you, Mr. Berson and

14   Mr. Cliff.

15               **MR. GOHEL:**  Good afternoon, your Honor.  Jai Gohel

16   appearing as counsel for Jonathan Nelson.  He's in the black

17   suit, black tie to the left.

18               **THE COURT:**  Good afternoon.  Good afternoon, Mr.

19   Nelson.

20               **MR. TABACK:**  Good afternoon, your Honor.  Harris

21   Taback appearing for Mr. David Diaz, who is present and

22   pointing.  He just acknowledged his appearance.  Thank you.

23               **THE COURT:**  Thank you, Mr. Taback.  Good afternoon,

24   Mr. Diaz.

25               **MR. ARIAN:**  Good afternoon, your Honor.  Peter Arian

```
 1   for Jeremy Greer.  He is present in court.  He is in custody.
 2   He is to my right seated in orange.
 3               THE COURT:  All right.  Thank you for that.  Mr.
 4   Greer.
 5               MR. WAGGENER:  Good afternoon.  Robert Waggener
 6   appearing for Russell Ott, who is in custody.  He's the
 7   gentleman over here in the red.
 8               THE COURT:  Thank you.  Good afternoon, Mr. Ott.
 9               MR. GUZMAN:  Good afternoon, your Honor.  Erick
10   Guzman on behalf of Damien Cesena, who is present out of
11   custody.  The gentleman with the blue tie and white shirt.
12               THE COURT:  All right.  Thank you and good afternoon,
13   Mr. Cesena.
14      Okay.  This is the first appearance before me in this
15   matter.  Let me just take stock in terms of there were a total
16   of 11 defendants that were indicted?
17               MS. CORNELL:  Yes, your Honor.
18               THE COURT:  And so we have nine defendants here.
19               MS. CORNELL:  That's correct.  One, Mr. Wendt, is
20   currently being transported here from Fresno, from the Eastern
21   District.  I understand that he should be here on the 17th,
22   which I realize is Sunday, but that's what the Marshals told
23   me.
24      The other Defendant, Mr. Foakes, is in BOP custody in
25   Atwater and he will be transferred here, I understand from the
```

```
 1   Marshals, on the 21st of December.
 2            THE COURT:  Okay.  All right.  So maybe you can -- I
 3   did receive the Government's pre-status conference statement
 4   and I appreciate that.  Maybe you can elaborate in terms of
 5   where we are with respect to discovery.
 6            MS. CORNELL:  Yes, your Honor.
 7            THE COURT:  And provision of the discovery to defense
 8   counsel.
 9            MS. CORNELL:  Yes, your Honor.
10      So we are -- as your Honor, I'm sure, can imagine, there
11   is a lot of witnesses and victims in this case, a lot of
12   sensitive material.  We are currently going through it and
13   reviewing it and preparing it for production.
14      In compliance with the local rules we did have a meeting
15   last Friday that a number of the defense counsel did
16   participate in to discuss discovery matters.  We had circulated
17   a proposed protective order last week.  I believe it was last
18   week.  And at defense counsel's suggestion at last Friday's
19   meeting I received before court today from Mr. Berson a draft
20   of an *attorneys' eyes only* protective order that would cover
21   just some initial small production of documents to kind of get
22   things going.  But that's where it stands.
23      And as you know, Mr. Guzman filed a Motion to Compel
24   discovery, which was extremely premature.  It's the -- the
25   hearing on that has been continued til early January, but the
```

1    Government is working diligently to begin the production of

2    discovery and get it out as soon as possible.  As we noted in

3    the report it would be, we expect, within the next 30 days.

4            THE COURT:  All right.  So first of all, the

5    protective order including the *attorney's eyes* provision, do

6    you expect that to be finalized and on file soon?

7            MS. CORNELL:  Yes.  It's a temporary *attorneys' eyes*

8    *only* protective order for the initial production.

9        And I believe we're still negotiating the terms of the

10   larger protective order that would govern the majority, the

11   remainder of the discovery in this case.

12       So that initially, I would suspect, probably before the

13   end of the week, we would get the *attorneys' eyes only*

14   protective order on file with your Honor.

15           THE COURT:  And what about for the more general

16   protective order?

17           MS. CORNELL:  I would hope by the end of next week at

18   the latest.  Do you want to...

19           MR. BARRY:  Sorry, your Honor.

20       There are -- I want to just clear up some confusion that I

21   think we've created.  So the -- we circulated a protective

22   order for all counsel that the Court would enter into and it

23   would be an order in force on everyone.

24       The defense counsel at the meet-and-confer suggested that:

25   Hey, we don't want to enter into a protective order before

1  everybody is in the case.  So the proposal was for a limited

2  among-the-parties agreement to keep things *attorneys' eyes only*

3  period with some discussions about the contents, but not

4  sharing the contents.

5       We don't envision that protective order being entered into

6  as the global one for the rest of the case.  It's sort of just

7  a:  Well, we'll give you some materials pursuant to this

8  agreement among counsel to give you an idea of what the scope

9  of the case is about.  And then the larger protective order we

10 are negotiating, but at defense counsel's request we are

11 putting the brakes on that until everyone gets -- until

12 everyone shows up.

13          **THE COURT:**  And that includes the other two

14 defendants who are not here yet?

15          **MR. BARRY:**  That's correct.  We would be happy with

16 entering into an agreement with the people who are here and

17 then adding those other people, the latecomers, to it.  But for

18 the moment, the request has been to just wait until all 11 show

19 up.

20          **THE COURT:**  Okay.  Someone want to comment on the

21 defense counsel side?

22          **MR. BERSON:**  I'll comment.

23       First of all, as to the status conference statement, I

24 think there was a misunderstanding.  On Page 4 it says the

25 defense -- this is talking about our meeting with them last

 1   week, which most, but not all, of us were there.

 2        The defense acknowledged that the Government has

 3   significant safety concerns for witnesses and I think they

 4   misunderstood us.  We don't acknowledge that.  We acknowledge

 5   that they think they have safety concerns, but we don't have

 6   any discovery yet.

 7        I'm representing a client in his 50's, who has never been

 8   charged with any violent crimes before.  So I don't acknowledge

 9   that.

10        We are waiting for other defense counsel to arrive and

11   discuss amongst ourselves, but I don't -- we may end up having

12   to litigate the terms of the permanent protective order in

13   front of your Honor.  I personally have some issues with it.  I

14   would like to have an opportunity to discuss it with everybody

15   else, but there is a chance we're going to have to ask for your

16   Honor to get involved in those negotiations, so -- but -- but

17   we don't have anything yet.

18        So this temporary protective order that I've proffered

19   will give us a little bit of an idea, I think, of what we're

20   talking about.  For example, medical records they can redact

21   out.  I don't even know why we need a protective order for

22   that, but they are going to, I think, redact out the

23   identifying information about supposed victims that their

24   medical records are regarding.

25        We'll take a look at what else they have and we'll try to

1    meet with them and we'll try to work out the terms, but it's

2    possible we'll have to get you involved.

3            **THE COURT:**  All right.  When will you -- well, has

4    counsel been already appointed or identified for the other two

5    defendants?

6            **MR. BARRY:**  I don't think so, your Honor.  One of

7    them had counsel in a previous Form 12, but I don't know if

8    it's going to be the same person and we're not sure about the

9    last person who arrived.

10           **THE COURT:**  So it sounds like it's going to take some

11   time to appoint counsel and, therefore, it's going to take some

12   time for defense counsel to coordinate and figure out their

13   position and discuss with the Government the form of the

14   permanent protective order.

15           **MR. BERSON:**  I think that's fair to say.

16           **THE COURT:**  I think that's something we will know by

17   mid-January, whether you're going to need my intervention or

18   not?

19           **MR. BERSON:**  Well, I'm hoping so.  If we have -- I

20   don't know the timing on other counsel coming in, but if that

21   happens pretty quickly, then we should know whether we're going

22   to have to duke it out by mid-January, yes, sir.

23           **THE COURT:**  All right.  Well, let's set a kind of

24   preliminary target date to see if we can resolve the permanent

25   protective order.  Let's just set a target date and you can

```
 1   report back to me, but let's say January 19th?

 2           MR. BARRY:  And that, your Honor, would be for a

 3   status report?

 4           THE COURT:  Yeah.  I'll set it for a -- that's not

 5   necessarily a status conference yet.  That's just a date to try

 6   to resolve the protective order.  And then we'll probably

 7   schedule something shortly thereafter, but I just want to give

 8   you a date to shoot for so this doesn't hang out there

 9   indefinitely.

10       What kind of discovery between now and then -- whenever

11   you resolve the protective order, what -- it sounds like you

12   have been in some discussions about some preliminary

13   disclosures.  And you mentioned 30 days.  So what's going to

14   happen in the next 30 days?

15           MS. CORNELL:  I believe under the *attorneys' eyes*

16   *only* protective order it would be maybe some initial reports,

17   possibly the search warrant affidavit redacted; isn't that

18   correct?

19           MR. BARRY:  Yes.

20           MS. CORNELL:  And then maybe some medical records.

21   Those are the initial.

22           MR. BARRY:  And there are some things, your Honor,

23   that are not controversial.  For instance, there was a big

24   cache of weapons that was seized in Minnesota.  There are no

25   witness issues there.
```

```
 1        The only question, it's just a mechanical one of us

 2   processing it, getting its Bates numbered and then figure out

 3   the mechanics of how to distribute it to the defendants in

 4   terms of whether it's a discovery coordinator, whether it's a

 5   document repository, whether there's an online service or what

 6   are the mechanics of that.

 7        But there is some -- there are some materials that are

 8   non-controversial that we can just turn over, but we do have to

 9   process that within the batch of everything else.

10        And just one thing I do want to highlight, because I think

11   there will be some fights about this, is that this is a case

12   that is heavily dependent on witness statements.  And pursuant

13   to every RICO case that we've done in this district, the

14   Government will be seeking to delay disclosure of that material

15   because of the nature of the charges and the nature of the

16   organization we're alleging until the very last possible

17   moment.

18        So there will be holes in -- you know, in the defense's

19   perception of:  Well, what's the Government's theory of the

20   case?  We don't know because we don't have these witness

21   statements.  But we will not be producing those until the

22   absolute last minute before trial pursuant to what the Court

23   decrees.

24            THE COURT:  Let me ask, what discussions have you had

25   about sequencing and timing of things?
```

```
 1          MR. BARRY:  We really haven't.  I've just alerted
 2  them to this reality.
 3      And the discussion we had last week was just, you know,
 4  what type of materials are there.  Are there wiretaps?  Are
 5  there phone records?  Are there search warrants?  You know,
 6  what type of material do we have in the universe to look at?
 7  But we haven't talked about a cycle of production.  Things are
 8  very preliminary.
 9          MR. BERSON:  And, your Honor, the more I hear
10  Mr. Barry talk, the more I'm thinking we're going to have to
11  bring this before you because we need to be able to confront
12  our accusers, obviously, and they have a competing concern that
13  seems to be getting in the way of that.
14      So we're going to try to work it out, but, I mean, we need
15  to -- we need to know who they are and what they are saying.
16  It's kind of hard to defend against things otherwise.
17          THE COURT:  Well, all right.  I mean, we're going to
18  cross this bridge one way or another.  It does seem to me that
19  based on prior experience there are things that can be done.
20  We're going to -- we may have to address the precise timing of
21  witness disclosure statements, victim statements, their CIs, I
22  don't know, whatever.  That's always an issue in these cases.
23      But there are things that can be done in advance so to
24  give the defense a fair understanding of what the case is.
25  What are the -- what's the scope?  What are the predicate acts,
```

 1    RICO or -- you know, for the underlying conspiracy?  What are

 2    the particular acts as to each defendant?  Whether that's done

 3    through motions work, through some kind of reverse proffer or

 4    Bill of Particulars or something, but I think that's something

 5    I'd like you all to think about, as to how we could get, you

 6    know, a reasonable amount of information so the defense can

 7    assess their case and what to do, at the same time not

 8    unreasonably compromise the safety of witnesses.

 9        But what I'm suggesting is not necessarily an all or

10    nothing.  There's ways of at least beginning that process.  And

11    depending on what the documents show, that may also enlighten

12    the defense to some degree.

13        So this is evolving, but I want to make it clear that I do

14    expect -- you know, we're not going to have trial by ambush

15    here.  There is going to have to be sharing of information so

16    the defense can plan their steps.

17        What -- on the defense side do you have in mind a

18    structure in terms of once documents are ready to be produced,

19    how those going to be handled?  A coordinator or --

20        **MR. BERSON:**  We have been talking.  We've been

21    talking about it.  We have appointed counsel.  We have retained

22    counsel.  We had a meeting before we showed up here today.

23    Actually, a second meeting for a number of us.

24        We are, of course, probably familiar with Colour Drop.

25    We're, I think, leaning towards utilizing that as our

1    depository for further defense dissemination.  And we were in

2    discussions amongst ourselves about getting one or more

3    paralegals involved to assist us.

4              THE COURT:  So there is going to be one person in

5    charge of -- for coordinating and distributing?

6              MR. BERSON:  Probably.  Probably.  You know, I don't

7    know.  We haven't discussed the details, but what I'm thinking

8    is maybe having the paralegal responsible for distributing

9    things that are given to Colour Drop once we start getting

10   things.  I don't know if that answers your question.

11             THE COURT:  There going to be somebody sort of being

12   the point person in terms of --

13             MR. BABCOCK:  Mr. Berson.

14             MR. BERSON:  No, no.  It's not going to be

15   Mr. Berson.  My client is only charged in two discounts.

16             MR. ARIAN:  Your Honor, I have had discussions with

17   the CJA administrator about how we're going to coordinate with

18   private counsel and how CJA appointed counsel are going to deal

19   with this issue.

20        And right now we can't assess that situation because we

21   actually don't know the scope of the discovery that's going to

22   be provided to us.  I can't provide to the Court information in

23   a black box about our needs related to paralegal hours, number

24   of paralegals or how to manage what is obviously going to be a

25   complex case when I don't have an accurate assessment of the

1   Bates ranges, hours of recordings, things of that nature.

2       My understanding right now and my concerns are going to be

3   more -- I understand there is going to be a number of cell

4   phone dumps.  That can be quite full voluminous.

5       So until we get an initial idea or report from the

6   Government, maybe in their status statement or the next status

7   statement, about the scope of this discovery in terms of hours

8   of recording.  We understand -- in our conference we understood

9   there is no wiretap in this case, for instance.  So that

10  alleviates one concern.

11      But we don't know about the numbers of hours of

12  recordings.  We don't know about the possibility for number of

13  pages, PDFs, other types of information.  Once we get that, we

14  would be able to report back to the Court, I think efficiently,

15  what our needs would be and be able to work with CJA.

16      **THE COURT:**  All right.  So when will the Government

17  know at least the scope, the size of -- either number of hours,

18  number of documents; a rough idea so we know what the universe

19  is without getting into exact content, what it looks like, how

20  big?

21      **MR. BARRY:**  We have an idea in terms of gigabytes.  I

22  just don't have the -- I don't have that handy.  Like, I've

23  seen the -- we have the FBI case file.  We're just in the

24  process of processing it.  Like, making sure it's Bates ranged

25  and indexed.

1          But, yeah, there are -- yeah, I -- maybe in two weeks we

2     can give the defendants an idea of what the universe is,

3     roughly.

4          **THE COURT:**  All right.  Good.  So I'd like you all to

5     discuss within the next two to three weeks for the information

6     they provide, so you have that information.  At least you know

7     the scope.  Because I'd like to know what the structure is,

8     whether you're going to have one person kind of be coordinator

9     or you're going to bring in...

10         **MR. ARIAN:**  Exactly.  And without that, once they

11    give us that information, you know, the appointed counsel in

12    this case shall happy to work with -- with Ms. Wise from CJA

13    and figure out if we're going to need a discovery coordinator

14    or what the actual process would be.

15         **THE COURT:**  All right.  So there is the question

16    about the volume and scope, which will then lead your

17    organization how to structure your team.

18         **MR. ARIAN:**  Correct.

19         **MR. TABACK:**  Harris Taback, your Honor, on behalf of

20    retained counsel.

21         Perhaps I would say that we would be also working with CJA

22    counsel to review the appropriate way to sort of proceed with

23    getting the discovery, both coordinated and copied, and we

24    would pay our fair share.  So we would be working hand-in-hand

25    with CJA counsel in that.

1          **THE COURT:**  Thank you.

2      Do we need to address the documents, whether they will be

3   produced in some organized fashion, indexed or format?  Those

4   issues, have you discussed any of that?

5          **MR. BARRY:**  I think we can work that out with

6   counsel.

7          **THE COURT:**  All right.  I'd like a report on that

8   next time we meet because I want to make sure we don't -- we go

9   deep into this case and find out, you know, they have a lump of

10  undecipherable documents.

11         **MR. BARRY:**  And that's also part of the thing -- the

12  reason that we may be able to turn some stuff over that

13  wouldn't have witness concerns.  But, again, in order to make

14  it understandable as to where it's from and what it relates to,

15  you know, everything has to be done at once.

16         **THE COURT:**  All right.  Is it premature to talk now

17  about expected motions?

18         **MR. ARIAN:**  Yes.

19         **MR. TABACK:**  Yes.

20         **MR. BABCOCK:**  Yes.

21         **THE COURT:**  We will want to talk about that sooner.

22  If there is going to be some motion, I want to talk about the

23  sequencing and timing of that.

24      Once you get into the case, obviously, you're going to

25  have a chance to do some investigation in this case, but we're

 1   going to have to address that.

 2        The Government's statement also mentions the possibility

 3   of potential conflicts.  I don't know if that's something that

 4   needs to be addressed now.

 5             MR. GOHEL:  Yes, your Honor.  Jai Gohel for Jonathan

 6   Nelson.

 7        Your Honor, there are a few of the attorneys in this case

 8   who have represented more than one individual who happens to be

 9   a member of this particular motorcycle club.

10        I have represented two individuals that are co-defendants

11   in this case.  However -- in this case.  However, I'll let

12   other counsel speak for themselves.

13        I did bring this up initially at the very first appearance

14   in front of, I think it was, Magistrate Kim that this, I guess

15   you could call potential conflict existed.  I can tell the

16   Court that we are prepared, and I think we'll work with the

17   Government to satisfy them and the Court.

18        I mean, it's more of an issue of successive representation

19   that fashion the waivers from our clients, co-defendants,

20   et cetera that will satisfy, I think, the Government and the

21   Court that these conflicts are not actual conflicts and that

22   there are appropriate waivers that can be drafted.  So I think

23   that's all I have on that.

24             THE COURT:  Anybody else in that same boat?

25             MR. TABACK:  Yes, your Honor.  I have represented a

1    co-defendant in this matter back in, I think it was the very

2    late 1990's or early 2000s that went for a few years.  And he's

3    not been brought to district yet.  He hasn't arrived, so he's

4    not been given counsel or he's not retained counsel yet in this

5    case.

6        I have spoken with my client in this case.  He is aware of

7    that.  He has informed me that he is willing to enter into a

8    waiver on the record and, frankly, I -- I think that would be

9    sufficient; but to err on the side of caution, you know, we're

10   looking into whether or not the prior client would need to

11   weigh in as well.  And if that is the case, I would proceed

12   through his lawyer in order to obtain such a waiver.

13       But my understanding also is that the Government is not

14   moving to conflict me out of this case; that it just wants the

15   Court aware of this issue.  And I was the first one to bring it

16   up at the initial appearance for my client in magistrate's

17   court.  When I first saw the unsealed indictment, I immediately

18   notified the United States Attorney, as well as Magistrate

19   James of the issue.

20           **THE COURT:**  And I'm assuming that what I've heard so

21   for the successive representation, prior representation, has

22   nothing to do with this case.

23           **MR. TABACK:**  That is correct.  Other than, you know,

24   at the time I represented him, he was a member of the Hell's

25   Angels motorcycle club.

1        **THE COURT:**  All right.  Well, we may have to look

2   into the issue and maybe you should look into the issue of

3   whether or not you need to get consent or waiver from prior

4   client.

5        **MR. TABACK:**  That's being researched probably as we

6   speak.

7        **MR. BARRY:**  And the Government's interest here is to

8   avoid five years down the road a 2255 by saying:  I got

9   ineffective representation because there was this waiver that

10  was unwaivable or something.

11       We're not trying to pry into any counsel's relationship

12  with the current or former clients.  The main thing we want to

13  clear is to just make sure that it's been discussed; that

14  whatever needs to be done to avoid the future parade of

15  horribles is done right now.

16       **THE COURT:**  Have you looked into the question of

17  whether these are waivable, assuming it's not the same subject

18  matter, but successive clients?

19       **MR. BARRY:**  Again, I could, but I almost saw that

20  it's really not my fight, you know.  It's -- you know, I'm

21  trying to avoid catastrophe later, but, still, you know,

22  it's --

23       **THE COURT:**  Well, I think even though it's not your

24  fight, it is of your concern and the Court's concern.  I would

25  like you to confirm, and I think counsel should as well make

1   sure that these are waivable.

2       My suspicion is that it's not the same subject matter it

3   is, but I don't want to proceed on the wrong assumption, so I

4   would like both parties to look at that question.

5           **MR. GUZMAN:**  Your Honor?

6           **THE COURT:**  Yes.

7           **MR. GUZMAN:**  Erick Guzman on behalf of Damien Cesena.

8       I also have represented members that are now co-defendants

9   in this case on previous cases.  I've spoken with their

10  counsel.

11      I'm confident that no actual conflict will arise and that

12  the prior defendants and/or the prior clients are willing to

13  waive any potential conflict, but we were very aware of the

14  issue and are on top of it:

15          **MR. CLOUGH:**  If I could just add -- I represent

16  Mr. Lyles.  I don't represent -- I represent just Mr. Lyles.

17  I've never represented anybody else.

18      However, I would alert the Court -- and obviously for

19  reasons don't want to name him -- there is an attorney who I

20  think may come into the case for Mr. Wendt who has previously

21  been involved in representing Mr. Lyles, but I know that

22  Mr. Lyles has already communicated to me that he would waive

23  any conflict.

24      But, obviously, the issue of that Defendant would only

25  come up once and so I just want to alert you to that one other

1    issue.

2          **THE COURT:**  Thank you.  Anybody else?

3       (No response.)

4          **THE COURT:**  All right.  So I think we should find

5    out -- and I'd like both sides to look into the question to

6    confirm that this is a situation where representation of any

7    conflict is waivable.  I suspect it is.  And if it is, I think

8    the safest route is to get waivers from both the prior and

9    current client.

10      All right.  Any other matters that we need to cover today?

11      (No response.)

12         **MR. BABCOCK:**  Set another date, your Honor.

13         **THE COURT:**  We should set another date that allow

14   some of the things I mentioned, meeting-and-conferring about

15   the line and scope, the protective order, et cetera, et cetera.

16   And then the commencement.

17      It sounds like it might make sense and to allow the two

18   other defendants to arrive and make their appearances.

19         **MR. BABCOCK:**  Sooner rather than later.

20         **THE COURT:**  Yeah.  I'm thinking towards the end of

21   January.

22         **MR. BARRY:**  Speaking selfishly for me, and possibly

23   dragging Mr. Waggener in, he and I are in a RICO trial in front

24   of Judge Orrick which is scheduled to wrap up hopefully by

25   early February.  So a little bit of time after that might be

1    more productive.

2              THE COURT:  Thoughts on the other side?

3              MR. BABCOCK:  I always prefer to keep on them, so to

4    speak, a little bit on the --

5              THE COURT:  I don't want to go too long.  I don't

6    want to go more than 60 days.  So I'm willing to set this for

7    early February.  February 7th at 10:00 a.m.

8              MR. BABCOCK:  Is that a special setting or are you

9    changing the calendar?

10             THE CLERK:  I'm changing it to 10:00 o'clock because

11   of the big group, but our regular calendar is 2:30.

12             MS. CORNELL:  Just to clarify, your Honor, the

13   January 19th, date you just want to status report from the

14   Government on that date?

15             THE COURT:  Yes, yes.  You don't have to appear, but

16   I'd like to see where you're at on that.

17             MS. CORNELL:  Okay.

18             MR. BABCOCK:  I'm not available the 7th, your Honor.

19   I have a matter in front of Judge Koh, but I'm sure one of my

20   colleagues can appear for me that day.

21             THE COURT:  All right.  Well, let's see, how about

22   the 6th?

23             THE CLERK:  We can do the 6th at 2:00 o'clock?

24             MR. BABCOCK:  That works for me.

25             MR. WAGGENER:  That's fine by me.  Robert Waggener.

```
 1   I'm in trial in front of Judge Orrick, but we're done by 1:00
 2   o'clock.
 3             MR. BABCOCK:  2:00 o'clock on February 6th?
 4             THE COURT:  Two o'clock on the 6th.  Exclusion of
 5   time?
 6             MR. BARRY:  Yes.  I think it's appropriate, your
 7   Honor, in light of the discovery, the effective preparation of
 8   counsel.  And I don't know if the Court yet is prepared to
 9   enter an order of complexity, but it's up to you.
10             THE COURT:  All right.  Any thoughts on that?
11             MR. BABCOCK:  No objection at this point based on the
12   defense need to investigate the case.
13             THE COURT:  All right.
14             MR. BABCOCK:  And I'm guessing it's complex, but I
15   really don't know the specifics yet, so.
16             THE COURT:  Why don't we defer the complex
17   determination?  It's likely to apply here, but for now, unless
18   there is some objection, I will exclude time between now and
19   the next hearing on this case, which is February 6, 2018 on the
20   grounds that time is needed for effective preparation of
21   defense and in light of the discovery that needs to be produced
22   and all the matters we just talked about.  I find that the ends
23   of justice outweighs the public's and the defendants' in a
24   speedy trial.
25        If Mr. Barry, or one of you, could prepare a confirming
```

```
 1    order on the exclusion of time for the record, I would
 2    appreciate it.
 3             MR. BARRY:  Just the order, your Honor, just to speed
 4    things up rather than the stipulation and order, considering
 5    the number of parties?
 6             THE COURT:  Just the order is fine.
 7             MR. CLOUGH:  For the record, my client Mr. Lyles has
 8    a release hearing on the 22nd.  If he were not released, then
 9    we would object to excluding time.
10        I think this case could take quite a long period of time.
11    Mr. Lyles previously -- let's just say there is some history
12    that affects why we would not be willing to waive time.
13        So I just -- I understand the Court's position.  I
14    understand all the legal issues, but I want to make clear on
15    the record that until he has been released, we will be object
16    to excluding time.
17             THE COURT:  All right.  So you're not waiving it.
18    You're maintaining --
19             MR. CLOUGH:  We're not waiving it.
20             THE COURT:  Okay.
21             MR. BARRY:  And, your Honor, I have litigated this
22    issue before.  So if it becomes an issue of motion under the
23    Speedy Trial Act, I'm happy to brief it.
24             THE COURT:  All right.
25             MR. BARRY:  An exclusion as to one defendant is an
```

 1    exclusion as to all of them.

 2          THE COURT:  Well, I -- I find that, at least at this

 3    juncture, an exclusion of time is warranted given the nature of

 4    the -- the volume and nature of the discovery that needs to be

 5    produced and hasn't even been started yet.

 6       And so I am going to exclude time, at least for now,

 7    notwithstanding the objection.  And if there is a continuing

 8    objection, I may want to get some briefing on that, the affect

 9    of exclusion of time as to some and not others, but at this

10    point I believe I have the power to exclude time

11    notwithstanding lack of waiver.

12          MR. BARRY:  Thank you, your Honor.

13          MS. CORNELL:  Thank you, your Honor.

14          THE COURT:  All right?  See you then.  Thank you.

15       (Proceedings adjourned.)

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF OFFICIAL REPORTER</u>

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Thursday, January 25, 2018