MARTIN ANTONIO SABELLI - SBN 164772
Law Offices of MARTIN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

JOHN T. PHILIPSBORN - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

Attorneys for BRIAN WAYNE WENDT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No. CR-17-00533-EMC |
|---|---|
| Plaintiff, | **MOTION FOR DISCLOSURE OF EXPERIENCE, BASES, AND METHODOLOGY FOR EACH OPINION OF THE GOVERNMENT'S LAW ENFORCEMENT/ENTERPRISE EXPERTS UNDER RULE 16(a)(1)(G) AND *U.S. v. W.R. GRACE*** |
| vs. | |
| JONATHAN JOSEPH NELSON, et al., | |
| Defendants. | |

**TO: THIS HONORABLE COURT; TO ASSISTANT UNITED STATES ATTORNEYS KEVIN BARRY, ERIN CORNELL, MEREDITH OSBORN:**

**PLEASE TAKE NOTICE** that Brian Wayne Wendt, through counsel Martín Antonio Sabelli and John T. Philipsborn, will move this Court for orders for disclosure of the experience, bases, and methodology used by the government's law enforcement "enterprise" experts, Officer Brandon Austin, Ada County Sheriff's Office, Boise, Idaho (formerly a Sergeant with the Sonoma County Sheriff's Office, Santa Rosa, California) and Specialist Jeremy Scheetz, ATF Information Operations, to develop each of the opinions proffered by the government for trial under Federal Rules of Evidence 702.[1]

---

[1] Undersigned counsel has contacted the government to schedule a hearing on the motion at a time convenient to the Court and the government.

This motion is based upon the supporting memorandum of law, the pleadings and records on file in this matter, and upon such evidence and argument which may be presented prior to and at the hearing on this motion

Dated: November 26, 2019

Respectfully Submitted,
MARTIN ANTONIO SABELLI
JOHN T. PHILIPSBORN

/s/*Martín A. Sabelli*
MARTÍN A. SABELLI
Attorneys for Brian Wayne Wendt

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Given the numerous delays in this case, Mr. Wendt submits that the Court and parties can and should make progress on the issue of the government's potential expert testimony which requires substantial litigation and investigation before trial. In this respect, Mr. Wendt believes that this Court should begin where the Ninth Circuit began in *United States v. W.R. Grace:*

> We begin with the principle that the district court is charged with effectuating the speedy and orderly administration of justice. There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly.

*United States v. W.R. Grace*, 526 F.3d 499, 508-509 (9th Cir. 2007).

The principle and authority recognized in *W.R. Grace* suggest that this Court should, once again, actively manage the discovery process to ensure that this case moves forward. Specifically, the mandate to effectuate the speedy and orderly administration of justice suggests that this Court should manage the discovery process related to the government's extensive and unprecedented law enforcement/"enterprise expert" proffer which spans more than fifteen, single-spaced pages and effectively proves, by opinion, the RICO conspiracy.

Mr. Wendt calls upon the Court because the parties have reached an impasse regarding the obligation of the government, under Rule 16(a)(1)(G), to identify the experience, methodology, and bases for each opinion within its extensive "enterprise expert" proffer through law enforcement officers.[2] The parties do not see eye-to-eye regarding the information

---

[2] The government has noticed two law enforcement/"enterprise experts": Officer Brandon Austin, Ada County Sheriff's Office, Boise, Idaho (formerly a Sergeant with the Sonoma

which the defense requires to *voir dire* the government's two proposed experts regarding the relationship between their experience and their opinions. The government appears to believe that providing *CV*'s and a list of opinions satisfies Rule 16 whereas Mr. Wendt submits that the government should – assuming that there is in fact a methodology – disclose the experience, methodology, and basis for each opinion rather than obligating the defense to reverse engineer the unprecedented number and range of opinions proffered by the government.

Mr. Wendt notes that, despite amicable communications, the government has disclosed nothing more than a *CV* and summary of opinions for each of its two law enforcement/ "enterprise experts".³  Given these limited disclosures, the defense believes that the enterprise expert proffer far exceeds the permissible scope of expert evidence under Federal Rule of Evidence 702 and corresponding case law. The defense further submits that the government's summaries of opinions do not convey, in any sense, the experience upon which each "expert" opinion is based. Concretely, the government has not provided disclosures that explain: "how [an expert's] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion(s), and how that experience is reliably applied to the facts." See, Advisory Committee's Note to the 2000 amendment to F.R.E. 702; see also, *e.g.*, *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002) (requiring an explanation of "the connection between [an expert's] knowledge and the particular conclusion").

---

County Sheriff's Office, Santa Rosa, California) and Specialist Jeremy Scheetz, ATF Information Operations.

³ The government disclosed a summary for Officer Austin on October 7, 2019, (attached as Exhibit A) and revised that summary on October 25, 2019 (attached as Exhibit B). The government disclosed a summary for Specialist Scheetz on October 7, 2019, (Exhibit A) and revised that summary on November 4, 2019 (attached as Exhibit C).

Mr. Wendt therefore moves for an order, pursuant to Rule 16(a)(1)(G) and *W.R. Grace*, requiring the government to convey the experience, bases, and methodology for each proffered opinion so that the defense can effectively prepare for the anticipated *Daubert* hearings. In making this request, Mr. Wendt notes that government's law enforcement/"enterprise expert" proffer (which spans more than fifteen, single-spaced pages) effectively attempts to prove up a RICO conspiracy without need of any other witness or evidence.[4] Mr. Wendt, therefore, must prepare to confront a wide range of opinions with profound implications for guilt and for punishment both in terms of the objectives of the alleged RICO conspiracy (the fulcrum for mandatory life sentences) and in terms of a more subjective analysis related to the death penalty. Given the unprecedented nature and extent of the government's proffer, the defense cannot be expected to untangle the opinions, methodologies, and bases during cross examination in a *Daubert* hearing.[5]

## II. SUMMARY OF PERTINENT FACTS

### A. THE GOVERNMENT HAS PROFFERED TWO LAW ENFORCEMENT OFFICERS AS ENTERPRISE EXPERTS AND PROVIDED *CV*'S WITHOUT SPECIFIC NOTICE OF EXPERIENCE, METHODOLOGIES, AND BASES FOR EACH OF THEIR OPINIONS.

In a four-page letter dated August 14, 2019, the Government outlined the "topics of expert testimony" that it proposed for Officer Austin, setting out a total of eight "areas" for his expert opinion testimony. See, Exhibit D. These include the history of the Sonoma County

---

[4] RICO conspiracies, as opposed to "substantive" RICO cases, are essentially double inchoate crimes. In recent years, the government has duplicated if not replaced informant testimony regarding the alleged RICO objectives, and agreements to objectives, with testimony by "gang" experts who effectively, if believed, prove up the agreement and its objectives leaving only the need to connect each defendant to the conspiracy proved by the experts.

[5] The defense submits that this notice imposes no burden whatsoever on the government and its experts who, presumably, already understand the methodology and bases for each opinion.

Hells Angels; the relationship of the Hells Angels Motorcycle Club with "puppet clubs;" the structure of HASC; processes for membership and removal; relationship of the Sonoma County chapter with other Hells Angels clubs; the meaning and "significance" of HASC signs, symbols, etc.; the membership of HASC; and the relationship of HASC members with members of the general public.

The government has also noticed ATF Information Operations Specialist Jeremy Scheetz as an "enterprise expert." See, Exhibits B and C. The government proposes that he will cover a number of topics, including: the history of the Hells Angels Motorcycle Club (HAMC); the relationship of HAMC chapters with other motorcycle clubs; the structure of HAMC nationally and internationally; the relationship of various clubs with one another; the relationship of HAMC with other "outlaw motorcycle clubs;" the meaning and significance of HAMC signs and symbols; and the relationship with members of HAMC to members of the general public.

In response to requests from defense counsel, the government set forth more detailed disclosures than those initially provided this past summer. See, Exhibits B and C. This includes one emailed to the undersigned on October 25, 2019, which is four pages long and lists 19 "preliminary disclosures" concerning proposed expert, Officer Austin. See, Exhibit B. These disclosures announce proposed opinions about the meaning of various symbols, clothing, and the like, together with proposed opinions concerning the purpose and intent related to matters that are associated with the Hells Angels Sonoma chapter and opinions about likely courses of action (and intents) that individuals are expected to act with in response to certain stimuli.

The Government also disclosed a 10-page *CV* in the name of Officer Austin that explains his professional background and experience, demonstrating that he has been involved in a number of different law enforcement capacities and has varied training, only some of

which is focused on motorcycle gangs and/or the Hells Angels Motorcycle Club. See, Exhibit E, Officer Austin *CV*.

A supplemental notice was addressed to the undersigned as well regarding proposed expert, Specialist Scheetz. See, Exhibit C. It is eleven, single-spaced pages long and proposes 35 numbered opinions with what appear to be at least 70 "sub-opinions" on highly specific historical developments, allegations of acts dating back to September 1977, and a description of a history dating back to World War I at one point in the disclosure and to World War II in several parts of the disclosure.

The defense has been provided with a 13-page *CV* in the name of Specialist Scheetz showing that he has been employed (according to the *CV*) by the ATF since 2003, and explaining that since January of 2006, he has "traveled the globe" working on outlaw motorcycle gangs (with the *CV* indicating that he has conducted some activities with respect to the Hells Angels Motorcycle Club). See, Exhibit F, Specialist Sheetz *CV*.

**B.     THE GOVERNMENT APPEARS TO RELY ON A MANTRA OF "TRAINING AND EXPERIENCE" TO SATISFY RULE 16(a)(1)(G).**

The defense has conveyed to the government that it cannot prepare effectively based on these broad disclosures. The government, in response, has argued that these generic references to training and experience satisfy Rule 16. For example, the government has argued that:

> [Mr. Wendt] assert[s] that the disclosure provides no basis for the witnesses' opinions other than training and experience, and you claim that this is impermissible for expert opinion. Again, I respectfully disagree with your reading of the cases. Even where courts in this district have limited the scope of gang expert testimony, they have nevertheless permitted it, and *the basis for that testimony was the witnesses' training and experience.*

See, Exhibit G, Government Letter RE: Expert Disclosure – Meet and Confer Letter, dated October 22, 2019 (emphasis added). The government mistakenly suggests that the problem

7

with the mantra of training experience is related to a very distinct problem – that of an expert wearing two hats as an expert and as a percipient witness – as reflected in the government's letter dated October 22:

> I also note that a frequent issue with permitted "training and experience" expert testimony concerns situations where the expert is also a percipient witness. Courts have been concerned with the jury giving more weight or credibility to the officer who has been designated as an expert when he or she shifts into a mode where he or she is presenting factual testimony. Here, the government will not be offering either enterprise expert as a percipient witness.

*Id*.

In response and over many communications, Mr. Wendt has urged on the government that it identify the basis for each opinion so that the defense can litigate the adequacy of the methodology and basis of each opinion as well as the propriety of the opinion. The government has responded that it disagrees that the case law "dictates this type of expert notice, with that type of granular detail for each opinion." See, Exhibit H, Government Letter RE: Expert Disclosures, dated November 4, 2019.

Mr. Wendt has conveyed to the government, and emphasizes here, that the proffered bases must be specific enough to allow cross examination and to allow the Court to assess their adequacy. For example, reporting – as the government has – that an opinion is based on "discussions" does not provide the minimal necessary information and, in fact, provides virtually no information at all. The discussions would need to be identified including substance and parties; otherwise, there is absolutely no value in this proffer as a basis for an opinion. The above is intended as an example only.

///
///
///
///
///
///

III. **THE LAW REQUIRES EXPERT DISCLOSURES SUFFICIENT TO ALLOW THE RESPONDING PARTY TO UNDERSTAND "THE BASES AND REASONS FOR THOSE OPINIONS" ATTRIBUTED AN EXPERT UNDER RULE 16(a)(1)(G).**

   A. **THE PURPOSE OF FEDERAL RULE OF CRIMINAL PROCEDURE 16(a)(1)(G) ARE SERVED BY MR. WENDT'S REQUEST.**

Rule 16(a)(1)(G) provides that, upon a defendant's request, the government must provide the expert's qualifications, a written summary of their expected testimony, including their opinions, and the bases and reasons for those opinions. Fed. R. Crim. P. 16(a)(1)(G). The purpose of requiring disclosure of an expert's qualifications is to provide information to the defendant in order to determine whether the expert qualifies under Federal Rule of Evidence 702. See, Fed. R. Crim. P. 16(a)(1)(G) Advisory Committee's Note to 1993 amendment. A written summary of the expert's anticipated testimony provides for more complete pretrial preparation for the requesting party. Finally, the bases and reasons for the anticipated opinions provides a requesting party the ability to gauge whether the purported bases and reasons for an opinion are admissible under Federal Rules of Evidence 703. *Id*. As argued above, *W.R. Grace* authorizes courts to manage cases to ensure speedy and orderly progress which is lacking in this case. *W.R. Grace*, 526 F.3d at 508-509.

   B. **THE CASE LAW REQUIRES THE GOVERNMENT TO NOTICE THE METHODOLOGY AND BASES FOR EACH OPINION.**

The defense understands that there have been instances in which law enforcement officers have been permitted to testify as expert witnesses, including in the Ninth Circuit.  See, generally, *United States. v. Hankey*, 203 F.3d 1160, 1169-1170 (9th Cir. 2000). The defense is also aware that the Ninth Circuit has ruled that depending on the background, training, and experience of a law enforcement officer, it may be error for a District Court to admit testimony of certain classes of expert opinion based on experience such as "cryptic words" related to trafficking in drugs, especially where it was not possible to assess how the expert used given experience to arrive at a methodology to provide reliable and relevant opinions in the case at hand.

9

In *Hermanek*, *supra*, the court explained that the admissibility of a law enforcement expert's knowledge and experience-based testimony depends on the extent to which "the expert explained in detail the nature of his personal knowledge and explained the connection between that knowledge and the particular conclusion" that the expert reached. *Hermanek*, 289 F.3d at 1095. Where words and phrases applicable to the drug trade are involved, for example, "he would have been required to establish how he applied that knowledge to interpret particular words and phrases used in particular conversation. Without a link between [the officer's knowledge] and the particular matter he interpreted, 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Id*. at 1095-1096 (relying on the Supreme Court's opinion in *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

In this District, a number of judges have been asked to address both the sufficiency of the government's disclosures of proposed law enforcement expert testimony prior to addressing the admissibility of such testimony in various cases. Among the most cited of the orders related to these topics is Judge Alsup's ruling in *United States v. Cerna*, No. CR 08-0730 WHA, 2010 U.S. Dist. LEXIS 62907 (N.D. Cal. June 8, 2010), which addresses the sufficiency, among other things, of proposed law enforcement opinion testimony related disclosures.

Following the litigation in *Cerna*, there have been several other cases in which judges in this District have had to take on first the sufficiency of disclosures concerning law enforcement experts proposed as opinion experts on enterprise or gang-related issues. Second, these judges have, in some instances, presided over trials during which the breadth of the opinion testimony that would be permitted had to be adjudicated. This was the case in *United States v. Cervantes*, et al., NDCA Case No. 12-CR-00792, including in Judge Gonzalez-Rogers' Pretrial Order No. 8 which reviewed the sufficiency of law enforcement expert-related disclosures, having found some insufficient prior to entering the ruling just described. See, *United States v. Cervantes*, No. CR 12-792 YGR, 2016 U.S. Dist. LEXIS 15837 (N.D. Cal. Feb. 9, 2016) (ECF Doc. No. 928.

Judge Illston was also faced with complaints about the sufficiency of law enforcement "enterprise" experts in *United States v. Flores*, et al., NDCA Case No. 12-CR-119, and her

order on the admissibility of one law enforcement expert's proposed testimony, admitting some but excluding other aspects of the proposed testimony is found at *United States v. Flores*, No. CR 12-00119 SI, 2014 U.S. Dist. LEXIS 184440 (N.D. Cal. June 16, 2014) (ECF Doc. No. 1085).

More recently, Judge Orrick also had occasion to opine on the sufficiency of the Government's disclosures on a local alleged racketeering enterprise in *United States v. Williams*, No. 13-cr-00764-WHO, 2016 U.S. Dist. LEXIS 30318, (N.D. Cal. Mar. 9, 2016) (ECF Doc. No. 927).  In that case, the Government was proposing 43 opinions from a law enforcement expert, and Judge Orrick reviewed the history of admission of law enforcement experts addressing "gang" and enterprise evidence in the Northern District of California, noting that in the vast majority of the cases in which it was considered, Judges have been "skeptical about the admissibility of such evidence." *Id*. at *8.

Judge Orrick relied in part on the Ninth Circuit ruling in *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir, 2010), to explain that evidence sought to be admitted under F.R.E. 702 must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline."  Consistent with case law cited above, the Ninth Circuit in *Primiano* noted that even where the court deems *Daubert* factors to not be applicable in addressing technical or non-scientific evidence, the assessment of reliability of the evidence will occur based "on the particular circumstances of the particular case." *Id*.

As explained above, the Ninth Circuit has joined other courts in paying heed to the commentary associated with the 2000 amendment to Rule 702 that explains that: "If the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Advisory Committee's Note to the 2000 amendment to F.R.E. 702; see also, *United States v. Goxcon-Chagal*, 886 F.Supp.2d 1222, 1245-1246 (D.N.M. 2012).  The 2000 Advisory Committee Note to Rule 702 further states: "The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable."

## IV. CONCLUSION

Focusing only on the sufficiency of disclosures under Rule 16(a)(1)(G), it appears that the government has done little more than set forth the aspirational goals for its experts who intend to give broad-ranging synthesizing, argumentative opinion testimony essentially proving up the RICO conspiracy. The Government has not provided disclosures that link stated experience and the process by which the experience and professional training was applied in such a way as to result in the stated opinions. The government does not explain the connection between "the nature of [the expert's] personal knowledge and . . . the connection between that knowledge and the particular conclusion." *Hermanek*, 289 F.3d, at 1095. Instead, the government has offered a set of conclusions which the Court and parties cannot relate to specific training, experience, methodologies, and bases.

For the above reasons, Mr. Wendt requests disclosure for each opinion proffered by the government under Federal Rule of Evidence 702 of the specific experience, bases, and methodology used by the government's experts to develop each opinion.

Dated: November 26, 2019

Respectfully Submitted,
MARTIN ANTONIO SABELLI
JOHN T. PHILIPSBORN

/s/*Martín A. Sabelli*
MARTÍN A. SABELLI
Attorneys for Brian Wayne Wendt