FILED

FEB 11 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAMIEN DAVID CESENA,<br>Defendant. | Case No. 17-cr-00533-EMC-8   (SK)<br><br>**ORDER REGARDING MOTION TO ALLOW ASSOCIATION**<br>Regarding Docket No. 919 |

On January 27, 2020, Defendant Damien David Cesena ("Defendant") moved to modify the conditions of his release. (Dkt. 919.) The United States opposes the motion. (Dkt. 925.)

The issue here is one that this Court has addressed in ruling on a motion by a co-defendant but that no appellate court has addressed: Does the First Amendment right of association prohibit a court from imposing a restriction on a criminal defendant, as a condition of pre-trial release, not to associate with fellow members of the Hell's Angels Motorcycle Club?

The Court finds that the Constitution allows the restriction for Defendant under the specific facts of this case, for the reasons set forth below and therefore GRANTS IN PART and DENIES IN PART the motion for release from conditions of pretrial release.

**Background**

A grand jury returned an indictment against Defendant and several other defendants on October 10, 2017, for various charges including a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) as part of an ongoing enterprise to commit murder, burglary, extortion, and witness intimidation, dating back to 2007. (Dkt. 1.) The indictment alleges that Defendant is a member of the Hell's Angels Motorcycle Club, Sonoma Chapter ("Hell's Angels") and that the



Hell's Angels club is a violent motorcycle gang.[1] (Dkt. 1, ¶ 1, 18.) The indictment alleges that Defendant robbed a victim of marijuana on January 15, 2015, and thus aided and abetted another co-defendant, and "knowingly obstructed, delayed, and affected interstate commerce and the movement of articles in commerce by robbery," in violation of 18 U.S.C. §1951(1)(a) and (2). (Dkt. 1, ¶ 26.) The indictment alleges that Defendant engaged in a racketeering conspiracy to commit murder, robbery, extortion and witness intimidation in violation of 18 U.S.C. §1912. (Dkt. 1, ¶¶ 19-22.) The Superseding Indictment alleges the same violations. (Dkt. 374.)

The government requested that the Court detain Defendant before trial, and Defendant requested to be released from detention. The Court released Defendant from pretrial detention with a bond on November 29, 2018, with conditions of release and after property was posted as security for the bond. (Dkt. 54.) The Court ordered in an Order Setting Conditions of Release ("Pretrial Release Order") that the Defendant be released on a bond of $150,000, with the following conditions:

(1) Defendant must appear for all court proceedings and surrender for service of any sentence imposed.

(2) Defendant shall not commit any federal, state or local crime.

(3) Defendant shall not harass, threaten or intimidate witnesses, victims, jurors or officers of the court or obstruct any criminal investigation.

(4) Defendant shall not travel outside the Northern District of California.

(5) Defendant shall report to Pretrial Services.

(6) Defendant shall surrender all passports and travel documents and not apply for any new ones.

(7) Defendant shall not use alcohol to excess or use any controlled substance without a prescription.

(8) Defendant shall maintain employment or seek employment or education under the direction of Pretrial Services.

(9) Defendant shall have no contact with any co-defendant outside the presence of

---

[1] Defendant is a self-identified member of the Hell's Angels Motorcycle Club, Sonoma Chapter. There is no dispute about his membership.

counsel.

(10) Defendant shall not change residence without prior approval of Pretrial Services.

(11) Defendant shall have no contact with any member of the Hell's Angels outside presence of counsel.

(12) Defendant must reside at a certain location identified in the Pretrial Release Order, under the custody of an individual identified in the Pretrial Release Order; and

(13) Defendant shall participate in drug and/or alcohol and/or mental health counseling, and submit to drug and/or alcohol testing as directed by Pretrial Services.

(14) Defendant must comply with a curfew of 9:00 p.m. to 6:00 a.m.

(Dkt. 54.)

The Court has granted several exceptions to the Pretrial Release Order for Defendant. On one occasion, the Court granted permission to Defendant to spend time with another Hell's Angels member who was suffering from poor health. (Dkt. 120.) Although the Order refers only to initials, the friend is Chuck Thompson. The Court permitted Defendant to attend three funerals and a memorial service even though other Hell's Angels members would be present at those gatherings. (Dkts. 247, 294, 346, 623.) The Court also allowed Defendant to attend the wedding of co-defendant Jeremy Greer. (Dkt. 833.)

As far as the Court is aware, Defendant has complied fully with the terms of his bond, as the government has not indicated that Defendant has violated any terms of the bond.

### Discussion

Defendant argues that he has a right under the First Amendment to the U.S. Constitution to associate with Hell's Angels members. The First Amendment to the U.S. Constitution provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble[.]" The right to freedom of association is well-recognized under the First Amendment. *N.A.A.C.P. v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958); *United States v. Robel*, 389 U.S. 258 (1967). The Ninth Circuit has confirmed this right, specifically with regard to the Hell's Angels: "We agree with defendants that the First Amendment protects their right to associate with one another and with the Hell's Angels Motorcycle Club." *United States v. Rubio*, 727 F.2d 786, 791 (9th Cir. 1984). However, infringement on the right to association "may be justified" if the infringement serves a

3

"compelling state interest" and "cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623.

The Bail Reform Act of 1984 (the "Bail Reform Act") governs a court's decision about whether to release a criminal defendant before trial. 18 U.S.C. § 3141 *et seq.* The Bail Reform Act requires that a court shall order the pretrial release of a defendant "subject to the least restrictive condition or combination of conditions" that will reasonably assure appearance as required in court and the safety of the community. 18 U.S.C. § 3142(c)(1)(B),

The Supreme Court has upheld the ability of a court to detain a criminal defendant before trial and found that pretrial detention of a federal criminal defendant under the terms of the Bail Reform Act of 1984 does not violate the Fifth or Eighth Amendments to the U.S. Constitution. *United States v. Salerno*, 481 U.S. 739 (1987). In *Salerno*, the Supreme Court concluded that the Bail Reform Act was the "solution to a bail crisis in federal courts" and that it created a process in which the courts have "adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." *Id.* at 742 (internal citation omitted). The *Salerno* defendants were charged with RICO violations, and the government provided evidence that the defendants were the "boss" and "captain" in the Genovese crime family. *Id.* at 743. The Court found that detention was appropriate:

> The activities of a criminal organization such as the Genovese Family do not cease with the arrest of its principals and their release on even the most stringent of bail conditions. The illegal businesses, in place for many years, require constant attention and protection, or they will fail. Under these circumstances, this court recognizes a strong incentive on the part of its leadership to continue business as usual. When business as usual involves threats, beatings, and murder, the present danger such people pose in the community is self-evident.

*Id.* at 743 (internal citation omitted). The Supreme Court held: "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Id.* at 749 (internal citation omitted). "We have held repeatedly that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *Id.* at 748.

Although it appears that no reported decision has addressed the right to association with

any gang or motorcycle club in the context of pretrial release, courts have upheld restrictions on association with certain organizations or certain types of people in the context of supervised release or probation after defendants have been convicted of crimes. *See, e.g., United States v. Soltero*, 510 F.3d 858, 865 (9th Cir. 2007) (upholding condition of supervised release that convicted defendant not associate with any known gang member); *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) (upholding condition of supervised release that convicted defendant not associate with motorcycle gang Dirty Dozen as valid restriction on freedom of association); *United States v. Romero*, 676 F.2d 406 (9th Cir. 1982) (upholding condition of probation prohibiting defendant who had been convicted of drug offenses from associating with people selling drugs); *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974) (upholding condition of probation that defendant who had been convicted of unlawful exportation of firearms from the United States to the United Kingdom not participate in any American Irish Republican movement). The test for such restrictions after conviction is different from the test under the Bail Reform Act, but the reasoning is similar, as both tests require a limited measure to protect the safety of the public by preventing future crime. *See, e.g., Soltero*, 510 F.3d at 865-867 (quoting 18 U.S.C. § 3583(d); *United States v. Sales*, 476 F.3d 732, 735 (9th Cir. 2007) (holding that restriction on right to free association appropriate in supervised release after conviction if the restriction is "reasonably related to" the goals of deterring further crime, protecting the public, and rehabilitation the defendant, "involves no greater deprivation of liberty than is reasonably necessary to achieve those goals," and "is consistent" with policy consideration of the U.S. Sentencing Commission). In cases addressing conditions of probation and supervised release, courts are concerned with ensuring that the defendants do not commit further crimes, and courts recognize that association with criminal cohorts creates a likelihood that the defendant will engage in further criminal activity.

Because the Supreme Court recognized in *Salerno* that the government's interest in preventing pretrial arrestees from committing crimes before trial is a compelling one, the question is whether the specific prohibition here against associating with members of the Hell's Angels fills that goal in the least restrictive manner possible. The analysis is similar to the general principles

of Constitutional law and the Bail Reform Act, as both seek the least restrictive manner of ensuring the public's safety. Here, the Court finds that the restriction on association with members of the Hell's Angels, along with the other conditions of pretrial release, is the least restrictive means of ensuring the public's safety. Although Defendant asks the Court to view the prohibition on association with Hell's Angels members in isolation, the Court cannot do so. The Court released Defendant with many conditions of pretrial release in order to balance the least restrictive conditions for Defendant with the need for the safety of the public.

The government asked that the Court detain Defendant before trial. In deciding whether to release Defendant before his trial, the Court considered Defendant's criminal history, physical and mental health, any use of drugs or alcohol, ties to the community and his family, history of travel outside the United States, history of employment and current financial situation, possession of weapons, and the nature of the charged offense. Defendant has two convictions for felonies, two convictions for misdemeanors, and one conviction for an infraction. Defendant has had some mental health issues. Defendant refused to discuss any use of illicit substances with Pretrial Services, but his wife confirmed that he does not abuse illicit substances. Defendant is married and has a son. He has strong ties to the state of California and strong ties to other members of his family, also in California. Defendant has lived all of his adult life in California and has minimal travel outside the United States.

Defendant notes that the local Hell's Angels Motorcycle Club participates in charitable events, such as "annual toy runs," events to purchase hundreds of bicycles for children who might not otherwise have them, and donations for homeless people, and Defendant cites several published articles to demonstrate this charitable activity. (Dkt. 919.)

Despite this charitable activity, Defendant, like the defendants in *Salerno*, is a member of an organization with a long history of crime and that exists primarily for the commission of criminal activity. The government provided evidence of the nature of the criminal enterprise and has proffered an expert witness who will testify about the history and characteristics of the Hell's Angels Motorcycle Club. (Dkt. 879-1.) The government has proffered an expert witness who explains the following:

(1) 36% of all Hell's Angels members in the United States have felony convictions, and another 29% have misdemeanor convictions. (Dkt. 879-1.) 70% of all "west coast members have a conviction," but it is not clear what the breakdown is between convictions for felonies and misdemeanors. (*Id.*) "On the west coast, approximately 34 percent have a firearms conviction[.]" (*Id.*)

(2) There are 94 chapters of Hell's Angels in the United States, with approximately 1,000 members and aspiring members (called "prospects"), and the ethos of the Hell's Angels is to create an impression that a person who runs afoul of an individual Hell's Angel member will then face the wrath of the entire organization. (*Id.*)

(3) The *modus operandi* of the Hell's Angels is to intimidate the public so that no one will report a crime by the Hell's Angels. (*Id.*)

(4) The Hell's Angels have engaged in over 60 violent battles with other motorcycle gangs in California between 1977 and 2018, in California alone. (*Id.*) Many of those battles ended in death or serious injury. (*Id.*) There were seven violent alterations between the Hell's Angels and rival gang the "Mongols" in California in 2018. (*Id.*)

(5) The various chapters of the Hell's Angels across the country meet regularly. (*Id.*)

(6) The Hells' Angels have a code of silence that prohibits cooperation with law enforcement – even so far as an informal rule preventing members from calling 911 – and the Hell's Angels have a marked history of antagonism with law enforcement and a system of accolades for members who engage in violence with law enforcement, in the form of special patches for that behavior. (*Id.*)

Defendant contests the accuracy of this report but does not provide any evidence to contradict this report.

The United States Department of Justice classifies the Hell's Angels as an "Outlaw Motorcycle Gang," whose members, among other traits of the group, "engage in criminal activity [...] with the intent to enhance or preserve the association's power, reputation, or economic resources." *See* Definition of Outlaw Motorcycle Gangs, https://www.justice.gov/criminal-ocgs/gallery/outlaw-motorcycle-gangs-omgs (last accessed Dec. 19, 2019). Though at least one

7

court declined to find that the Hell's Angels Motorcycle Club is a "criminal enterprise" *per se*, *U.S. v. Conte*, 2009 WL 4981166, at*2 (N.D. Cal. Dec. 15, 2009), many have recognized a strong association between the activities of the Hell's Angels and criminal activity. *See People v. Memory*, 182 Cal. App. 4th 835, 861 (2010) (finding that evidence of affiliate motorcycle gang's association with Hell's Angels was prejudicial because "[m]ost of the northern California public regard Hell's Angels or members of a motorcyclist's organization of that name with distaste") (citation and quotation marks omitted); *United States v. Barbeito*, 2010 WL 148379, at *3 (S.D.W. Va. Jan. 12, 2010) (member of rival motorcycle gang deemed to pose a danger to others because his gang and the Hell's Angels had an eight year history of "violent, and occasionally deadly, clashes"); *Lobretto v. Sisto*, 2013 WL 509160, at *37 (E.D. Cal. Feb. 12, 2013) (finding no violation of federal due process where state appellate court upheld the introduction of evidence of Hell's Angels' pattern of criminal activity worldwide, including "the wide array of acts committed by various Hell's Angels clubs and individual members," including violence and intimidation).

Based on this evidence, pretrial detention of any defendant who is a member of the Hell's Angels Motorcycle Club under the principles set forth in *Salerno* might be justifiable. As the *Salerno* court noted, the arrest of members of a criminal organization does not stop the activities of the criminal organization, and the Supreme Court justified detention based on that principle. Similarly, this Court is concerned, as the courts in analyzing conditions of probation and supervised release were, that associating with a criminal gang is likely to lead to criminal activity. But here, rather than simply detaining Defendant before trial, the Court chose the least restrictive method of ensuring the public's safety. The prohibition on association with a criminal enterprise and the other conditions in the Pretrial Release Order are the least restrictive methods of preventing further criminal activity.

As part of the goal of creating the "least restrictive" method of ensuring the public's safety, the Court lifted the restriction against association with other members of the Hell's Angels several times. First, the Court lifted the restriction to allow Defendant to assist a fellow Hell's Angels member with medical problems. Second, the Court allowed Defendant to associate with other Hell's Angels members at two of the most important passages of life: paying respects to a

deceased co-member or affiliate and celebrating a wedding. The Court narrowly tailored the manner of association permitted by limiting Defendant's ability to discuss criminal activities. Given that the core of the criminal activity charged here is based on cooperation between and among co-defendants and given the expert testimony about the nature of cooperation between and among the Hell's Angels members, the concern about discussion of criminal activity is a strong one.

For these reasons, the Court declines to lift the general condition prohibiting Defendant from associating with other members of the Hell's Angels Motorcycle Club. However, because Defendant specifically mentions his ties to two individuals who are members of the Hell's Angels Motorcycle Club, Chuck Thompson and Tim Bianchi, as part of his reason for requesting the right to associate with other Hell's Angel members, the Court considers a narrower restriction. Thompson is a father figure to Defendant, and he is very ill. Defendant hopes to help Thompson in practical ways by taking him to medical appointments, helping him with grocery shopping, and helping Thompson with exercise and diet. (Dkt. 919.) Thompson lives in the Hell's Angels clubhouse. Defendant states that Bianchi is the godfather to Defendant's son, and he would like his son to spend time with Bianchi.

The Court lifts the prohibition with regard to Chuck Thompson and Tim Bianchi. Because Defendant has complied with the conditions of pretrial release, the Court will continue to provide Defendant an opportunity to spend time with family members, friends, and associates – even if members of the Hell's Angels – in a manner that allows him to do so without leading to crime. Defendant may visit and take care of Thompson but not at the Hell's Angels clubhouse. If Defendant picks up Thompson from the Hell's Angels clubhouse, he must spend the minimum time necessary to accompany Thompson to Defendant's car. Defendant may associate with Bianchi, but again not in the Hell's Angels clubhouse.

Finally, this Order is sealed to allow parties to comment on whether there are any parts of this Order that should remain under seal. The parties must provide a brief, not to exceed 5 pages, by February 28, 2020, to the Court, with their positions on this matter. To the extent that a party believes that any part of this Order should remain under seal, the party must identify specific

9

portions of the Order that should remain under seal.

**IT IS SO ORDERED.**

Dated: February 11, 2020

_____
SALLIE KIM
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>          Plaintiffs,<br><br>  v.<br><br>DAMIEN DAVID CESENA,<br><br>          Defendants. | Case No.: 17-cr-00533-EMC-8 (SK)<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that:

(1) I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California; and

(2) On 2/11/2020, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's office.

Ajay K Krishnamurthy
US Attorney's Office, Northern District of California
450 Golden Gate Avenue, 11th Floor
San Francisco, CA 94102

Eneda Hoxha
Durie Tangri LLP
217 Leidesdorff St
San Francisco, CA 94111

Galia Amram
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111

Dated: 2/11/2020

Susan Y. Soong
Clerk, United States District Court

By: *M Lock*
Melinda K. Lock, Deputy Clerk to
the Honorable Sallie Kim

*Service_Certificate _CRD*
*rev. August 2018*