1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  KEVIN J. BARRY (CABN 229748)
   AJAY KRISHNAMURTHY (CABN 305533)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-6840
        Email: kevin.barry@usdoj.gov
8       ajay.krishnamurthy@usdoj.gov

9  Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,         )  CR 17-00533 EMC
                                      )
14          Plaintiff,                )  **UNITED STATES' OPPOSITION TO**
                                      )  **DEFENDANT BRIAN WENDT'S AND**
15      v.                            )  **DEFENDANT JONATHAN NELSON'S**
                                      )  **MOTIONS FOR DEADLINE TO FILE A**
16  JONATHAN JOSEPH NELSON,           )  **NOTICE OF INTENT TO SEEK THE DEATH**
    BRIAN WENDT,                      )  **PENALTY**
17  RUSSEL OTT, et al.,               )
                                      )  Hearing Date:      March 20, 2020
18          Defendants.               )  Hearing Time:      10:30 a.m.
                                      )
19  _____  )  Hon. Edward M. Chen

20

21                    **INTRODUCTION**

22      Defendants Wendt and Nelson have moved the Court to set a specific date by which the

23  government must announce whether it intends to pursue the death penalty or otherwise be precluded

24  from seeking that sanction.  Dkts. 951, 954.  Although the Court has the authority to set a deadline by

25  for the government to file its notice of intent to seek the death penalty, it should not do so until there is a

26  trial date.  The other relief requested represents an invasion into the exclusive decision making of the

27  Executive Brach and would violate the Constitution's separation of powers.

28

## BACKGROUND

On September 11, 2018, a federal grand jury issued a superseding indictment charging defendants Brian Wendt, Jonathan Joseph Nelson, and Russell Taylor Ott with murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1).  ECF No. 374.  This charge carries a maximum penalty of death.  There is no trial date in the case.

In February 2019, Defendant Wendt submitted materials in mitigation that it requested the government consider in assessing whether it would recommend seeking the death penalty.  In May 2019, Defendant Nelson also submitted mitigating information to the government.  (Mitigation information for Defendant Ott was contained in his December 2018 and January 2019 briefing in connection with his motion for release.  Dkts. 496, 510.)  During the Summer of 2019, the government was able to meet with family members of Joel Silva, Victim 1 in the Superseding Indictment, to discuss the issue of the death penalty for the defendants charged with his murder.  In September 2019, the U.S. Attorney's Office for the Northern District of California submitted its recommendation regarding whether to seek the death penalty to the Capital Case Section.  As of late February, 2020, the case was being considered at the level of the Office of the Deputy Attorney General, just before final review by the Attorney General.

On February 20, 2020, Defendant Wendt moved the Court for "an order that has a date by which the Government should either state that it is going forward with death penalty authorization processes in Mr. Wendt's case, or that it understands that the Court will foreclose it from filing a Notice of Intent to Seek the Death Penalty."  Dkt. 951 at 5:17-20.  On February 21, 2020, Defendant Nelson filed a motion seeking the following relief:

> Mr. Nelson requests that this Court order the government to:
> a) inform the Court and Mr. Nelson no later than March 20, 2020 that the United States will not seek the death penalty as to Mr. Nelson, or
> b) propose a specific date no less than 90 days later on which Mr. Nelson is "invited" to make a presentation to the Attorney General's Capital Case Committee pursuant to Section 9-10.130 of the United States Attorney's Manual, or
> c) show cause as to why the Court should not reinstate the $1,000,000 bond which secured Mr. Nelson's release in this matter from December 2017 through September 2018.

Dkt. 954 at 3:17-27.  Defendant Ott neither joined in nor opposed either request.  Dkt. 950.

**ARGUMENT**

**1.    Defendants' Requests Invade The Executive Branch's Powers**

The federal courts have long recognized that the government's internal process for deciding whether to seek the death penalty in any capital-eligible case is essentially out of bounds of judicial review. *See United States v. Nguyen*, 928 F. Supp. 1525, 1544 (D. Kan. 1996). Even lengthy delays for the government to conduct this internal process do not violate a defendant's speedy trial rights. *United States v. Murillo*, 288 F.3d 1126, 1133 (9th Cir. 2002) (holding that the death penalty consideration process is a valid reason to grant an ends of justice continuance in a case where a trial was continued for over a year after death-eligible charges were brought).

The internal DOJ procedures regarding death penalty cases outlined in the Justice Manual guide internal charging deliberations and are not subject to judicial review. The Justice Manual itself provides:

> The Justice Manual provides internal DOJ guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigation prerogatives of DOJ.

United States Department of Justice, *Justice Manual*, § 1-1.200 ("Justice Manual," or "J.M."), available at https://www.justice.gov/jm/jm-9-10000-capital-crimes#9-10.160#9-10.160. The Ninth Circuit has considered this issue in the context of a death penalty-eligible case and determined that, "it is clear that the [Justice Manual] does not create any substantive or procedural rights, including discovery rights." *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). In *Fernandez*, the Ninth Circuit considered a district court order precluding the government from seeking the death penalty because it had refused to comply with an order directing it to produce to defense the internal memorandum and other forms submitted as part of the death penalty process. *Id.* at 1242. The Court concluded that because internal DOJ policies did not create any rights for criminal defendants, they "cannot serve as a legal basis for the district court's discovery order." *Id.* at 1246. The Court further determined that the internal DOJ forms were protected by deliberative process and work product privileges. *See generally id.* at 1246-1248.

The Ninth Circuit decision in *Fernandez* is consistent with the holdings of other circuit and district courts. *See United States v. Lopez-Matias*, 522 F.3d 150, 155-56 (1st Cir. 2008) (reversing district court's decision dismissing death notice because the defendant has not been provided a meaningful opportunity to present mitigation evidence because the Justice Manual would not give rise to that sanction); *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) ("Department of Justice guidelines and policies do not create enforceable rights for criminal defendants."); *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001) (DOJ's death penalty Protocol does not create substantive or procedural rights enforceable by individuals); *United States v. Furrow*, 100 F. Supp. 2d 1170, 1178 (C.D. Cal. 2000) ("Case law is clear on this point: the guidelines, like any other provision in the [Justice Manual] do not create any substantive rights."); *United States v. Slone*, 969 F. Supp. 2d 830, 834 (E.D. Ky. 2013) ("The Protocol therefore provides no procedural rights, but rather is a 'mere aid[] to the exercise of the [Justice Department's] independent discretion.'"); *United States v. Pray*, 764 F. Supp. 2d 184, 188 (D.D.C. 2011) (denying motion for early discovery arising from capital eligible charges and holding "[t]he Protocol does not create substantive or procedural rights for a defendant"); *United States v. Williams*, 181 F. Supp. 2d 267, 299 (S.D.N.Y. 2001) ("The vast majority of courts to consider this question have held that the Protocol does not create any such legally enforceable rights."); *United States v. Shakir*, 113 F. Supp. 2d 1182, 1187 (M.D. Tenn. 2000) (citations omitted) (citing cases from the First and Sixth Circuits, as well as a district court decision from the Second Circuit, holding that the USAM creates no substantive rights); *Nichols v. Reno*, 931 F. Supp. 748, 751 (D. Colo.), *aff'd*, 124 F.3d 1376 (10th Cir. 1997) (death penalty protocol does not create enforceable rights); *United States v. McVeigh*, 944 F. Supp. 1478, 1483-84 (D. Colo. 1996) (same).

Numerous district courts have held that the government's internal processes for reaching a decision regarding the death penalty are "also outside the reach of the Court's inherent power to supervise the administration of criminal justice." *United States v. Slone*, 969 F. Supp. 2d 830, 836 (E.D. Ky. 2013). In *Slone*, the district court warned that meddling in the government's death penalty decision-making process "would violate the Constitution." *Id.* The *Slone* court also recognized that, "a heavy judicial hand might actually do more harm to capital defendants than good." *Id.* at 838; *see also United States v. Tsarnaev*, No. CRIM.A. 13-10200-GAO, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013)

1    (denying defendant's request to set dates for submissions of materials in the government's internal death

2    protocol as "well beyond the scope of any inherent authority to manage judicial business").

3            This is not to say that the Court lacks the authority to issue a scheduling order that establishes a

4    deadline to file the Notice of Intent.  That lies within the Court's authority, but such a deadline must be

5    tied to a trial date, as discussed below.  The defendants are requesting much more than a deadline,

6    however.

7            Defendant Wendt moves the Court for an "order that has a date by which the Government should

8    either state that it is going forward with death penalty authorization processes in Mr. Wendt's case, or

9    that it understands that the Court will foreclose it from filing a Notice of Intent to Seek the Death

10   Penalty." Dkt. 951 at 5:17-20.  In effect, Defendant Wendt demands to know what the contents of the

11   recommendations to the Attorney General are.  His position is that the government should be permitted

12   additional time to file a Notice of Intent only if the government informs the parties that the

13   recommendation is to authorize the death penalty.  This demand directly violates the confidentiality of

14   the DOJ procedures for considering whether to seek the death penalty.  "The decision-making process

15   preliminary to the Attorney General's final decision [whether to seek the death penalty] is confidential."

16   J.M. § 9-10.050.

17          The scope of confidentiality includes, but is not limited to: (1) the recommendations of
18          the United States Attorney's Office or Department component, the Attorney General's
             Review Committee on Capital Cases (hereinafter the "Capital Review Committee"), the
19          Deputy Attorney General, the Capital Case Section, and any other individual or office
             involved in reviewing the case; (2) a request by a United States Attorney or Assistant
20          Attorney General that the Attorney General authorize withdrawal of a previously filed
             notice of intent to seek the death penalty; (3) a request by a United States Attorney or
21          Assistant Attorney General that the Attorney General authorize not seeking the death
             penalty pursuant to the terms of a proposed plea agreement; and (4) the views held by
22          anyone at any level of review within the Department.
23

24   *Id.*

25          With respect to Defendant Nelson's motion, he first demands a deadline of March 20, 2020 to

26   file a Notice of Intent.  This will be discussed below.  In the alternative, he demands (1) a specific date

27   on which he is invited to submit a presentation under J.M. § 9-10.130 or (2) that the Court reconsider the

28

issue of release on bond.  The issue of Defendant's bond will be addressed at the end of this brief.  The request for the Court to set a schedule for DOJ officials to consider a presentation by defense counsel has been directly rejected by courts.  "However common such orders are, courts lack the authority to schedule the defendant's presentation under the Death Penalty Protocol." *Slone*, 969 F. Supp. 2d at 833.  "While the Court has inherent power to manage its docket and to some extent supervise the administration of criminal justice, it may not direct the Executive Branch how to exercise its traditional prosecutorial discretion." *Id.* at 833-34.  "No inherent power permits the Court to schedule Slone's presentation to the Justice Department." *Id.* at 835; *see also Tsarnaev*, 2013 WL 5701582, at *2.

The Court does not have the authority to direct internal DOJ processes with respect to the death penalty decision for the defendants charged with death-eligible crimes.  To the extent that Wendt and Nelson's motions seek that relief, the Court should deny them.

**2.      The Court Should Not Set A Deadline For The Government To File Its Notice Of Intent Before It Sets A Trial Date**

The Court certainly has the authority to control its docket, including by setting deadlines to file a Notice of Intent.  In fact, the Justice Manual contemplates that courts may issue such scheduling orders.  "In the absence of a court-established deadline for the Attorney General's death penalty decision . . ." J.M. § 9-10.060.  There deadlines must be paired with a date for trial, however.

Title 18, Section 3593 states that the government must file its Notice of Intent "a reasonable time before the trial." 18 U.S.C. § 3593(a).  The statute does not define what constitutes a reasonable time, but in *United States v. Ferebe*, 332 F.3d 722 (4th Cir. 2003), the Fourth Circuit indicated that it was crucial to have a trial date to assess reasonableness.  "Because we cannot determine whether, at the time of the Death Notice's filing, a date existed on which Ferebe's trial was set to start, we cannot complete an evaluation of the merits of Ferebe's claim [that the Notice of Intent was untimely]." *Id.* at 740.  The court remanded the case for additional review of the motion to strike the Notice of Intent, addressing the necessary factual questions and considering the following factors, among others:

> (1) the nature of the charges presented in the indictment; (2) the nature of the aggravating factors provided in the Death Notice; (3) the period of time remaining before trial, measured at the instant the Death Notice was filed and irrespective of the filing's effects; and, in addition, (4) the status of discovery in the proceedings.

1   *Id.* at 737 (footnote omitted).

2       Following *Ferebe*, the Eleventh Circuit added some additional factors for courts to assess:

3       (1) what transpired in the case before the formal Death Notice was filed; (2) the period of

4       time remaining for trial after the Death Notice was filed; (3) the status of discovery and

        motions in the proceedings; (4) the nature of the charges in the indictment; (5) the nature

5       of the aggravating factors claimed to support the death penalty; and (6) the anticipated

6       nature of the defense, if known.

7   *United States v. Wilk*, 452 F.3d 1208, 1221 (11th Cir. 2006).  In *Wilk*, the court found that six months

8   was a reasonable time.  "[T]he time interval between the Death Notice and the trial was six months from

9   February 18 to August 29 and was clearly adequate to prepare a death defense in this case.  The

10  government's Death Notice was objectively reasonable notice on this basis alone."  *Id.* at 1222.[1]  The

11  Fourth Circuit similarly found a period of seven months between the filing of the Notice of Intent and

12  the trial date to be objectively reasonable.  *United States v. Breeden*, 366 F.3d 369, 375 (4th Cir. 2004)

13      In this case, the Court has not set a trial date, and thus there is no standard by which to measure

14  whether the time by which the government will file its Notice of Intent is reasonable.  This conclusion in

15  consistent with the practice of other Judges in this district, including cases that Defendants have cited.

16      In *United States v. Cerna*, which Defendant Wendt cited in his supplemental filing, Judge Alsup

17  imposed a deadline by which the government had to file a Notice of Intent.  The Court did so, however,

18  in a scheduling order that included a trial date.

19      Any statutory notice of intent to seek the death penalty as to any defendant must be filed

20      by **NOVEMBER 16, 2009, AT NOON**, failing which no such notice may be filed.  In

        the Court's view, there is no constitutional right to a delay of the statutory notice decision

21      deadline but, in the discretion of the Court, the generous deadline requested by counsel

22
23  [1] The *Wilk* court cited to a number of other cases that found that less notice was still reasonable
    under Section 3593(a).  *Id.* at 1222, n.25 ("Several district courts have applied the objective
    reasonableness standard and concluded that even less time is reasonable. *Compare  United States v.*
24  *Ponder*, 347 F.Supp.2d 256, 270 (E.D. Va. 2004) (notice filed within court-imposed filing deadline and
    approximately four months before a possible trial date is reasonable), *and United States v. Le*, 311
25  F.Supp.2d 527, 534-35 (E.D. Va. 2004) (113 days' notice is reasonable), *with McGriff*, 42United States
    v. McGriff, 427 F.Supp.2d 253, 270-72 (E.D.N.Y. 2006) (concluding that twelve days' notice was not
26  objectively reasonable but granting a continuance of the trial date), *United States v. Le*, 316 F.Supp.2d
    343, 346, 352-55 (E.D. Va. 2004) (113 days' notice still objectively reasonable, but amended Death
27  Notice, containing different aggravating factors and filed ninety-four days before trial, was not
    objectively reasonable), and *United States v. Hatten*, 276 F.Supp.2d 574, 579 (S.D.W.Va. 2003)
28  (suggesting that thirty-six days' notice is unreasonable)).  *See also United States v. Diaz Hernandez*, 265
    F. Supp. 3d (D. Md. 2017) (setting deadline to file death notice 140 days before trial).

1  shall be allowed.  If the government can decide sooner, all the better.  If such a notice is
2  filed as to any defendant, that defendant shall be severed from the main trial described
3  below and tried later.  Meanwhile, all defendants and all counsel including death-eligible
   defendants shall be subject to the main trial date, set below, inasmuch as no death penalty
4  may ever be sought in this case and no severance may ever be needed.

5  *Id.*, CR 08-0703 WHA (March 19, 2009 Final Scheduling Order).  The trial was set for May 10, 2010,

6  roughly six months after the Notice of Intent deadline.

7          In *United States v. Diaz*, CR 05-0167 WHA, a case in which the Attorney General authorized

8  seeking the death penalty, the Court initially ordered counsel to clear January to June 2006 for the trial.

9  *Id.* Dkt. 139.  In a later scheduling order, on October 6, 2005, Judge Alsup ordered the government to

10 file its final Notice of Intent by March 24, 2006—more than five months later.  *Id.*  This is considerably

11 more time than the four or six weeks (February 20 to March 20 or April 1) proposed by the defense

12 here.[2]

13         The defense also directed the Court's attention to the Notice filed by Judge Alsup in the more

14 recent case of *United States v. Etienne*, CR 17-0093 WHO, Dkt. 378.  What the defense ignores,

15 however, is that Judge Aslup did *not* enter a Notice of Intent deadline in that case for the defendant who

16 was the subject of that notice.  Judge Alsup indicated that he believed he had the authority to issue a

17 deadline, but he did not, in fact, issue one.  *Id.*, Dkt. 383 at 13:1-8 (Transcript of March 13, 2019

18 hearing).  In discussing the possibility, the Judge forecast issues that could arise with such a deadline,

19 such as the defense wanting to put off the trial if a no-seek decision came down, claiming that they were

20 focused on the death penalty issue, or the defense wanting to put off the trial if there were authorization

21 to seek the death penalty, because then the defense would then have to deal with that issue.  He also

22 addressed due process concerns if a trial resulted in an acquittal after a lengthy pretrial delay.

23 Ultimately, however, the Court imposed no deadline:

24         I don't have the answer, other than I might set a deadline.  And then we'll have some
           appellate proceedings on whether I have the authority to set a deadline.  I think, under
25         *W.R. Grace*, I do.  All right.  I know this is a hopeless conversation; so we're not going to

26

27 _____

28 [2] Although the Court had set that initial trial window, in the scheduling order, Judge Alsup
   vacated it and indicated that the parties would agree on a trial date at a conference just after the Notice
   of Intent deadline.

1   continue it right now, unless – I'll give everybody one more shot.  Anything you want to
2   say on this subject?

3   *Id.*, Dkt. 383 at 13:1-8 (no one had anything more to say).

4        Although the defense's initial submission failed to inform the Court that Judge Alsup declined to
5   impose a Notice of Intent deadline in *Etienne*, Defendant Wendt filed a supplemental brief that
6   addressed the issue, albeit obliquely.

7        Undersigned counsel respectfully submit that the *Cerna* Order(s) clarify any ambiguity
8        raised by the already-tendered Order from *Etienne* (see Docket 951), and likely explain
9        why when the Government was told in *Etienne* that Judge Alsup was considering setting
     a time certain for an NOI in that case, the Government then informed Judge Alsup and
10       counsel that it would not be seeking death against the late joined defendant, Mr. Rhodes.

11  Dkt. 961 at 2:27 – 3:4.  What the defense implies here is that there was no need for Judge Alsup to issue
12  a deadline in *Etienne* because the government quickly issued the Notice of Intent.  That is not the case.
13  Judge Alsup's filing in *Etienne*, attached to the defense brief at Dkt. 951, was issued on March 12, 2019.
14  The government filed its Notice of intent not to seek the death penalty against defendant Rhodes nearly
15  six months later, on September 9, 2019.  *See* Cr 17-0093 WHA, Dkt. 505.

16       Thus, despite Judge Alsup's indication to the government in *Etienne* that he was contemplating
17  establishing a deadline, he did not do so.  Instead, he allowed the process to play out in the Executive
18  Branch, as the Constitution intended.  Further, in *Etienne*, Judge Alsup had set a trial date prior to the
19  Notice Defendant Wendt submitted for this Court's review.  *See id.*, Dkt. 371 (March 5, 2019 Tentative
20  Amended Scheduling Order (Subject to Discussion at the March 13 Conference)).

21       The government does not object to the Court imposing a deadline for submitting a Notice of
22  Intent, but the government submits that this deadline must be linked to a trial date, and it requests that
23  the deadline provide the DOJ sufficient time to complete its internal review of the issue.

24  **3.    There Is No Basis To Reconsider Defendant Nelson's Custody Status**

25       Defendant Nelson's third alternate request for relief is that the Court require the government to
26  show cause why he should not be released on bond.  This request is essentially a request to re-open his
27  detention hearing, and is unwarranted and procedurally improper.  The Bail Reform Act provides a
28  mechanism for re-opening a detention hearing, but only "if the judicial officer finds that information

1  exists that was not known to the movant at the time of the hearing and that has a material bearing on the

2  issue" of detention. 18 U.S.C. § 3142(f). Courts interpret this provision strictly. *United States v. Ward*,

3  63 F. Supp. 2d 1203, 1206 (C.D. Cal. 1999). Under Section 3142(f), defendants must meet two

4  requirements: (1) they must demonstrate that information now exists that was not known to the movant

5  at the time of the initial detention hearing, and (2) they must establish that the new information is

6  material to release conditions regarding flight or dangerousness. *United States v. Martin*, No. 13–CR–

7  00466–JSW (KAW), 2015 WL 3464937, at *2 (N.D. Cal. May 29, 2015) (citing *United States v. Dillon*,

8  938 F.2d 1412 (1st Cir. 1991)). "In other words, the unknown information is material if it increases the

9  chances the defendant appears for his criminal hearing or decreases the danger the defendant poses to an

10  individual or the community as a whole." *Id.*

11  Defendant's argument to reconsider his bond is based on the fact that the government has not yet

12  announced whether it will seek or not seek the death penalty. In essence, he argues that nothing has

13  changed, and therefore, he should be released. This is precisely the opposite of the "new and material"

14  information needed to reopen detention under Section 3142(f).

15  Further, under Section 3142(f), it is the defendant's burden to establish that conditions exist to

16  reopen the detention hearing. By styling the demand as requiring the government to show cause why he

17  should not be released, Defendant Nelson improperly shifts that burden. The Court should deny this

18  request.

19  **CONCLUSION**

20  For the foregoing reasons, the government respectfully requests that the Court deny Defendant

21  Wendt's and Defendant Nelson's motions. If the Court is inclined to set a Notice of Intent deadline, the

22  government requests that it be made in conjunction with establishing a trial date.

23  DATED: March 16, 2020                    Respectfully submitted,

24

25                                          DAVID L. ANDERSON
                                            United States Attorney

26                                          _____/s/_____

27                                          KEVIN J. BARRY
                                            AJAY KRISHNAMURTHY
28                                          Assistant United States Attorneys