1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   AJAY KRISHNAMURTHY (CABN 305533)
    KEVIN J. BARRY (CABN 229748)
5   Assistant United States Attorney

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         FAX: (415) 436-7234
8        Kevin.barry@usdoj.gov

9   Attorneys for United States of America

10                       UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                         SAN FRANCISCO DIVISION

13
    UNITED STATES OF AMERICA,              )   CASE NO. 17-CR-533-EMC
14                                         )
              Plaintiff,                   )   **UNITED STATES' STATEMENT REGARDING**
15                                         )   **RULE 43 AND DEFENDANTS' PRESENCE**
         v.                                )   **DURING A *DAUBERT* HEARING**
16                                         )
    JONATHAN JOSEPH NELSON et al,          )
17                                         )
              Defendants.                  )
18                                         )
    _____    )
19

20

21                              **INTRODUCTION**

22        Because of the COVID-19 pandemic, on March 30, 2020, the Northern District of California

23  issued General Order 74, which directed hearings to be conducted telephonically or through video

24  conference.  The Court had previously set the date for a *Daubert* hearing to evaluate enterprise expert

25  testimony proposed by the government for April 1, 2020.  In the wake of General Order 74, the parties

26  and the Court discussed alternatives to an in-person hearing on this issue, including telephonic or video-

27  conference hearings.  Some defendants objected to proceeding in this manner, largely on the basis that

28

they could not be physically present and would not be able to see the witness in person and provide information to their counsel during the course of questioning.

The Court inquired whether the defendants were actually required to be present during a *Daubert* hearing, as Federal Rule of Criminal Procedure 43(b)(3) states that a "defendant need not be present . . . [when] The proceeding involves only conference or hearing on a question of law."  The Court then invited briefing on the issue.  The government respectfully submits that Defendants' presence is not required for a hearing in which the Court exercises its gatekeeping function under *Daubert*.

## ARGUMENT

### I.    There Is No Need For A *Daubert* Hearing, With Or Without Defendants' Presence

To begin, the government echoes the Court's observation during the last telephonic status conference that the Court could decide the issue of admissibility of the enterprise experts' testimony without a hearing at all.  This makes it evident that the defendants' presence is not required for a *Daubert* hearing.  Indeed, the government submits that the defendants and the Court have more information about the experts' opinion and the bases for those opinions than any RICO defendant has ever had in this district.  *See* Dkt. 1000 (submitting expert disclosures from other cases).  In fact, it is unlikely that the defendants will be able to point to an expert disclosure that is as fulsome and detailed as the disclosures in this case from a RICO case in any other district.

Moreover, the government has narrowed the proposed opinions in the expert notices to only those topics that have been approved in other Northern District of California RICO cases involving enterprise experts.  *See* Dkt. 999, Exhibits 3 and 5 (latest enterprise expert notices).  For example: *United States v. Cerna*, No. CR 08-0730 WHA, Dkt. 2781, at 10 (December 17, 2010 Order):

> . . . Sergeant Molina's interpretation of code words, colors, tattoos, gang territory mapping, and symbols generally will assist the jury in understanding fact evidence otherwise presented at trial and will be allowed.
> * * * *
> . . . Sergeant McDonnell's opinions relating to code words, colors, tattoos, gang territory mapping, and symbols were based on more than conjecture — they were rooted in his own repeated observations of gang turf delineations, colors, symbols, and tattoos, as well as his perception of code words. This will be allowed.

1   *United States v. Williams*, No. CR 13-0764 WHO, Dkt. 927 at 8; 22 (March 9, 2016 Order):

2       Sgt. Jackson's opinions regarding CDP and other Western Addition gangs cover six basic
3       topics: (1) common slang; (2) gang territory; (3) gang symbols; (4) gang alliances and
        rivalries; (5) general characteristics of gangs, including common values and behaviors;
4       and (6) use of rap music. Sgt. Jackson's knowledge and experience qualify him to give
5       expert testimony that will be helpful to jurors on the first three topics, but for a variety of
        reasons he is precluded from giving opinions on the latter three.
6

7   *United States v. Flores*, No. CR 12-0119 SI, Dkt. 1085, at 2 (June 16, 2014 Order):

8       For example, a lay juror would probably not know much, if anything, about the colors
9       and symbols related to the various gangs in the Bay Area. Similarly, a juror would
        probably not understand the significance of specific gang tattoos or gang graffiti.
10      Additionally, a juror might not know the meaning of certain terms such as to "put in
        work" for or be "jumped in" to a gang, or what a "kite" is. As a gang expert, Detective
11      Fukushima could clarify for the jury the meanings of these various terms and symbols.

12  *United States v. Cervantes*, No. CR 12-0792 YGR, Dkt. 928, at 3 (February 9, 2016 Order):

13      The Court finds that the government's disclosures relating to Garrow and Livingston's
14      testimony about gang colors, gang symbols, gang terminology, means of communication,
        and interstate commerce in relation to gangs suffice under Rule 16.
15

16      Further, the Court has the benefit of briefing on the law of enterprise expert disclosures and

17  opinion testimony, as the defense and the government have filed pre-hearing papers on their

18  admissibility, including argument on whether the bases to support the proposed opinions are sufficient

19  under *Daubert*. *See* Dkts. 984 and 999.

20      Thus, while the government still believes that witness testimony may assist the Court in

21  determining the reliability of the proposed experts, the Court currently has all the information it needs to

22  rule on the admissibility of the proposed enterprise expert testimony without holding an evidentiary

23  hearing.[1]

24

25

26      _____
        [1] As the Court knows, some of the experts' testimony is based on internal Hells Angels
27  documents that are cited in the expert disclosures themselves. If the Court elects to make a *Daubert*
    ruling without an evidentiary hearing, the government respectfully requests the opportunity to provide
28  those documents to the Court.

    UNITED STATES' STATEMENT RE: DEFENDANTS' PRESENCE AT A DAUBERT
    HEARING                                              3
    17-CR-533-EMC

## II.    *Daubert* Hearings Are Legal Determinations

### A.    Rule 43 Indicates Defendants' Presence Is Not Mandatory At *Daubert* Hearings

Rule 43 is clear that a defendant has the right to be personally present at the initial appearance, initial arraignment, plea, every trial stage, including empanelment of the jury and return of verdict, and at sentencing.  Fed. R. Crim. Proc. 43(a).  It is equally clear that "a defendant need not be present . . . [if] the proceeding involves only a conference or hearing on a question of law."  Fed. R. Crim. Proc. 43(b)(3).  The Advisory Committee Notes for the 1944 adoption of the rule add further direction.  "This principle [the necessity of the defendant's presence] does not apply to hearings on motions made *prior to* or after trial."  *Id.*, Note 1 (emphasis added).

Rule 43 offers defendants broader rights to be present at stages of the litigation against them than the Constitution provides.  "The statute sweeps more broadly than the corresponding constitutional right because Rule 43 incorporated the more expansive common law understanding of the right as well as the constitutional standard."  *United States v. Reyes*, 764 F.3d 1184, 1189 (9th Cir. 2014).  Even with a broader right, however, Rule 43 specifically exempts the right to be present from proceedings that involve only a question of law.  Fed. Rule Crim. Proc. 43(b)(3).  "An issue can be a question of law, moreover, although it may turn on a factual point, so long as it 'is reserved for the court and excluded from the jury.'"  *Reyes*, 764 F.3d at 1191 (citation omitted).  A trial court's exercise of its gatekeeping function under *Daubert* is precisely such a question.

Although the Ninth Circuit has not directly addressed whether a *Daubert* hearing requires the defendant's presence, it indicated that similar pre-trial motions do not.  In *United States v. Veatch*, 674 F.2d 1217 (9th Cir. 1981), the court held that a conference regarding a motion in limine and a motion to suppress evidence were properly held without the defendant being present.  *Id.* at 1225.  The court began by observing that the right to be present at trial "is not all encompassing or absolute."  *Id.* (citations omitted).  It further found that the hearing was exempted from the presence requirement under Rule 43(b)(3) because "the matters discussed predominantly involved questions of law," and therefore, the defendant would have contributed nothing substantial to the opportunity to defend himself.  *Id.*  It also determined that "the fairness of the trial was not detrimentally affected by [the defendant's] absence

since he was competently and effectively represented by counsel at the conference." *Id.*

In a similar way, the Sixth Circuit held that a pretrial motion to suppress hearing did not require the defendant's presence.

> But Rule 43 does not apply to Burke's suppression hearing. By its text, the rule applies through "every stage of the trial" beginning with the impaneling of the jury, and it applies to only two pre-trial events—the arraignment and the plea. Consequently, the only way Burke's pre-trial suppression hearing could be covered by Rule 43 is if the hearing somehow qualified as a "stage of the trial."

> The background of Rule 43 makes it clear that a pre-trial motion hearing is not a "stage of the trial." The Advisory Committee Notes to the 1944 adoption of Rule 43 explained that "[t]he first sentence of the rule setting forth the necessity of the defendant's presence at arraignment and trial is a restatement of existing law."

*United States v. Burke*, 345 F.3d 416, 422 (6th Cir. 2003) (footnote omitted).  The Sixth Circuit considered the history of Rule 43 and the cases that have addressed it and found the following: "Overall, the authorities are nearly unanimous that Rule 43's right to be present does not apply to pre-trial suppression hearings."  *Id.* at 423-424 (footnote omitted).  In *Burke*, the hearing on the motion to suppress was conducted in a courtroom in Memphis, but the judge presiding over the hearing was located in Michigan and appeared through videoconferencing.  This procedure was required "because there was a severe shortage of judges in the Western District of Tennessee just then."  *Id.* at 420.  The defendant objected to this procedure during the hearing, and on appeal, argued that it violated his rights under Rule 26, Rule 43, and due process.  The Sixth Circuit disagreed, because it was a pretrial proceeding at which the defendant's presence was not required.

In terms of the constitutional arguments the defendant in *Burke* raised, the Sixth Circuit found that his Confrontation Clause rights were not abridged.  "But the physical confrontation right is not absolute, and alternatives such as video-confrontation may be acceptable where 'necessary to further an important policy.'"  *Id.* at 426 (quoting *Maryland v. Craig*, 497 U.S. 836, 852 (1990)).  It also noted that the suppression hearing was not part of a trial.  "Further, the Supreme Court has repeatedly explained that '[t]he right to confrontation is basically a trial right.'"  *Id.* (quoting *Barber v. Page*, 390 U.S. 719, 725 (1968); citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53 (1987); *California v. Green*, 399 U.S.

1   149, 157 (1970)).

2      The Sixth Circuit also found no due process concerns.  The court repeated the fact that the

3   hearing on the motion to suppress was held prior to a trial.  "Here again, however, the Court has held

4   that 'the process due at a suppression hearing may be less demanding and elaborate than the protections

5   accorded the defendant at the trial itself.'"  *Id.* (quoting *United States v. Raddatz*, 447 U.S. 667, 679

6   (1980)).  The court also found that it was "questionable whether Burke's right to a fair and just hearing

7   would have been thwarted even had he been entirely excluded from his suppression hearing."  *Id.*

8      **B.      The Court's Role Under *Daubert* Is To Decide A Question Of Law**

9      The Federal Rules of Evidence permit an expert to provide opinion testimony if "scientific,

10  technical, or other specialized knowledge" will assist the trier-of-fact in understanding the evidence or

11  determining a fact in issue, so long as the witness is "qualified as an expert by knowledge, skill,

12  experience, training, or education."  Fed. R. Evid. 702.  This rule imposes a "gatekeeping role" on the

13  trial judge to ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the

14  task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  Testimony is "relevant

15  if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the

16  knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."

17  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quotation omitted).

18     The fact that the question of admissibility under *Daubert* is a question of law and is excluded

19  from the jury is shown by the distinction between the judge's role as a gatekeeper and the jury's role as

20  the finder of fact.  "*Daubert* makes the district court a gatekeeper, not a fact finder.  When credible,

21  qualified experts disagree, a criminal defendant is entitled to have the jury, not the judge, decide whether

22  the government has proved its case."  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir.

23  2006) (reversing district court's denial of expert testimony about defendant's subnormal intelligence).

24  *Daubert* itself indicated that courts should permit the jury and the adversary system to perform their

25  functions, even where expert evidence may be "shaky."  "Vigorous cross-examination, presentation of

26  contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

27  means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.  This principle was

28

1    reaffirmed by the Ninth Circuit.  "Where, as here, the experts' opinions are not the 'junk science' Rule

2    702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the jury

3    and relying on the safeguards of the adversary system—'[v]igorous cross-examination, presentation of

4    contrary evidence, and careful instruction on the burden of proof'—to 'attack[ ] shaky but admissible

5    evidence.'"  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) (quoting *Daubert*,

6    509 U.S. at 596).  *See also Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010) ("The district court's

7    other concerns . . . both might be useful to the jury as impeachment, but neither furnished an adequate

8    basis for excluding his opinion.") (reversing exclusion of expert medical opinion).  "Basically, the judge

9    is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely

10   because they are impeachable.  The district court is not tasked with deciding whether the expert is right

11   or wrong, just whether his testimony has substance such that it would be helpful to a jury."  *Alaska Rent-*

12   *A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013); *City of Pomona*, 750 F.3d

13   at 1044 (gatekeeping role involves "screen[ing] the jury from unreliable nonsense opinions, but not

14   exclud[ing] opinions merely because they are impeachable") (quotation omitted).

15            What this means for a telephonic or video conference hearing in this case is that even if a

16   defendant listening to the government's proposed experts heard a specific point and immediately wanted

17   to inform his counsel, "that's not how the Hells Angels of Sonoma County actually operate," it has no

18   bearing on whether the Court should admit the expert's testimony.  For an expert testifying on the basis

19   of his or her training and experience, the question for the Court in a *Daubert* challenge is not whether

20   the expert's opinions are correct; it is whether their training and experience provide a sufficient

21   foundation for those opinions.  "Our task, then, is to analyze not what the experts say, but what basis

22   they have for saying it."  *Daubert v. Merrell Dow Pharmaceuticals, Inc. ("Daubert II")*, 43 F.3d 1311,

23   1315 (9th Cir. 1995) (on remand from *Daubert*).

24            As an example, if the government notices a sex trafficking expert with the anticipated opinion

25   that many minor girls are brought into prostitution through threats of physical violence, the defense may

26   believe that opinion is wrong.  They may have consulted experts who opine that most sex trafficking

27   victims become involved willingly, through romantic attachments, etc.  The defense can cross examine

28

the government's expert witness at trial about the opinion regarding violence or can call their own experts to offer a contrary opinion.  At the *Daubert* stage, the question for the Court is not whether the government expert is right.  The question is how much training and experience the expert has.  If a proposed sex trafficking expert has done little more than attended a single training session on the topic and reviewed popular media about pimping and prostitution, then his or her opinions will not have a sufficient basis to be put before the jury.  If, on the other hand, the expert has worked in the field for years, has interviewed prostitutes and pimps, has observed their behavior, has read their literature, has attended and conducted numerous trainings and conferences on the issue, and has previously been recognized as an expert in the area, their opinion should pass muster as reliable.

Thus, whatever the defendants in this case may want to offer during the hearing to rebut the opinions of the government's enterprise experts—"what the experts say"—has no bearing on the Court's assessment of the critical issue in a *Daubert* hearing—"what basis they have for saying it." *Daubert II*, 43 F.3d at 1315.  This issue was squarely addressed in *United States v. Karume*, 841 F.3d 24 (1st Cir. 2016).

In *Karume*, the defendant claimed that his absence from the second day of a *Daubert* hearing for an arson expert was a Confrontation Clause violation, a violation of due process, and a violation of Rule 43.  The First Circuit held that there was Confrontation Clause violation that amounted to non-harmless error because the defendant failed to establish how his presence would have made any difference.  "Karmue neither argues that the District Court's ruling was erroneous nor explains how his presence at the second day of the hearing could conceivably have revealed any error." *Id.* at 27.  The court found no due process violation because the defendant failed to establish what impact his presence would have on assessing the qualifications of the expert witness.  "While Karmue does contend in his briefing to us that he would have been able to assist counsel at the  Daubert hearing, he does not explain what assistance he could have rendered in a hearing about Reddy's credentials as an expert." *Id.*  The First Circuit found no violation of Rule 43 because the *Daubert* hearing was prior to the trial, and it cited two other cases in which courts found no right to be present at similar pretrial hearings. *Id.* (citing *Burke*, 345 F.3d at 423–24 (no right to be present at a pretrial suppression hearing); and *Taylor v. United States*, 385 F.2d 835,

836 (8th Cir. 1967) (no right to be present for a hearing on motions in limine).

### III.   There Is No Due Process Right To Be Present At A *Daubert* Hearing

The Supreme Court has held that a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  *Snyder v. Com. of Mass.*, 291 U.S. 97, 105-06 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489 (1964).  However, the Court in *Snyder* also observed that nowhere in its previous decisions is there a ruling that "the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow."  *Id.* at 106-07.  "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."  *Id.* at 107-08.  This is directly related to the point made above that a *Daubert* hearing is a question of law, not of fact, rendering the defendant's presence of little utility.

Putting these principles into practice, Judge Koh has ruled that the exclusion of the defendant from an initial jury screening process did not violate due process.  *Ervin v. Davis*, 150 F.Supp.3d 1108 (N.D. Cal. 2015).  In that habeas case, the defendant had been charged with first degree murder and faced the death penalty.  The trial judge approved a process by which the parties could jointly review the questionnaires of prospective jurors and stipulate to excuse individuals "whose questionnaire answers clearly showed they (1) would automatically vote for death, (2) would never vote for death, or (3) suffered a financial or physical hardship preventing jury service."  *Id.* at 1128.  Ultimately, this processed winnowed 600 jurors from the pool without any further voir dire.  The defendant did not participate in these discussions.

Judge Koh initially observed that "voir dire is a critical stage of the criminal proceedings during which a defendant has a constitutional right to be present."  *Id.* at 1129-30 (citing *Gomez v. United States*, 490 U.S. 858, 873 (1989); *United States v. Sherwood*, 98 F.3d 402, 407 (9th Cir. 1996)).  However, because the defendant "was present during the remainder of the jury selection process and had ample opportunity to observe jurors during voir dire and assist his attorneys in evaluating prospective jurors," Judge Koh determined that the defendant "failed to establish that his absence during the

1  screening of the jurors' questionnaires frustrated the fairness of his proceedings." *Id.*; *see also Karume*,

2  841 F.3d at 27 (no due process violation where defendant was not present at *Daubert* hearing).

3  **IV.     There Is No Confrontation Clause Right To Be Present At A *Daubert* Hearing**

4         In *United States v. Gagnon*, 470 U.S. 522 (1985), the Supreme Court explained the purpose of

5  the right to be present.  "The constitutional right to presence is rooted to a large extent in the

6  Confrontation Clause of the Sixth Amendment[.]"  *Id.* at 526 (the defendant had no right to be present at

7  an *in camera* conference with a juror who was disturbed by the fact that the defendant was drawing

8  members of the jury during trial).  The Confrontation Clause's functional purpose is to ensure a

9  defendant an opportunity for cross-examination.  *Id.*  At the same time, the Confrontation Clause

10 guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective

11 in whatever way, and to whatever extent, the defense might wish."  *Kentucky v. Stincer*, 482 U.S. 730,

12 739 (1987) (emphasis original) (citations omitted).

13        In *Stincer*, the Court addressed a procedure in Kentucky in which the trial court had the

14 responsibility to determine whether a child witness was competent to give testimony based on the

15 child's answers to questions regarding three basic issues: "whether the child is capable of observing and

16 recollecting facts, whether the child is capable of narrating those facts to a court or jury, and whether the

17 child has a moral sense of the obligation to tell the truth."  *Id.* at 741.  In that case, the trial court

18 conducted an *in camera* hearing with the defense counsel and the prosecutor to determine whether two

19 young children were competent to provide evidence of the defendant's sexual abuse.  The defendant was

20 not at that hearing.  Following the hearing, the trial court exercised its gatekeeping function and

21 determined that the children were competent.  The Court found that the defendant's absence did not

22 affect the ability to conduct cross examination because the two children later took the stand and were

23 subject to cross examination before the jury.  *Id.* at 740.  At that time, the defendant was present and

24 could assist his counsel as necessary.  "Any questions asked during the competency hearing, which

25 respondent's counsel attended and in which he participated, could have been repeated during direct

26 examination and cross-examination of the witnesses in respondent's presence."  *Id.*  "Because

27 respondent had the opportunity for full and effective cross-examination of the two witnesses during trial,

28

UNITED STATES' STATEMENT RE: DEFENDANTS' PRESENCE AT A DAUBERT
HEARING                                               10
17-CR-533-EMC

1   and because of the nature of the competency hearing at issue in this case, we conclude that respondent's

2   rights under the Confrontation Clause were not violated by his exclusion from the competency hearing

3   of the two girls."

4           The same principles apply here.  In this case, if the defendants were not physically present at a

5   *Daubert* hearing, they would not be denied the opportunity to cross examine the enterprise experts.

6   First, their counsel would have ample opportunity to question the experts during that hearing.  *See*

7   *Veatch*, 674 F.2d at 1225 ("the fairness of the trial was not detrimentally affected by Veatch's absence

8   since he was competently and effectively represented by counsel at the conference").  Second, the

9   defendants will be present at trial, when the experts' testimony will be presented to the jury, and

10  whatever assistance they may be able to provide to counsel through their personal knowledge of the

11  Hells Angels enterprise can be employed in their defense at that time.  This is consistent with the

12  principle that consideration of a defendant's exclusion from a portion of the trial must be considered in

13  light of the whole record.  *Snyder*, 291 U.S. at 115.  Third, even if the Court accepts the defendants'

14  argument that their attorneys' cross examination will be somehow less effective without sitting next to

15  them, the Supreme Court's ruling in *Stincer* controls: "Of course, the Confrontation Clause guarantees

16  only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever

17  way, and to whatever extent, the defense might wish."  482 U.S. at 739 (emphasis original) (citation

18  omitted).

19  **V.    The Court Must Weigh Practical Considerations In Assessing Whether To Hold A Hearing**
20  **Without The Defendants' Presence**

21          The Supreme Court has often indicated that the right to be present sometimes must be weighed

22  against other interests, including the practicalities of trial and "the necessity for preserving society's

23  interest in the administration of criminal justice."  *Rushen v. Spain*, 464 U.S. 114 (1983) (reversing grant

24  of a new trial because of trial judge's unrecorded *ex parte* communications with a juror outside the

25  defendant's presence); *id.* at 118-19 ("The lower federal courts' conclusion that an unrecorded *ex parte*

26  communication between trial judge and juror can never be harmless error ignores these day-to-day

27  realities of courtroom life and undermines society's interest in the administration of criminal justice.");

28

*see also Gagnon*, 470 U.S. at 529 ("This analysis [no right to be present for in camera discussion with juror] comports both with the language of Rule 43 and with the everyday practicalities of conducting a trial.").

The reality that practical considerations sometimes need to be considered in assessing a defendant's right to presence can be seen in the Ninth Circuit's decision in *United States v. Yepiz*, 673 Fed. Appx. 691 (9th Cir. 2016) (unpublished), *amended by United States v. Yepiz*, 718 Fed. Appx. 456 (9th Cir. 2017) (unpublished).  In *Yepiz*, the court found that a voir dire procedure where juror sidebars were conducted in the jury room, outside the presence of the defendants, did not violate the defendants' constitutional right to presence.  *Id.* at 698.  The reason for their exclusion was that the defendants could not be moved to the jury room without the prospective jurors noticing their shackles.  The court found that the "voir dire procedures fashioned by the district court did not violate defendants' constitutional right to presence, which must at times yield to the 'day-to-day realities of courtroom life,' as well as 'society's interest in the administration of criminal justice.'"  *Id.* at 698-699 (quoting *Rushen*, 464 U.S. at 119).  "In this case, the district court provided defendants as much ability to observe prospective jurors and participate in the voir dire process as possible in light of the countervailing considerations of security, juror privacy, and courtroom logistics."  *Id.*

For the defendant here, practical considerations cut in two different directions.  On the one hand, if the Court determines that a *Daubert* hearing is necessary, there is no need to hold the hearing during the pendency of General Order 74.  Even with a proposed trial date sometime in December 2020, postponing the *Daubert* hearing until after the restrictions imposed by the COVID-19 pandemic have eased will not impact the trial.  *Daubert* hearings are frequently held closer to trial than the seven or eight months proposed in this case.  In addition, the defense is well aware of the proposed expert testimony.  If the Court rules that the experts' training and experience provide a sufficient basis for their opinions, there will be no surprise for the defense, even if such a ruling is made on the eve of trial.

On the other hand, if the defendants insist on holding a *Daubert* hearing in the very near future, then the practical realities of the pandemic dictate that the hearing will have to be held telephonically or through video conference.  To the extent that some defendants object to proceeding in this fashion, as

discussed above, they do not have a right to be physically present during the hearing.

**CONCLUSION**

The government respectfully submits that if the Court elects to hold a *Daubert* hearing while the COVID-19 pandemic makes it impossible for the defendants to be physically present, this would not infringe any of their rights under the Confrontation Clause, due process, or Rule 43.


DATED:  April 24, 2020                                  Respectfully submitted,

                                                        DAVID L. ANDERSON
                                                        United States Attorney


                                                        _/s/_____
                                                        KEVIN J. BARRY
                                                        AJAY KRISHNAMURTHY
                                                        Assistant United States Attorneys

UNITED STATES' STATEMENT RE: DEFENDANTS' PRESENCE AT A DAUBERT
HEARING                                          13
17-CR-533-EMC