MICHAEL CLOUGH State Bar No. 235410
Law Offices of Michael Clough
6114 LaSalle Ave #833
Oakland, CA 94611
Telephone: (650) 274-7764
Facsimile: (888) 285-4128
cloughlawoffices@gmail.com
Counsel for Defendant Russell A. Lyles, Jr.

**U.S. DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br><br>vs.<br><br>RUSSELL LYLES JR.,<br>            Defendant. | Case No.: 3:17-cr-00533-3 EMC (LB)<br><br>REPLY TO RESPONSE TO NOTICE OF FALSE TESTIMONY BY ATF INTELLIGENCE OPERATIONS SPECIALIST SCHEETZ |

**Introduction**

For the reasons explained in his Notice, counsel for Defendant Lyles opted not to participate in the cross-examination of proposed enterprise expert Scheetz, but Lyles joined the joint post-hearing objections filed by counsel for defendant Wendt. Because he did not participate in the cross-examination of Scheetz -- and because he believes the notice of Scheetz's false testimony merely illustrates in extreme form the grounds articulated in the joint objections for excluding opinion testimony by Scheetz as unreliable, counsel for defendant Lyles does not intend to argue at the hearing. But he is prepared to answer any questions the Court might have about the Shasta/Bobby T. issue -- and, given the definite possibility that specialist Scheetz knowingly testified falsely, he requests that the Court consider recalling specialist Scheetz for an evidentiary hearing on this issue.

Lyles is filing this reply to highlight briefly several critical factual and legal flaws in the government's mea culpa. Rather than frankly admitting the indisputable fact that Scheetz's

testimony was *false,* the government suggests he was merely mistaken -- but without offering any evidence that Scheetz's false testimony was, in fact, merely a mistake rather than an intentional and knowing misstatement.

Rather than acknowledging that, based on the evidence it disclosed to the defense before the hearing, it knew or should have known, at a minimum, that Scheetz's clear, emphatic and repeated assertions Jorge Gil Blanco told him the Shasta charter was frozen because its members failed to retaliate for the shooting of Bobby T. was false, the government tries to suggest it should be excused because:

> If the prosecution "should have known" about Scheetz's factual error, so too should have the defense. But none of the defense counsel raised this issue during the hearing. (Resp. 6-7.)

The problems with this excuse are: 1) the government -- not the defense -- offered Scheetz as its enterprise expert and vouched for his reliability; 2) it is reasonable for the court to presume the government had knowledge of the evidence it disclosed to the defense; and 3) the fact that defense counsel did not alert the government to the falsity of Scheetz's testimony at the hearing does not change the fact it was false -- or the significance of the fact that it was false. The government's attempt to explain away Scheetz's indisputably and uncorrected false testimony also ignores the fact that Scheetz repeated the false explanation of the motion to freeze the Shasta charter and the claim that it was based on what Jorge Gil Blanco told Scheetz multiple times without hesitation in response to direct questions from the court -- and that the government highlighted his false testimony as an example of "compare & contrast," the method Scheetz claims to use to ensure that information he relies on is reliable and to form opinions.

With regard to what defense counsel knew: When Scheetz suddenly offered the Bobby T. theory in response to a question from the Court, Tr. at 157, some defendants' counsel were immediately aware -- as the government should have been -- that Gil Blanco had offered an entirely different explanation for the motion to put Shasta members up for their patches. But defense counsel had no obligation to offer specialist Scheetz an opportunity to correct his "mistake." And, instead of filing a notice of false testimony,

2

counsel for defendant Lyles would have left the record as it was until trial but for two things. First, a motion by defendant Cesena to exclude Scheetz's testimony on *Crawford* grounds; and second, further research into the Bobby T. shooting. Before conducting that research, counsel had know knowledge as to the date that Bobby T. was allegedly shot, or the facts. And it was only then that counsel realized the Bobby T. explanation Scheetz offered was not only "mistaken" it was impossible.

In its notice, the government now attempts to minimize Scheetz's false testimony by claiming the Bobby T. shooting supports Scheetz' opinion. However, as the Court obviously recognizes, there is no evidence in the record concerning the Bobby T. shooting except for Scheetz's false and impossible testimony. Counsel for Lyles has made a detailed request for discovery of the information which evidently originated with ATF Los Angeles -- not Gil Blanco -- regarding that shooting. By itself, the fact that a member of the Mongols shot Bobby T. does not prove anything regarding the Sonoma charter. In contrast, however, the fact there was -- according to ATF Los Angeles -- no retaliation by the Hells Angels for the shooting would seem to disconfirm some of Scheetz's assertions. Based on counsel's knowledge of both the Laughlin case and the ATF Los Angeles infiltration of the Mongols around the time of the Bobby T. shooting, it is also possible that the reason the ATF Los Angeles evidently had substantial knowledge of the shooting and lack of retaliation was because one or more of the individuals arrested based on the Bobby T. shooting were ATF Los Angeles "undercovers," cooperators or informants. These are questions that can only be answered after the government provides the discovery that counsel for Lyles has requested.

For obvious reasons, the government goes to great lengths to deny that it committed a *Napue* violation. But that issue is not before the Court because Defendant Lyles has not asked for any sanctions against the government except that the false testimony should be considered as evidence of Scheetz's unreliability. Nevertheless, he submits the government's claim it did not know what was in evidence it disclosed -- i.e. Gil Blanco's opinion -- raises larger issues about the care and diligence with which the government has developed its case.

Finally, assuming Scheetz was merely mistaken is significant regardless of whether he intentionally lied, as counsel for Lyles reasonably believes might be proven at an evidentiary hearing. The reasons are already explained in the joint defense post-hearing objections, which will be argued at the hearing.

DATED: September 23, 2020

                                      Respectfully submitted,

                                      /s/ Michael Clough
                                      MICHAEL CLOUGH
                                      Attorney for Defendant
                                      RUSSELL LYLES Jr.