DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

AJAY KRISHNAMURTHY (CABN 305533)
KEVIN J. BARRY (CABN 229748)
LINA Y. PENG (NYBN 5150032)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Email: ajay.krishnamurthy@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 17-CR-533-EMC |
| Plaintiff, | |
| v. | Response in Opposition to Defendant's Motion to Modify Conditions of Release |
| JONATHAN JOSEPH NELSON, et al., | Hearing Date: February 11, 2021 |
| Defendants. | |

    Defendant Jonathan Nelson's motion to modify the conditions of release should be denied in part. Nelson is the president of Hells Angels Sonoma County charter, and the Superseding Indictment charges him with racketeering, murder, maiming, assault with a dangerous weapon, and using a firearm in furtherance of a crime of violence. ECF No. 374. In light of these charges and Nelson's position as the leader of a criminal enterprise, the strictest possible conditions of release are necessary to ensure the safety of the community. For these reasons, he should not be permitted to leave the residence of his custodian without prior approval from Pretrial Services or to communicate with his son—who is also a member of the Sonoma County Hells Angels—without supervision. However, the United States does not oppose Nelson's request to use internet-enabled devices, so long as those devices are monitored by

Pretrial Services.

## I. Background

Nelson is the president of the Hells Angels Sonoma County charter (HASC). He was initially charged with racketeering conspiracy, conspiracy to commit murder, maiming, assault with a dangerous weapon, and use of a firearm in furtherance of a crime of violence. ECF No. 1. Nelson was released from custody in December 2017 and remained under the supervision of Pretrial Services until the grand jury returned a superseding indictment in September 2018. Because the superseding indictment added a VICAR murder charge against Nelson, he was ordered detained as both a risk of flight and a danger to the community in October 2018. ECF No. 429.

Judge Chen affirmed that order, finding that Nelson presents a danger to the community because the violent crimes alleged in the Superseding Indictment involve murder, maiming, and assault. "And those are about as serious as you can get in terms of nature and circumstances of the offense." ECF No. 608 at 51:7-8 (Transcript of February 13, 2019 hearing). The Court emphasized that Nelson had a central role in the Hells Angels during the period when many of the crimes alleged in the indictment took place, including the violent offenses with which he is separately charged. *Id.* at 51:15-19. Judge Chen stressed that Nelson is alleged to have played a critical role in the decision to kill the victim of the VICAR murder, and that he is alleged to be directly involved in the assault and maiming of another victim in the indictment. *Id.* at 52:15-21. The Court found that the danger Defendant poses is serious, and it ordered him detained on that basis. *Id.* at 52-53.

In September 2020—after the United States provided notice that it did not intend to seek the death penalty against Nelson—Nelson moved for release. The United States opposed this motion, and Pretrial Services recommended that Nelson remain in custody, largely because of their inability to provide adequate supervision during the COVID-19 pandemic. ECF No. 1183.[1] Judge Chen ordered Nelson released, but did so pursuant to stringent conditions, which this Court included on the bond. ECF No. 1196. Those conditions included that Nelson could not leave the home of his sister (who also serves

---

[1] The transcript of the September 4, 2020 hearing during which Judge Chen considered Nelson's motion was ordered and produced, but the transcript itself does not appear on the docket. It is available from the United States if needed. Pretrial Service's explanation for their recommendation of detention is found on pages 12-13.

Response in Opposition to Motion to Modify Conditions of Release    2
17-CR-533-EMC

as his custodian) in Sunnyvale, California and that Nelson could not have unmonitored contact with his son, who is also a member of the Hells Angels. *Id*.

Because of the limitations of Pretrial Services' supervision during the COVID-19 pandemic, as well as Nelson's status as the leader of a criminal enterprise, those conditions were significant to both the Court and Pretrial Services in ordering Nelson's release. ECF No. 1203 at 5 (acknowledging that son is "a member of the Hells Angels"), 35 (lack of custodian would be "problematic"); Transcript of ECF 1183 (admonishing custodian that "You're essentially the ears and eyes of the Court and of the Pretrial Services people").

## II. Argument

The United States does not oppose Nelson's request to have access to internet-enabled devices, so long as the devices can be monitored by Pretrial Services. But Nelson's requests to leave the home of his custodian without prior approval by Pretrial Services and his request to have unmonitored contact with his son (who is also a member of the Hells Angels) should be denied.

This is a gang case. Courts across the country have recognized that where—as here—defendants are leaders of criminal enterprises and charged with violent crimes, detention is ordinarily warranted. *United States v. Cazares*, 445 F. Supp. 3d 425, 434 (N.D. Cal. 2020); *United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002); *United States v. Colombo*, 777 F.2d 96, 99-100 (2d Cir. 1985). This is so because such defendants are dangerous due to their positions of authority in violent criminal enterprises, *see Colombo*, 777 F.2d at 100, and because they both the incentive and ability continue to commit crimes, including by intimidating witnesses and victims, *see United States v. Marino*, 396 F. App'x 728, 730 (2d Cir. 2010).

Those considerations apply with equal force to Nelson's request to modify the conditions of his release. Nelson is charged with the most serious crime under the law—participating in the murder of one of his fellow Hells Angels members. He is also charged with VICAR assault and maiming. These were not "heat of passion" incidents; instead, they were carefully planned by Nelson, and carried out in ways that demonstrated the Hells Angels' ability to evade law enforcement scrutiny.

First, in July 2014, Nelson and codefendants Wendt and Ott orchestrated the murder of former Hells Angels member Joel Silva. At trial, the United States will establish that Nelson arranged for Ott to

take Silva from Sonoma County to the Fresno Hells Angels clubhouse. Soon after Silva arrived at the clubhouse, Wendt shot him in the back of the head. Silva's body has never been found, and the United States will establish at trial that the body was illegally incinerated at a nearby crematory. Second, Nelson also played a central role in the assault and maiming of Victim 5. Nelson directed the victim—at the time, also a fellow Hells Angels member—to the Sonoma County clubhouse, where the victim was savagely beaten out of the organization. Nelson pistol-whipped the victim and attacked him with a bullwhip, causing injuries that required surgery to address. In addition to these crimes alleged in the Indictment, the government proffered under seal and will establish at trial that Nelson brutally attacked other individuals.

These incidents demonstrate the danger that Nelson poses to the community—both as an individual and as the leader of the HASC. As alleged in the Superseding Indictment, HASC is a criminal enterprise that has violence and intimidation at its core; it has been responsible for a pattern of racketeering activity that includes murder, robbery, sexual assault, extortion, and witness tampering. ECF No. 374. Against this backdrop, Nelson's request to travel to Sonoma County unsupervised will permit him to travel to the same small community in which the victims of and witnesses to his violent crimes live and work. This creates an unacceptable risk of retaliatory violence, intimidation, and harassment as this case heads closer to trial and as the United States reveals additional information about the witnesses who will testify against Nelson and his codefendants.

The only mitigation Nelson offers for this risk is that he has "consistently complied with all conditions of his release." ECF No. 1438 at 4. But that Nelson has behaved well while closely supervised does not lead to the conclusion that less supervision is necessary. Instead, that no new instances of criminal conduct have occurred is a "result of the conditions imposed and demonstrates that these conditions have been successful in preventing any further assaultive incidents[,] which was the purpose" of the conditions imposed. *United States v. Kube*, No. 119CR00257NONESKO, 2020 WL 1984178, at *6 (E.D. Cal. Apr. 27, 2020). This counsels in favor of leaving existing conditions intact.

Nor is there any greater merit to Nelson's contention that he should be returned to the same conditions that he faced prior to the superseding indictment. ECF No. 1438 at 4. The circumstances have changed: Nelson is charged with VICAR murder and if convicted, will serve a mandatory life sentence.

These penalties create a powerful incentive to attempt to dissuade witnesses from testifying, and Nelson should not be provided the opportunity to do so.

Nelson's request for unsupervised communication with his son—who is also a member of the Hells Angels—should also be denied. The Bail Reform Act expressly provides courts with the authority to restrict a defendant's association with others. 18 U.S.C. § 3142(c)(1)(B)(iv). This authority is especially pertinent in gang cases such as this one because, as Magistrate Judge Kim explained, "associating with a criminal gang is likely to lead to criminal activity." ECF No. 907 at 9. Thus, preventing an out-of-custody defendant from associating with fellow gang members is often one of the "least restrictive" conditions necessary to secure the safety of the community. *See* 18 U.S.C. § 3142.

In this case, Nelson has not been prevented from communicating with his son, but can only do so under the supervision of his custodian. This restriction is necessary because Nelson's son is also a gang member, and supervision is important to ensure that Nelson does not return to running the criminal enterprise through his son. Nelson contends that he will not "discuss[] HA business or the evidence in this case," ECF No. 1438 at 6, but of course, without any monitoring, any such reassurance is meaningless. In short, permitting Nelson to communicate with his son unsupervised will also create an unacceptable risk of danger to the community.

### III. Conclusion

For these reasons, this Court should deny Nelson's requests to leave the residence of his custodian without prior approval from Pretrial Services and to communicate with his son without supervision.

DATED: February 4, 2021

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_/s/_
KEVIN J. BARRY
AJAY KRISHNAMURTHY
LINA Y. PENG
Assistant United States Attorneys