RICHARD G. NOVAK (SBN 149303)
P.O. Box 5549
Berkeley, CA 94705
626-578-1175 (voice)
626-685-2562 (facsimile)
E-Mail: Richard@RGNLaw.com

JAI M. GOHEL (SBN 170782)
819 Eddy Street
San Francisco, CA 94109
415-771-6714 (voice)
415-474-3748 (facsimile)
E-Mail: JaiGohel@rocketmail.com

Attorneys for Defendant
JONATHAN JOSEPH NELSON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. CR 17-0533-EMC (LB) |
| **Plaintiff,** | **DEFENDANT JONATHAN NELSON'S REPLY RE: MOTION TO MODIFY CONDITIONS OF RELEASE** |
| **vs.** | |
| **JONATHAN JOSEPH NELSON, et al.,** | Hearing Date: February 11, 2021 |
| **Defendants.** | Hearing Time: 10:00 A.M. |
| | BEFORE THE HONORABLE VIRGINIA K. DeMARCHI, MAGISTRATE JUDGE |

////

////

////

////

////

**I.**

**The Government Rehashes Inflammatory Arguments Made Before the District Court and the Ninth Circuit When Opposing Release, But Fails to Address Mr. Nelson's Previous Perfect Pretrial Compliance Under Much More Liberal Release Conditions Than Are Currently Imposed and Requested for Modification Here**

The government's Opposition rehashes, in an incendiary fashion, the arguments it made both to U.S. District Court Judge Chen, and the Ninth Circuit, when opposing Mr. Nelson's release on bond. These arguments were ultimately not persuasive to either Court. As a result, Mr. Nelson has now been released for nearly four months on ankle monitor, and there have been no pretrial release violations during that time. He has been residing with his sister in Sunnyvale, some 100 miles from his painting business in Sonoma County.

Now, the government uses those same arguments, which emphasize the litany of *allegations* in the Superseding Indictment and Mr. Nelson's role in the Hells Angels before this Court to oppose his reasonable request for modification of his release conditions contained in Mr. Nelson's motion. *See* Govt. Opp. pp. 3:10 – 4:18[i].

Yet, the government does not acknowledge in its Opposition, that Mr. Nelson had a prior 9 month history from December, 2017 to September, 2018, of perfect compliance on pretrial release, under conditions which were gradually liberalized by other Magistrate Judges to conditions which were *much less restrictive than currently imposed*. *See, e.g.*, Docket Nos. 66, 244, 247, 261, 294, 534; Defendant Nelson's Motion, pp. 4:8 – 5:8.

Those less restrictive conditions included: (1) allowing him to reside with his son Jonathan Nelson Jr. (who was a member of the Hells Angels during that

2

1  previous period as well); (2) live in Santa Rosa with an ankle monitor after

2  supervision was transferred from the Pretrial Office in San Jose to Santa Rosa; (3) be

3  allowed to work for Nelson Brothers Painting with his son Jonathan; (4) be allowed

4  internet and smartphones with monitoring by Pretrial.

5      Indeed, the majority of the time that Mr. Nelson was on pretrial release during

6  that nine month period, his conditions were much less restrictive than they are

7  currently during his subsequent release, and less restrictive than the requested

8  modifications here.   Despite living and working in Santa Rosa during that time for

9  seven months with an ankle monitor, Mr. Nelson did not intimidate or threaten

10 witnesses, or engage in any of the conduct for which the Government claims Mr.

11 Nelson poses a danger to the Sonoma County community.  Indeed, seven other Hells

12 Angels members who are co-defendants in this case are also residing in Sonoma

13 County on pretrial release for over three years *without* ankle monitors.

14      The Government, in its Opposition, turns this argument on its head.  It asserts

15 that the fact that there have been no pretrial release violations by Mr. Nelson are

16 proof of the need for strict restrictions.  *See* Govt. Opp. p. 4:19-25.  Yet, the

17 Government fails to acknowledge to this Court that that much of that perfect

18 compliance by Mr. Nelson was when he had significantly less restrictive conditions

19 of pretrial release, as described above.

20      It is clear from the record that Mr. Nelson was remanded after his initial

21 release period solely because the government had superseded on an Indictment

22 alleging a death-eligible charge, even though the underlying alleged conduct by Mr.

23 Nelson was the same as the original Indictment.  The government's decision to add a

24 death-eligible charge on the same set of facts was the only changed circumstance.

25      Once the government chose not to seek the death penalty, after being

26 incarcerated for two years, including part of the incarceration during the Covid-19

27 pandemic, Mr. Nelson moved for release.  Despite vigorous opposition from the

28 Government, he was ultimately released by the District Court, which the

1  Government appealed.   Judge Chen's release order was affirmed by the Ninth

2  Circuit.

3       It is true that Judge Chen's order releasing Mr. Nelson has initially been

4  ordered released on conditions that were stricter than those that were in effect when

5  he was remanded in 2018, however it is clear that the restrictive conditions were a

6  starting point, not a permanent condition.

7

8       MR. GOHEL: ……….Mr. Nelson -- I would propose if the Court were not to
   allow him to live with his son -- he could live with his brother, who is a
9  custodian, whose home is the home that is being -- I would take the other
   argument. He is going to make sure Mr. Nelson is not doing anything because
10 the home that he and his three children live in, young children, would be
   subject to potential forfeiture should there be a violation.
11

12      So I think that that would be probably the most appropriate person and, again,
   would allow Mr. Nelson at least to go from Healdsburg to work in Sonoma
13 County.

14      MR. NOVAK: And he is not a member and he never has been.

15      THE COURT: If there is a release, **it would not start off with being able to
   go out and work initially**. And **the contact with his son**, we would have to
16 visit with that**.  I understand how important that is, but that -- given the
   affiliation, that there would have to be some restriction on that**.

17      MR. GOHEL: Understood.

18      [*See* Attached Exhibit A, Transcript of Motion to Revoke Detention Order
   Hearing  before Judge Chen, August 14, 202, pp. 41:12  - 42:5] (Emphasis
19 added)

20

21

22

23

24

25

26

27

28
                                    4

1    Judge Chen also cited to Mr. Nelson's good performance on pretrial release

2  (including under more liberalized conditions) as a factor favoring his release.

3

4    THE COURT:  ……And I have to weigh the risks here. And part of that risk
      assessment is that -- I mean, Mr. Nelson is facing very serious charges,
5    potential life -- and I presume he knew that --performed well during his nine
      months -- and the fact that he -- you know, he has been compliant during his
6    incarceration of last year, I think is a plus.

7

8
      [*See* Attached Exhibit A, Transcript of Motion to Revoke Detention Order
9    Hearing before Judge Chen, August 14, 202, p. 42:22  - 42:5]

10

11                                          **II.**

12  **Jonathan Nelson Jr.'s Membership in the Hells Angels Should Not Disqualify**

13  **Him From Communicating With His Father, Mr. Nelson, About Family and**

14                **Business Matters Unrelated to the Hells Angels**

15    Mr. Nelson's one and only child, his son, Jonathan, who Mr. Nelson raised, is

16
17  a member of the Hells Angels Motorcycle Club.   He has no criminal history, is

18  gainfully employed as a partner in Nelson Brother's Painting, and is not a defendant

19
20  in this case.  There are no allegations that Jonathan Nelson Jr. was involved in any of

21  the activities the government claims relate to this prosecution.

22    The government repeatedly emphasizes that Jonathan Nelson Jr. is a "gang

23
24  member", and solely by virtue of that membership, should not have unmonitored

25  communication with his father, Mr. Nelson, due to his *mere membership* in the Hells

26  Angels, a group that is derided repeatedly in government pleadings.  *See e.g.,* Govt.

27  Opp. at pp. 4:11-14; 5:3 - 13

28
                                             5

This derision of mere membership in the Hells Angels is contrary to the view of the federal courts, however, which have affirmed Constitutional right of individuals to associate with the Hells Angels. *See Healy v. James*, 408 U.S. 169, 185 (1972) ("the [Supreme] Court has consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization". Such a restriction would also be inconsistent with the Ninth Circuit's holding in *United States v. Rubio*, 727 F.2d 786, 791 (9th Cir. 1981) ("We agree with defendants that the First Amendment protects their right to associate with one another and with the Hells Angels Motorcycle Club"); *see also United States v. Apker*, 705 F.2d 293, 301 (8th Cir. 1983) (finding that the Hells Angels have a constitutionally protected right to freedom of association).

Mr. Nelson's desire to communicate with his son about family and business matters is not a frivolous request. Mr. Nelson's painting contractor business is extremely active with current painting jobs, even in wintertime, stretching the labor resources of the company. New contracts for Nelson Brothers Painting includes another 68 residences in the Spring of this year. Mr. Nelson's contribution to the business at this time is invaluable to the success of the operation and its workers. Modification of his release conditions will positively affect real lives of real people.

////

////

6

# III.

## Conclusion

Mr. Nelson is making this reasonable motion to modify his pretrial release conditions in accordance with a path which gradually liberalize his conditions of pretrial release, which reflects the path taken in his previous successful release period, and which appears consistent with the intent of the District Court when releasing him for a second time in this case.


Dated: February 7, 2021      Respectfully submitted,

RICHARD G. NOVAK
JAI M. GOHEL


/s/*Jai M. Gohel*
JAI M. GOHEL
Attorneys for Jonathan Joseph Nelson

---

[i] The Government's recitation attacking the Hells Angels organization and Mr. Nelson's role and membership in that organization fails to mention personal characteristics presented to the District Court and the Ninth Circuit, including that Mr. Nelson has: (1) a very minimal criminal history (two misdemeanor convictions, the last being 11 years ago which was later expunged pursuant to California Penal Code § 1203.4); (2) a long history of stable self-employment as a painting contractor; (3) coached high school football; (4) raised his son as a single parent; (5) massive community support from a variety of residents of Sonoma County, including a former police officer and local president of the NAACP; (6) offered an unrebutted opinion by mitigation specialist, Dr. Hans Selvog, that he was unlikely to violate terms of his supervised release based on his positive personal characteristics and history.