RICHARD G. NOVAK (SBN 149303)
P.O. Box 5549
Berkeley, CA 94705
626-578-1175 (voice)
626-685-2562 (facsimile)
E-Mail: Richard@RGNLaw.com

JAI M. GOHEL (SBN 170782)
819 Eddy Street
San Francisco, CA 94109
415-771-6714 (voice)
415-474-3748 (facsimile)
E-Mail: JaiGohel@rocketmail.com

Attorneys for Defendant
JONATHAN JOSEPH NELSON

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. CR 17-0533-EMC (LB) |
| **Plaintiff,** | **DEFENDANT JONATHAN NELSON'S NOTICE OF MOTION; MOTION TO PRECLUDE "EXPERT" TESTIMONY OF ERIC S. KENLEY, M.D.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF COUNSEL AND EXHIBITS THERETO** |
| **vs.** | |
| **JONATHAN JOSEPH NELSON, et al.,** | |
| **Defendants.** | **[MATERIALS SUBJECT TO PROTECTIVE ORDERS AND "WITNESS SAFETY" PROTOCOL TO BE SEPARATELY LODGED WITH COURT]** |
| | Hearing Date: March 24, 2021 |
| | Hearing Time: 9:00 A.M. |
| | BEFORE THE HONORABLE EDWARD M. CHEN, DISTRICT JUDGE |

TO THIS HONORABLE COURT, PLAINTIFF, THE UNITED STATES OF AMERICA, AND ITS COUNSEL OF RECORD:  PLEASE TAKE NOTICE THAT at 9:00 a.m. on March 24, 2021, Defendant JONATHAN JOSEPH NELSON, by and through his counsel of record, Richard G. Novak and Jai M. Gohel, will and hereby does move this Honorable Court for an order precluding the United States from presenting certain "expert" testimony by Eric S. Kenley, M.D. at the trial of this matter.

This motion is based upon the attached memorandum of points and authorities, the attached declaration of counsel and exhibits thereto, the record in this matter, and any other matters the court may consider at the hearing on this motion.

Dated: February 9, 2021                Respectfully submitted,

RICHARD G. NOVAK
JAI M. GOHEL


/s/*Richard G. Novak*
RICHARD G. NOVAK
Attorneys for Jonathan Joseph Nelson

TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................ii

I.    Introduction ................................................................................................1

II.   The Government's Disclosures as to the Bases for Dr. Kenley's Proffered
      Expert Testimony Fail to Comply with Rule 16 .............................................1

III.  Dr. Kenley's C.V. Does Not Establish That He Has the Qualifications to
      Testify as to the Mechanisms of the Injuries at Issue ....................................3

IV.   Dr. Kenley's Emergency Department Experience and His Review of the
      Medical Records Are, in the Absence of Any Scientific Methods or Protocols,
      Insufficient Bases for Satisfying the Reliability Prong of *Daubert* ...............3

V.    The Government's Concession That Testimony by the *Treating Physicians*
      Describing Injuries Observed and Treatments or Procedures Recommended or
      Performed *Does Not* Constitute Expert Testimony Renders Dr. Kenley's
      Testimony on the Same Subjects Cumulative and Inadmissible ...................5

VI.   The Government May Not Utilize an Expert Witness Where the Purpose or
      Effect of Their Testimony Is to Bolster or Impeach the Prior Statements or
      Testimony of Alleged Victims Concerning the Causes of Their Injuries.......6

VII.  Conclusion ................................................................................................8

i

1

TABLE OF AUTHORITIES

2

**Cases**

3

*Claar v. Burlington N. R.R.*, 29 F.3d 499 (9th Cir. 1994) ...........................................4

4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,  509 U.S. 579 (1993) ...............4, 5

5

*Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002)...............................4

6

*GE v. Joiner*, 522 U.S. 136 (1997) ................................................................................4

7

*Houle v. Jubilee Fisheries, Inc.* 2005 U.S. Dist. LEXIS 38714 (W.D.
WA, Dec. 14, 2005)........................................................................................4

8

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134 (9th Cir. 1997) .................4

9

*United States v. Beavers*, 756 F.3d 1044 (7th Cir. 2014) ...........................................2

10

*United States v. Binder*, 769 F.2d 696 (9th Cir. 1985) ...........................................6, 7

11

*United States v. Candoli,* 870 F.2d 496 (9th Cir. 1989)..............................................7

12

*United States v. Caputo*, 382 F. Supp. 2d 1045 (N.D. Ill 2005)................................2

13

*United States v. Davis*, 514 F.3d 596 (6th Cir. 2008)..................................................2

14

*United States v. Jackson*, 51 F.3d 646 (7th Cir. 1995) ...............................................2

15

**Rules**

16

Fed. R. Crim. P. 16 ..........................................................................................................2

17

Fed. R. Crim. P. 16(a)(1)(G)......................................................................................2, 3

18

Fed. R. Evid. 403 .............................................................................................................6

19

Fed. R. Evid. 702 .............................................................................................................4

20

Fed. R. Evid. 703 .............................................................................................................6

21

Fed. R. Evid. 705 .............................................................................................................6

22

Fed. R. Evid. 803(4)........................................................................................................7

23

24

25

26

27

28

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### <u>Introduction</u>

On March 6, 2020, the government provided the defendants with notice that it intends to call as an expert witness at the trial of this matter one Eric S. Kenley, M.D. ("Dr. Kenley")  (Novak Decl. Ex. "A").  The government has produced Dr. Kenley's c.v. to the defendants.  (Novak Decl. Ex. "B")

The government intends to call Dr. Kenley to testify concerning the causation of  injuries suffered by two alleged victims:  1) an individual described in the superseding indictment as "Victim 5" and 2) defendant Jeremy Greer.  While Dr. Kenley has not prepared a report, the government's disclosure letter of March 3, 2020 sets forth his proffered opinions.  (Novak Decl. Ex. "A" at 3)  Mr. Nelson moves to preclude these opinions for the reasons set forth in sections II through VI below.

### II.

### <u>The Government's Disclosures as to the Bases for Dr. Kenley's Proffered Expert Testimony Fail to Comply with Rule 16</u>

Subsequent to the government's March 6, 2020 letter disclosing its intent to call Dr. Kenley as an expert witness to testify as outlined above, Mr. Nelson asked the government to provide a more complete disclosure of the bases for his opinions, as the only foundation provided by the government was the contents of his c.v. and a representation that Dr. Kenley had reviewed certain medical records of Mr. Greer and Victim 5.  (Novak Decl. Ex. "C")  Thereafter, the government confirmed that the only bases for his opinions are the experience described in his c.v. and the medical records he reviewed, and declined to provide anything further.  (Novak Decl. Ex. "D")

Dr. Kenley's c.v. discloses that he is a licensed physician and that he is board certified in emergency medicine and obesity medicine.  He has worked as a part-

1    time attending physician in the emergency departments of a number of medical

2    facilities in Illinois and California over the past fifteen years.  He has some teaching

3    experience in emergency medicine but apparently no experience doing research

4    relevant to his proffered testimony.  Nor do his three co-authored publications

5    appear to relate to subject matter of his proffered testimony.

6         The notes of the Advisory Committee on the 1993 amendments to Rule 16,

7    which added the requirement that the government disclose "the bases and reasons for

8    those opinions," instruct that "the amendment requires a summary of the bases relied

9    upon by the expert. That should cover not only written and oral reports, tests,

10   reports, and investigations, but any information that might be recognized as a

11   legitimate basis for an opinion under Federal Rule of Evidence 703, including

12   opinions of other experts." Fed. R. Crim. Proc. 16 (1993 advisory comm. notes)

13        The bare bones disclosure of the bases for Dr. Kenley's opinion does not

14   comply with Rule 16(a)(1)(G).  In *United States v. Davis*, 514 F.3d 596 (6th Cir.

15   2008), the 6th Circuit concluded as much, stating that a one sentence disclosure of

16   the bases for the opinions of chemists which stated that "[t]he findings of each

17   chemist are based upon his/her education, training, experience and scientific tests

18   he/she performed on the substances submitted" did not "adequately indicate the

19   bases for the chemists' laboratory reports."  *Id.* at 612-13.

20        The Seventh Circuit has explained that "the level of detail of the summary of

21   opinions, the bases and reasons for those opinions and the witness's qualifications

22   depends upon the complexity of the expert testimony."  *United States v. Jackson*, 51

23   F.3d 646, 651 (7th Cir. 1995).  "A summary of expert testimony concerning the

24   habits of drug dealers can be much shorter and broader than a summary of expert

25   testimony concerning scientific or technical evidence."  *United States v. Caputo*, 382

26   F. Supp. 2d 1045, 1049 (N.D. Ill 2005).  Where a summary of "opinions or the bases

27   therefore" are "sketchy on details", voir dire is an appropriate remedy.  *United States*

28   *v. Beavers*, 756 F.3d 1044, 1054 (7th Cir. 2014).

The government either has no additional bases to disclose, which, as explained below, calls into question the admissibility of Dr. Kenley's proffered expert opinions, or, if there are further bases, it has failed to disclose them as required by Rule 16(a)(1)(G), and it will be necessary to inquire further into the bases for Dr. Kenley's opinions at an evidentiary hearing at which he testifies.

### III.

### Dr. Kenley's C.V. Does Not Establish That He Has the Qualifications to Testify as to the Mechanisms of the Injuries at Issue

While Dr. Kenley's c.v. suggests he has experience working in emergency departments and is board certified in emergency medicine, his training and experience in treating a presumably wide range of emergency medical conditions does not establish, without more, that he is qualified to render opinions about *the mechanisms* of the blunt force injuries experienced by Victim 5 and Mr. Greer.  He has no apparent training or experience in pathology, let alone the pathology of traumatic injury.  His c.v. reveals nothing about his prior experience studying, researching, diagnosing or differentiating among the various etiologies of blunt force trauma.  Absent further foundation as to his qualifications, the Court should conclude that the government has failed to establish that Dr. Kenley is qualified to testify in the manner proffered by the government.

### IV.

### Dr. Kenley's Emergency Department Experience and His Review of the Medical Records Are, in the Absence of Any Scientific Methods or Protocols, Insufficient Bases for Satisfying the Reliability Prong of *Daubert*

According to the government, the only bases for Dr. Kenley's proffered expert opinions are his training and experience and his review of certain medical records. (Novak Decl. Ex. "D") We can presume therefore, that Dr. Kenley did not speak with any of the treating medical professionals, did not speak with Victim 5 or Mr. Greer about their injuries, did not conduct a physical examination of either of them,

did not consult any specific treatises or studies on the likely mechanisms for the injuries described in the records, did not conduct any experiments, and did not submit his opinions to any other medical professionals for peer review.

In an analogous case, the Ninth Circuit affirmed a trial court decision precluding proffered expert testimony by two medical experts concerning the causation of injuries to railroad employees. *Claar v. Burlington N. R.R.*, 29 F.3d 499 (9th Cir. 1994). The Court noted, first, that in light of Federal Rule of Evidence 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 501. "This entails a preliminary *assessment of whether the reasoning or methodology underlying the testimony is scientifically valid* and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (emphasis in original) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)). Importantly, the Court explained that "the district court was affirmatively required to find that the experts' conclusions were based on scientific knowledge. This requirement means that the court had to determine that Drs. Hines and Nelson arrived at their conclusions using scientific methods and procedures, and that those conclusions were not mere subjective beliefs or unsupported speculation." *Claar,* 29 F.3d at 502. The Court made it clear that *Daubert's* requirements "apply to all proffered expert testimony- not just testimony based on novel scientific methods or evidence." *Claar*, 29 F.3d at 501 n.2; *Accord Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1143 n.8 (9th Cir. 1997). "Medical testimony on causation is a type of scientific testimony that must satisfy the Court's mandate in *Daubert*." *Houle v. Jubilee Fisheries, Inc.* 2005 U.S. Dist. LEXIS 38714 (W.D. WA, Dec. 14, 2005).

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997); *Accord Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002)

1   (affirming the exclusion of *ipse dixit* testimony of plaintiff's expert that was not

2   based upon objective, verifiable evidence).

3         The government's disclosures as to the bases for Dr. Kenley's opinions, and it

4   appears, his opinions themselves, are utterly devoid of scientifically valid reasoning

5   or methodology.  Expert medical testimony concerning causation of injuries is not

6   exempt from this Court's gatekeeping function under *Daubert*.  The proffered

7   testimony should be excluded.

8                                            **V.**

9   **The Government's Concession That Testimony by the *Treating Physicians***

10  **Describing Injuries Observed and Treatments or Procedures Recommended or**

11  **Performed *Does Not* Constitute Expert Testimony Renders Dr. Kenley's**

12  **Testimony on the Same Subjects Cumulative and Inadmissible**

13        In its letter of March 6, 2020, the government discloses that it intends to call

14  as witnesses at trial the treating physicians who will describe injuries suffered by

15  Victim 5 and Mr. Greer.  Counsel writes, "we do not believe such testimony

16  constitutes expert testimony; the treating physicians are instead percipient witnesses

17  who will testify about the injuries they observed and the treatments or procedures

18  they recommended and performed."  (Novak Decl. Ex. "A" at 3)

19        Mr. Nelson agrees that descriptions by treating physicians of injuries observed

20  and treatments or procedures recommended or performed is not expert testimony.

21  The *gravamen* of Dr. Kenley's proffered opinions is not the injuries themselves, but

22  the causes of the injuries.

23        Testimony by Dr. Kenley as to the injuries actually experienced by Victim 5

24  and Mr. Greer, as distinct from his opinions as to the *causes of* those injuries, is not,

25  as the government acknowledges, expert testimony.  Moreover, since Dr. Kenley

26  only reviewed medical records and apparently did not interview or examine either of

27  them, did not communicate with their treating physicians and was not, according to

28  the government, provided with any other information from any other source,

5

testimony by Dr. Kenley *and* the treating physicians as to the injuries observed by the treating physicians would be needlessly cumulative and therefore inadmissible under Federal Rule of Evidence 403.

Mr. Nelson acknowledges that Dr. Kenley can, absent a showing of unreliability under Federal Rule of Evidence 703, rely upon the medical records he reviewed.  However, in order to avoid cumulative testimony, this Court should exercise its discretion under Rule 705 to preclude him from offering testimony on direct examination about the injuries once the treating physicians have done so, or if they will do so.

## VI.

## The Government May Not Utilize an Expert Witness Where the Purpose or Effect of Their Testimony Is to Bolster or Impeach the Prior Statements or Testimony of Alleged Victims Concerning the Causes of Their Injuries

The government's purpose in, or at least the effect of, calling Dr. Kenley to testify is the improper vouching for or impeaching the testimony and/or prior statements of Victim 5 and Mr. Greer.  According to the government's disclosure letter, Dr. Kenley will testify that in his opinion Victim 5's statement to attending medical personnel that he was in a motorcycle accident was false, and that Victim 5's subsequent statement that injuries were the result of an assault and a pistol whipping are, in his opinion, true. Similarly, Dr. Kenley will testify that Mr. Greer's injuries could not have occurred as he reported when he sought medical care.  Dr. Kenley will apparently testify that, in his opinion, Mr. Greer was not truthful when he failed to disclose to medical personnel that he was struck with objects, rather than fists as he reported.  (Novak Decl. Ex. A)

These are wholly improper purposes for expert testimony.  *United States v. Binder*, 769 F.2d 696, 602 (9th Cir. 1985) (agreeing that expert testimony which has the effect of buttressing complaining witnesses' testimony is improper).  "An expert witness is not permitted to testify specifically to a witness' credibility or to testify in

such as manner as to improperly buttress a witness' credibility.  *United States v. Candoli,* 870 F.2d 496, 506 (9th Cir. 1989).  Expert testimony which has the effect of undermining a witness' credibility is the other side of the same coin.

Dr. Kenley's proffered *expert* testimony on the causation of injuries is little more than an attempt by the government to improperly impeach statements made by Victim 5 and Mr. Greer in the course of obtaining medical care.  It is notable that such statements are deemed so inherently reliable that they are well-established exceptions to the hearsay rules.  Federal Rule of Evidence 803 states that statements made for medical diagnosis or treatment are not hearsay, regardless of whether the declarant is available as a witness.  Fed. R. Evid. 803(4).

The parties anticipate that Victim 5 will testify at trial about matters that go far beyond the cause of the injuries documented in his medical records.  Presumably, Victim 5 will testify that when he told medical professionals that his injuries were the result of a motorcycle accident, he was lying, and that when he later told law enforcement that he was the victim of an assault by some of the defendants in this matter, he was telling the truth.  The government certainly has the right to call Victim 5 for that purpose, but it cannot also call Dr. Kenley to offer expert opinions which have "the effect of buttressing complaining witnesses' testimony."  These are the clear holdings of *Binder* and *Candoli*.

The effect of Dr. Kenley's improper buttressing of Victim 5's testimony will go far beyond the narrow question of the genesis of his injuries.  The government has provided the defendants with notice that Victim 5 will testify about a wide range of events, activities and alleged misconduct by the defendants and uncharged associates of the defendants over a considerable period of time.  Improper vouching for his truthfulness by an expert witness will very likely significantly impact the jury's assessment of his credibility.

Regardless of the government's purpose in calling Dr. Kenley as an expert, his core opinions have the *effect* of buttressing or undermining the credibility of

7

1  admissible out of court statements made by Victim 5 and the anticipated testimony

2  of Victim 5.  For this additional reason, the government should be precluded from

3  calling him as an expert witness in this trial.

4  **VII.**

5  **Conclusion**

6       The proffered testimony of Dr. Kenley should be precluded.  The government

7  proposes that he testify to matters that are more properly the province of the treating

8  medical professionals who actually observed, communicated with, diagnosed and

9  treated Victim 5 and Mr. Greer.  In this respect, his testimony would be cumulative.

10  Moreover, the primary and impermissible effect of his proffered expert testimony is

11  to either impeach or bolster the credibility of these alleged victims.  Moreover, the

12  government's showing that Dr. Kenley has the qualifications to testify about the

13  mechanisms of the documented injuries is wholly lacking, and there is no sound

14  scientific or methodological basis for his proffered opinions.

15       Dated: February 9, 2021          Respectfully submitted,

16

17                                        RICHARD G. NOVAK
                                         JAI M. GOHEL

18

19                                        /s/*Richard G. Novak*

20                                        RICHARD G. NOVAK
                                         Attorneys for Jonathan Joseph Nelson

21

22

23

24

25

26

27

28

## <u>DECLARATION OF RICHARD G. NOVAK</u>

I, Richard G. Novak, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court.  Along with Jai Gohel, I am counsel of record for Jonathan Joseph Nelson ("Mr. Nelson") in this action.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      Attached to this declaration as Exhibit A is a true and correct copy of a letter from counsel for the government in this matter, dated March 6, 2020, purporting to set forth the proffered expert opinions of Eric S. Kenley, M.D. (Dr. Kenley) and the bases for his opinions.

3.      Attached to this declaration as Exhibit B is a true and correct copy of the c.v. of Dr. Kenley, provided to me by the government.

4.      Attached to this declaration as Exhibit C is a true and correct copy of an electronic communication from me to counsel for the government in this matter, dated September 19, 2020, seeking additional disclosures from the government concerning the qualifications and bases for the opinions of Dr. Kenley.

5.      Attached to this declaration as Exhibit D is a true and correct copy of the government's response, dated September 22, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of February 2021.

<u>/s/ Richard G. Novak</u>
Richard G. Novak

EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

| | |
|---|---|
| *11th Floor, Federal Building* | *(415)436-7200* |
| *450 Golden Gate Ave., Box 36055* | |
| *San Francisco, CA 94102-3495* | *FAX: (415)436-7234* |

March 6, 2020

Erik Babcock, Esq.
717 Washington Street, Second Floor
Oakland, CA 94607
erik@babcocklawoffice.com
Counsel for Brian Burke

Galia Amram, Esq.
217 Leidesdorff
San Francisco, CA 94111
gamram@durietangri.com
Counsel for Damien Cesena

Martin Sabelli, Esq.
740 Noe Street
San Francisco, CA 94114
msabelli@sabellilaw.com
Counsel for Brian Wendt

James Thomson, Esq.
732 Addison Street, Suite A
Berkeley, CA 94710
james@ycbtal.net
Counsel for David Diaz

George Boisseau, Esq.
740 4th Street, Second Floor
Santa Rosa, CA 95404
boisseaugc@msn.com
Counsel for Raymond Foakes

Randy Sue Pollock, Esq.
286 Santa Clara Avenue
Oakland, CA 94610
rsp@rspollocklaw.com
Counsel for Jeremy Greer

John G. Walsh, Esq.
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
johnwalsh15@rcn.com
Counsel for Christopher Ranieri

Jai Gohel, Esq.
819 Eddy Street
San Francisco, CA 94610
jaigohel@rocketmail.com
Counsel for Jonathan Nelson

Robert Waggener, Esq.
214 Duboce Ave.
San Francisco, CA 94103
rwlaw@mindspring.com
Counsel for Russell Ott

Richard G. Novak, Esq.
65 N. Raymond Ave., Suite 320
Pasadena, CA 91103
richard@rgnlaw.com
Counsel for Jonathan Nelson

James Bustamante
1000 Brannan Street, Suite 488
San Francisco, CA 94103
james@jacksonsquarelaw.com
Counsel for Merl Hefferman

Michael W. Clough, Esq.
6114 LaSalle Ave #833
Oakland, CA 94611
mwclough@gmail.com
Counsel for Russell Lyles, Jr.

Re:   United States v. Nelson, et al.
      17-CR-0533 EMC


Dear Counsel:

We write to provide notice of additional expert testimony.

Collen F. Milligan

The United States may call Dr. Colleen F. Milligan to testify about the examination of crime scenes and disaster sites for evidence of crimes and for human remains. Dr. Milligan's CV can be found at EXPERT-00000778–EXPERT-00000798. Dr. Milligan's testimony is based on her training and experience, including her experience as the Co-Director of the CSU Chico Human Identification Lab. In particular, Dr. Milligan has had experience responding to, and examining human remains from, crime scenes and fatal fire scenes.

Dr. Milligan will testify that forensic anthropologists employ a multi-layered analysis when trying to identify and collect evidence from human remains. This analysis has both macroscopic and microscopic components—including DNA analysis and visual inspection of intact body parts. Often, forensic anthropologists can recover a great deal of accurate information about a deceased person and the events that may have led to his/her death, even from human remains that have degraded. That information often has evidentiary value. For example, in the process of identifying human remains, forensic anthropologists may recover weapons, personal effects of victims, or artifacts left behind by suspects. In addition, forensic anthropologists may also identify injuries or sources of trauma.

Dr. Milligan will also testify about both man-made and natural processes that can make human remains more difficult to identify and analyze for evidence of crimes. For instance, readily-available household chemicals, such as drain cleaners, pool chemicals, and other cleaning products, could potentially destroy body tissue, evidence of crimes, or identifying characteristics of human remains. Similarly, Dr. Milligan will testify that fatal fires—both man-made and naturally occurring—are among the most challenging environments for identifying human remains and collecting evidence. Fire can damage, alter, or destroy valuable evidence. For instance, fire can destroy DNA, or identifying characteristics such as hair color or fingerprints. In addition, fire can cause significant changes to bones that result in discoloration and fragmentation.

Dr. Milligan will also testify that different types of fires present different types of challenges for forensic anthropologists. In particular, while using fire for body disposal is not uncommon, it is difficult to completely destroy human remains outside the context of professional crematoriums. In fact, those who attempt to destroy human remains by burning a body often leave behind identifiable traces, such as bone fragments or incompletely burned body parts.

Dr. Milligan will testify that identifying human remains and collecting evidence is often more difficult following professional cremation than after other fatal fires. Professional cremation generally involves burning bodies in a higher temperatures than occur in other fatal fires. Higher temperatures result in the destruction of more organic matter. After cremation is complete, all organs, tissue, and fat are completely destroyed, while certain bone fragments may survive. However, professional crematoriums also frequently use a pulverization process after cremation is complete. Pulverization involves mechanically breaking up larger bone fragments into smaller particles that are typically too small to retain any useful information. Forensic

anthropologists generally cannot identify human remains after they have been cremated and pulverized at professional crematorium.

Eric S. Kenley

The United States anticipates calling treating physicians to describe injuries suffered by victims in this case, including Jeremy Greer (HA-00033390 – HA-00033427) and Victim 5 (WS-00003158 – WS-00003222, WS-00003223 – WS-00003287). We do not believe such testimony constitutes expert testimony; the treating physicians are instead percipient witnesses who will testify about the injuries they observed and the treatments or procedures they recommended and performed.

The United States may also call Dr. Eric S. Kenley to describe the injuries suffered by Greer and Victim 5, and which were reported in the medical records described above. Dr. Kenley's CV has been produced at EXPERT-00000774–EXPERT-00000777. The basis for Dr. Kenley's testimony is his experience as a physician and his review of the records described above.

*Greer*

Dr. Kenley will testify Greer suffered extensive injuries. Greer suffered bruising to his back and arms, a stab wound to his right forearm, lacerations above his eye, and severe fractures to the nasal bones and left anterior inferior frontal skull. HA-00033399 – HA-00033400. Greer suffered fractures on both sides of his nasal bone, with displacement on the left side, along with bruising and swelling to the soft tissue around his face. HA-00033400. Greer's treating physicians also suspected that he suffered a fracture to the orbital floor. HA-00033400– HA-00033401.

Dr. Kenley will testify that, based on his experience as an emergency department physician, it is relatively rare for someone to suffer a frontal skull fracture. HA-000033400. The front of the skull is a strong bone that rarely breaks in assaults such as the one Greer reported. Dr. Kenley will testify that Greer was struck with a significant amount of force, and likely with an object harder than another person's fist. Dr. Kenley will also testify that the lacerations that Greer suffered are also consistent with being struck by an object harder than another person's fist. Specifically, the stellate laceration on Greer's forehead, HA-00033399, suggests that he was hit with an object with a more focused edge than a fist; fists are generally not sharp enough to cause cuts on that part of a person's forehead, and with that laceration pattern.

*Victim 5*

Dr. Kenley will testify Victim 5 suffered extensive injuries. Victim 5 suffered a concussion, lacerations, and multiple facial fractures. WS-00003182–WS-00003183; WS-00003238. The injuries to Victim's 5 face involved fractures of the left orbital floor, the nasal bone, and the maxillary sinus. WS-00003238–WS-00003239. The fracture of the nasal bone was a comminuted fracture, which means that the bone broke along multiple fracture lines. Victim 5's doctors determined that there was blood in Victim 5's sinuses. WS-00003159. Dr. Kenley will testify that this is an indication of the severity of the facial fractures that Victim 5 suffered.

Dr. Kenley will testify that Victim 5 suffered from vision issues following his injuries. WS-00003244. Specifically, he experienced diplopia. Dr. Kenley will testify that this results from damage to the muscles surrounding the eye. Victim 5 ultimately required surgery to address the facial fractures. WS-00003247.

Dr. Kenley will testify that the injuries Victim 5 suffered are consistent with the assault (and pistol whipping) that Victim 5 eventually reported, but not with the motorcycle accident that Victim 5 first reported. WS-00003237. Dr. Kenley will testify that although the trauma to Victim 5's face was extensive, a motorcycle accident would likely more severe and different types of injuries. For instance, Victim 5 suffered bruising on both sides of his body; this is not consistent with having fallen off a motorcycle.

FBI Special Agent Bryan Taylor

We hope to reach a stipulation as to interstate nexus of various firearms seized during the course of this case. Preliminary E-trace reports have been produced at EXPERT-00000835– EXPERT-00000922. If we are unable to reach a stipulation, FBI Special Agent Bryan Taylor will testify that he examined the identification markings of each of the below firearms, and determined that they were manufactured or sold outside the state of California. SA Taylor's statement of qualifications has been produced at EXPERT-00000923, and the basis for his testimony is his training, experience, and familiarity with firearms and ammunition, how and where firearms and ammunition are manufactured, the physical examinations done in this case, the results generated by those examinations, his interpretation of those results, and his review of industry-related reference materials and databases.

| Firearm | Manufactured Outside CA | Sold Outside CA |
|---|---|---|
| 1B54 | Yes – Glock | |
| 1B202 | Yes – Ruger | |
| 1B257 | Yes – Maverick Arms | |
| 1B306 | | Yes – Las Vegas, NV |
| 1B566 | Yes – Standard Manufacturing | Yes – New Britain CT |
| 1B828 | Yes – Romarm/Cugir | Yes – Cave Junction, OR |
| 1B832 | Yes – Anderson Manufacturing | Yes – Henderson, NV |
| 1B880 | Yes – Chelton Arms Shelton | |
| 1B929 | Yes - Echasa | |
| 1B70 | | Yes - Huntsville AL |
| 1B225 | Yes – Walther | |
| 1B230 | Yes – Glock GMBH | |
| 1B231 | Yes – HS Products | |
| 1B283 | Yes – HS Products | Yes - Las Vegas NV |
| 1B371 | Yes – Heckler and Koch | |
| 1B456 | | Yes - Long Prairie, MN |
| 1B457 | | Yes - New Haven, CT |
| 1B566 | | Yes - New Britain, CT |
| 1B570 | | Yes - Las Vegas, NV |
| 1B573 | Yes – Glock GMBH | |
| 1B711 | Yes – Glock GMBH | |
| 1B781 | Yes - Taurus | Yes - Chandler, AZ |

DNA Testing of Hard Hat

As we've discussed, DNA testing for a hard hat with "That's Mr. Dough to you" written on it (1B756) is still in process. Once testing has been completed, we may provide notice of an additional expert witness to interpret those results.


Please contact me if you have any questions concerning the foregoing.


Sincerely,

DAVID L. ANDERSON
United States Attorney


_____/s/_____
AJAY KRISHNAMURTHY
KEVIN J. BARRY
Assistant United States Attorneys

EXHIBIT B

# Eric Stephen Kenley, MD FAAEM

1948 Cambridge Place Walnut Creek, CA 94598

773.632.7244

drkenley@icloud.com

## Licensure & Specialty Training

**American Board of Emergency Medicine-** Board Certified until 2028
Qualifying Examination (Written Boards) 11/07- Passed
Oral Examination 05/08-passed
Recert 09/2018-passed

**American Board of Obesity Medicine-** Board Certified until 2027
Written Examination 12/16- Passed

**Medical Board of California,** Licensed Physician-Active

**Kansas State Board of Healing Arts,** Licensed Physician-Inactive

**Illinois Dept. of Financial and Professional Regulation,** Licensed Physician-Inactive

## Medical Training

Emergency Medicine Residency 07/2004 –06/2007

**University of Chicago Hospitals, Chicago, IL**

## Education

Doctor of Medicine   09/1999 – 08/2003

**University of California, San Francisco School of Medicine**

Bachelor of Medical Science 09/1999 – 06/2001

**University of California, San Francisco School of Medicine**

Molecular Biology   09/1997 – 06/1999

**Thurgood Marshall College, University of California, San Diego**

Premedical Biology   09/1995 – 06/1997

**American River College, Sacramento, California**

## Military Service

**US Air Force Reserves** 09/1994 – 06/1999

Aeromedical Evacuation Specialist, Enlisted Senior Airman March ARB, Riverside, CA
Travis AFB, Fairfield, CA

**US Air Force Active Duty, Enlisted** 12/1992 – 10/1993

Palace Chase transfer to USAFR
Honorably Discharged Beale AFB, CA

1

EXPERT-00000774

## **Professional Work History**

### **Contra Costa Regional Medical Center, Martinez CA**
Locum Tenens ED Attending, 04/18-Present
County Hospital ED, ~45,000 Annual ED Visit

### **Kaiser Permanente Medical Center, Vallejo, CA**
Part-time ED Attending, 09/2017-Present
>50,000 Annual ED Visits

### **Medicus VIP, Fitness Focused Medicine, Walnut Creek, CA**
My Own Fitness/Nutrition Focused Wellness Clinic- 10/2016-09/2018
Physician supervised High-Intensity Exercise and Diet for treatment of Insulin resistance
and Metabolic Disease (Obesity, Diabetes/Prediabetes, HTN, Dyslipidemia, etc.)

### **St. Joseph's Medical Center, Stockton CA**
Kaiser Partner Hospital
Locums Tenens ED Attending Part-time, 10/2016-11
>90,000 Annual ED Visits

### **Mercy San Juan Medical Center, Carmichael, CA**
CEP Reservist Part-time Attending ED,10/2016-02/2017
Level II Trauma Center

### **John Muir Medical Center, Walnut Creek, CA**
Attending Physician, 07/2013-08/2016
*Assistant Medical Director/Director PA/NP Program* Jan 2015-Present
52,000 Annual ED Visits
Level II Trauma Center

### **St. John's Regional Medical Center, Oxnard, CA &**
### **St. John's Pleasant Valley Hospital, Camarillo, CA**
Director Quality Improvement, Peer Review
*Assistant Medical Director,* 07/2011-07/13
45,000 Annual ED Visits

### **San Joaquin Community Hospital, Bakersfield, CA**
Part-time Attending 02/2011-07/2013
75,000 Annual ED Visits

### **Santa Clara Valley Medical Center, San Jose, CA**
Level I Trauma Center/County Hospital
Attending Physician, 01/2010-07/2011
Stanford Emergency Residency Teaching Facility
140,000 Annual ED visits

EXPERT-00000775

**John Muir Medical Center, Concord, CA**
Attending Physician, 11/20009-07/2011
45,000 Annual ED visits

**Emanuel Medical Center, Turlock, CA**
Associate Medical Director, 01/2009-12/2009
Attending Physician, 08/2008-12/2009
65,000 Annual ED visits

**University of Chicago Medical Center**
Section of Emergency Medicine 08/2007 - 01/2009
*Clinical Associate*, Resident Education
55,000 Annual ED visits

**St. Francis Hospital, Litchfield, IL**
Attending Physician, 03/08-10/09
12000 Annual ED Visits

**Community Hospital of Ottawa, Ottawa, IL**
Attending Physician, 07/2007 - 06/2008
21500 Annual ED Visits

**Flight Physician, University of Chicago Aeromedical Network (UCAN)**
07/2005 – 06/2007

**University of Chicago Emergency Medicine Resident**
07/2004 – 06/2007

## Publications

"*Risk-reducing salpingo-oophorectomy in BRCA mutation carriers: role of serial sectioning in the detection of occult malignancy.*"

**C. Bethan Powell, Eric Kenley, Lee-may Chen, Beth Crawford, Jane McLennan, Charles Zaloudek, Miriam Komaromy, Mary Beattie, John Ziegler**

*Journal of Clinical Oncology*, Vol 23, No 1 (January 1), 2005: pp. 127-132

Editorial Review Board- Blumen I (ed): ***Principles and Direction of Air Medical Transport*, Air Medical Physician Association**, Salt Lake City, UT; 2006.

Contributing Author- ***Blueprints Notes & Cases- Anatomy and Histology***, Editor Aaron B. Caughey, Blackwell Publishing- final printing held indefinitely

Contributing Editor- ***First Aid for the USMLE Step 1 2000: A Student to Student Guide***, Vikas Bhushan, Tao Le, Anthony Chu, Chirag Amin, Esther Choo, Jean Shein, Appleton & Lange Publishing, 2000

3

## Research/Teaching Experience

**Stanford/Kaiser Permanente Emergency Medicine Residency**

Emergency Attending Teaching Faculty, 01/2010 - 07/2011

Santa Clara Valley Medical Center, Department of Emergency Medicine

**UC Davis Physician Assistant School**

**Certified Preceptor,** 08/2008 - 08/2009 Clinical Associate, Resident Education

**University of Chicago, Section of Emergency Medicine**

Clinical Associate, Resident Education, 08/2007 - 01/2009

**Team of Ethics and Emergency Medicine (TEEM)**

Section of Emergency Medicine and University of Chicago MacLean Center for Medical Ethics 2006 – Present

**USCF Cancer Risk Program and Dept. of Gyn Onc**

Clinical Researcher UCSF Dept. of Medicine, Research Assistant 12/1999 – 01/2003

**Children's Hospital Oakland Research Institute**

Infectious Disease Field Researcher 06/2000 – 09/2000

**UC San Diego Cancer Research Center**

Chancellor's Research Scholar 06/1998 – 05/1999

## Professional Associations/Committees

**American Academy of Emergency Physicians**, (AAEM) Fellow 2009-Present

**American College of Emergency Physicians**, (ACEP) Resident Member 2004 –2007, Diplomat/Fellow Candidate 2008-Present

**California College of Emergency Physicians**, (Cal ACEP) 2009-Present

EXPERT-00000777

EXHIBIT C



## Us v. Nelson et al.: Government Expert Issues related to trial #1

**Richard Novak** <richard@rgnlaw.com>                                                    Sat, Sep 19, 2020 at 3:28 PM
To: "Krishnamurthy, Ajay (USACAN)" <ajay.krishnamurthy@usdoj.gov>, "Barry, Kevin (USACAN)"
<Kevin.Barry@usdoj.gov>, "Peng, Lina (USACAN)" <lina.peng@usdoj.gov>
Cc: "Jai M. Gohel" <jaigohel@rocketmail.com>, Marcia Morrissey <MorrisseyMA@aol.com>, Robert Waggener
<rwlaw@mindspring.com>, Martin Sabelli <msabelli@sabellilaw.com>, John Philipsborn <JPhilipsbo@aol.com>

Kevin, Ajay and Lina,

We are presently scheduled to undertake two additional *Daubert* hearings, as you know, in the remaining months of
this year.  This email addresses those hearings and the government's disclosure obligations under Rule 16(a)(1)(G)
with which it was to have complied many months ago.

With respect to the round #2 Daubert hearing scheduled for certain dates in November 2020, you disclosed in a letter
dated October 7, 2019 that your cellular analysis expert is Special Agent Meredith Sparano, you disclosed
certain opinions on pages 16-17 of that letter, and you referenced in that letter two "CAST Reports" which
accompanied that letter.  You also provided a declaration executed by SA Sparano and her c.v. via a letter dated
August 14, 2020.  While I understand that you are presently engaged in discussions with the defense, through Bob
Waggener, with respect to the sufficiency of the disclosures on this issue, I have a couple of specific questions.

1) **Please confirm** that SA Sparano is the **only** law enforcement officer who will offer testimony in trial #1 about
cellular record analysis by law enforcement.

2) In your letter of October 7, 2019, you refer to two sets of phone numbers as to which SA Sparano did cellular record
analysis.  The CAST Reports that accompanied that letter concern analysis of cellular records for two periods of time:
July 15, 2014 and February 11, 2015.  The CAST Reports suggest that she has only received cellular records for
those two periods of time.   The declaration of SA Sparano dated August 12, 2020 refers only to the July 2014
records, which we assume is a result of your decision not to offer the "404(b) evidence" related to the alleged
disappearances of Mr. Huff and Mr. Carasis.  **Please confirm** that the only specific cellular records about which SA
Sparano will offer testimony in your case-in-chief at trial #1 are those which relate to her opinions about the events of
July 2014.

With respect to the round #3 Daubert hearing scheduled for December 16, 2020, I reference your letter dated March
6, 2020.  In that letter, you provided notice of three experts on three separate and distinct issues: 1) Dr. Colleen F.
Milligan, 2) Dr. Eric S. Kenley and 3) SA Bryan Taylor.

1) **Please confirm** that with the obvious exceptions of Analyst Sheetz and SA Sparano, the government does *not*
intend to call any other witnesses at trial #1 whose testimony *may* be subject to Federal Rule of Evidence 702.

2) **Please also confirm** that the only opinions Dr. Millgan, Dr. Kenley and SA Taylor will offer at trial #1 are those set
forth in the letter of March 6, 2020.

3) With respect to Dr. Kenley, you disclosed certain opinions in your letter of March 6, but the only basis for his opinion
is "his experience as an emergency department physician."  I don't believe this barebones statement as to the
foundation for his opinions satisfies the Court's orders in this matter or Rule 16.  Without waiving any argument that
any additional disclosures are untimely, I am asking that you **please provide** a more complete disclosure as to the
foundation for his opinions, and that you do so well in advance of the briefing schedule you recently proposed.

4) With respect to Dr. Milligan, you have provided a number of opinions and her lengthy c.v. but you do not disclose
any case-specific materials she has reviewed or any case-specific information that has been provided or explained to
her.  WIthout waiving any argument that any additional disclosures are untimely, **please inform me** of a) any case-
specific materials she has reviewed or has been apprised of and b) any case-specific opinions she may testify to at
trial #1 beyond the general opinions set forth in your letter of March 6.

I would appreciate it if you would address each of these issues before our September 23 so any disputes that may remain about your disclosure obligations can be brought to the court's attention on that date if necessary.

Thank you,

Richard Novak

**Richard G. Novak, Esq.**
**Law Offices of Richard G. Novak**
**65 N. Raymond Ave., Suite 320**
**Pasadena, CA 91103**
**626-578-1175 (voice)**
**626-685-2562 (fax)**
**626-808-7908 (cell)**
richard@rgnlaw.com

EXHIBIT D

 Gmail                                                         Richard Novak <richard@rgnlaw.com>

---

## Us v. Nelson et al.: Government Expert Issues related to trial #1

**Peng, Lina (USACAN)** <Lina.Peng@usdoj.gov>                    Tue, Sep 22, 2020 at 5:17 PM
To: Richard Novak <richard@rgnlaw.com>
Cc: "Jai M. Gohel" <jaigohel@rocketmail.com>, Marcia Morrissey <MorrisseyMA@aol.com>, Robert Waggener
<rwlaw@mindspring.com>, Martin Sabelli <msabelli@sabellilaw.com>, John Philipsborn <JPhilipsbo@aol.com>,
"Krishnamurthy, Ajay (USACAN)" <Ajay.Krishnamurthy@usdoj.gov>, "Barry, Kevin (USACAN)" <Kevin.Barry@usdoj.gov>

Richard,

Thanks for your email.  Please see our response below to your questions.

CAST

1)   SA Sparano is the only law enforcement witness who will offer CAST analysis at Trial #1.

2)   Based on Judge Chen's rulings, we will not offer CAST testimony regarding February 11, 2015.

Round 3 Daubert

1)   Please refer to the Government's expert disclosure dated March 6, 2020.

2)   Please refer to the Government's expert disclosure dated March 6, 2020.  As noted in that letter,
the Government anticipates calling treating physicians as percipient witnesses to describe injuries
suffered by victims in this case.

3)   The Government believes Dr. Kenley's disclosure is adequate under Rule 16 as set forth in the
March 6, 2020, letter, which incorporates by reference his CV setting forth his experience and medical
records reviewed.

4)   We anticipate providing a short additional supplemental disclosure with respect to Dr. Milligan.

Best,

Lina

**From:** Richard Novak <richard@rgnlaw.com>
**Sent:** Saturday, September 19, 2020 3:28 PM
**To:** Krishnamurthy, Ajay (USACAN) <AKrishnamurthy@usa.doj.gov>; Barry, Kevin (USACAN)
<KBarry2@usa.doj.gov>; Peng, Lina (USACAN) <LPeng@usa.doj.gov>
**Cc:** Jai M. Gohel <jaigohel@rocketmail.com>; Marcia Morrissey <MorrisseyMA@aol.com>; Robert
Waggener <rwlaw@mindspring.com>; Martin Sabelli <msabelli@sabellilaw.com>; John Philipsborn

<JPhilipsbo@aol.com>
**Subject:** Us v. Nelson et al.: Government Expert Issues related to trial #1

Kevin, Ajay and Lina,

[Quoted text hidden]