UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN JOSEPH NELSON,<br><br>Defendant. | Case No. 17-cr-00533-EMC-1   (VKD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE**<br><br>Re: Dkt. No. 1438 |

Defendant Jonathan Joseph Nelson moves for an order modifying the conditions of his pretrial release the Court set on September 4 and 10, 2020. Dkt. No. 1438. Specifically, Mr. Nelson asks the Court to permit him to: (1) leave the residence of Tracy Vasquez, a surety on the bond and his custodian, in Sunnyvale, California for no more than 14 hours per day, three days per week, so that he may travel to Sonoma County to participate in the operation of his painting business; (2) communicate with his son and business partner Jonathan Nelson, Jr. without Ms. Vasquez's supervision; and (3) use internet-enabled devices for business and other legitimate purposes, subject to monitoring arranged through Pretrial Services. *Id.* at 2. The United States does not oppose Mr. Nelson's request to use internet-enabled devices, so long as Pretrial Services monitors those devices. Dkt. No. 1463 at 1–2. However, the United States opposes Mr. Nelson's other proposed modifications. *Id.*

The Court held a hearing on Mr. Nelson's motion on February 11, 2021. Dkt. No. 1487. For the reasons explained below, the Court modifies Mr. Nelson's conditions of pretrial release to allow him to use internet-enabled devices for business and other legitimate purposes, subject to monitoring arranged through Pretrial Services, and will permit him to communicate without

1  supervision with his son Jonathan Nelson, Jr. by means of those internet-enabled and monitored
2  devices regarding matters relating to the conduct of Mr. Nelson's painting business. The Court
3  denies Mr. Nelson's motion as to the remainder of the modifications requested.

## I.     DISCUSSION

Mr. Nelson is charged in the superseding indictment with racketeering, murder and conspiracy to commit murder, maiming, assault with a dangerous weapon, and using a firearm in furtherance of a crime of violence. Dkt. No. 374. Although the United States initially sought the death penalty for the charge of murder in aid of racketeering (18 U.S.C. § 1959(a)(1)), it has since determined not to seek that penalty. Rather, if Mr. Nelson is convicted of that charge, he will be sentenced to a mandatory term of life in prison. *See* Dkt. No. 1463 at 4; Dkt. No. 1203 at 43:3-6.

Mr. Nelson argues that the modifications to his release conditions are warranted because he has consistently complied with all conditions of release the Court previously set and because the existing conditions are unnecessarily restrictive. Further, Mr. Nelson argues that the modifications he seeks are necessary to ensure that he is able to effectively maintain employment and run his family painting business for which he is principally responsible.

The United States argues that Mr. Nelson is both a danger to the community and a flight risk, and that the release conditions limiting his ability to leave his residence and to communicate with his son Jonathan Nelson, Jr. are essential to mitigating those risks. The United States observes that while Mr. Nelson previously faced a potential sentence of life in prison on the original indictment, he now faces a mandatory sentence of life in prison if convicted. The United States does not object to Mr. Nelson using monitored internet-enabled devices as proposed.

Pretrial Services recommends against permitting Mr. Nelson to travel to Sonoma County, observing that he does pose a danger to the community and that the COVID-19 pandemic has made it more difficult for Pretrial Services to monitor directly Mr. Nelson's conduct, requiring Pretrial Services to rely heavily on the efforts of his custodian, Ms. Vasquez.

In assessing the merits of Mr. Nelson's motion, the Court considers whether the conditions imposed are the least restrictive conditions necessary to reasonably assure Mr. Nelson's appearance as required and the safety of other persons and the community. *See* 18 U.S.C.

§ 3142(c). The Court has considered not only the briefing and arguments of counsel and the recommendations of Pretrial Services, but also the two most recent proceedings before Judge Chen on the question of whether Mr. Nelson should be released from detention, and if so, under what conditions. Although the Court's decision on this motion reflects its independent judgment, the undersigned has endeavored to take into account the presiding judge's prior findings and statements of reasons. In particular, the Court has carefully reviewed the transcripts of the hearings held on August 14 and September 4, 2020 before Judge Chen. Dkt. No. 1203; Tr. of Sept. 4, 2020 Proceedings.

In determining that Mr. Nelson should be released on conditions, Judge Chen acknowledged the United States' "serious concerns" about releasing Mr. Nelson from custody and indicated that he shared those concerns. Tr. of Sept. 4, 2020 Proceedings at 18:25–19:2. In proceedings before the undersigned and before Judge Chen, the United States proffered that it has identified witnesses who fear Mr. Nelson and his presence in Sonoma County. *See id.* at 9:6-13; 10:10-14; Dkt. No. 1487. Judge Chen observed that while Mr. Nelson is no longer subject to the death penalty upon conviction, he now faces a mandatory sentence of life in prison, which creates an incentive to flee, intimidate witnesses, or take other action to avoid that consequence. Tr. of Sept. 4, 2020 Proceedings at 19:2-9; Dkt. No. 1203 at 9:12-15; 13:20-23; 25:14-17; 43:3-6. However, Judge Chen also noted that there is a significant difference between facing the death penalty and facing life in prison, and that Mr. Nelson did well when he was previously released with pending charges that carried a potential (although not mandatory) term of life in prison. Tr. of Sept. 4, 2020 Proceedings at 19:4-14; Dkt. No. 1203 at 17:8-9; 25:14-17.

In setting Mr. Nelson's conditions of release, Judge Chen emphasized that the conditions should ensure "distance" between Mr. Nelson and members of the Hells Angels. Dkt. No. 1203 at 43:21–44:1. In addition, Judge Chen emphasized the need for supervision and a reliable surety. Given those considerations and the limitations on Pretrial Services' ability to engage in direct supervision during the COVID-19 pandemic, Judge Chen indicated that conditions of release would require a custodian who is not affiliated with the Hells Angels and who can be relied upon to enforce any restrictions the Court imposed. *Id.* at 43:21–44:4; Tr. of Sept. 4, 2020 Proceedings

at 19:15-23.

Judge Chen set conditions of release that included restrictions on Mr. Nelson's movements and communications. Dkt. No. 1196-1. Specifically, Mr. Nelson's release order specifies that he remain in the custody of his sister, Ms. Vazquez, in Sunnyvale and that he not leave his residence except for: religious services; medical, substance abuse, or mental health treatment; attorney visits; and court appearances. *Id.* In addition, the order prohibits Mr. Nelson from using or accessing any computers or email. *Id.* The order further specifies that Mr. Nelson have no contact with members of the Hells Angels, except that he may have contact with his son Jonathan Nelson Jr. (who is also a Hells Angels member) under the following conditions: they must not discuss any Hells Angels business or activities; they must not discuss this case, including witnesses, discovery, evidence, strategy, or any other case-related matters; and all telephonic/digital or in-person contact between defendant and his son must be supervised by Ms. Vazquez. *Id.* It is not clear that Judge Chen set these conditions merely as a starting point with the intent that the Court would necessarily relax them over time, as Mr. Nelson contends.

By all accounts, and to his credit, Mr. Nelson has complied with the conditions of release set in September 2020. While the Court is mindful of the need to impose the least restrictive conditions that will reasonably assure the safety of others and the community and Mr. Nelson's appearance as required, Mr. Nelson's successful compliance with the existing conditions does not necessarily imply that those conditions are too restrictive. Likewise, his successful compliance with less restrictive conditions under different circumstances also does not necessarily imply that his existing conditions are too restrictive.

In this Court's view, the current restrictions on Mr. Nelson's geographic movements and the existing arrangements for supervision by his custodian should be preserved for the same reasons Judge Chen identified in September 2020. This is particularly so given the concerns Pretrial Services has expressed about the ability to supervise Mr. Nelson during the COVID-19 pandemic. Likewise, Ms. Vasquez continues to serve an important role in supervising Mr. Nelson's communications. However, the Court is persuaded that certain restrictions on Mr. Nelson's communications and his use of internet-enabled devices can be modified to allow him to

assist with his family's painting business, while continuing to reasonably assure the safety of the community and Mr. Nelson's appearance as required.  Accordingly, the Court modifies Mr. Nelson's conditions of pretrial release to allow him to use internet-enabled devices for business and other legitimate purposes, subject to monitoring arranged through Pretrial Services, and will permit him to communicate without supervision with his son Jonathan Nelson, Jr. by means of those internet-enabled and monitored devices regarding matters relating to the conduct of Mr. Nelson's painting business.  The Court otherwise denies Mr. Nelson's motion.

## II. CONCLUSION

For the reasons discussed above, the Court orders that Mr. Nelson's conditions of release shall be modified as follows:

(1) Mr. Nelson may use internet-enabled devices for business and other legitimate purposes, subject to monitoring arranged through Pretrial Services.  Communications over such devices need not be supervised by Ms. Vazquez, as they will be monitored by Pretrial Services.

(2) Mr. Nelson may communicate with his son Jonathan Nelson, Jr., without supervision by Ms. Vazquez, solely by means of the internet-enabled and monitored devices identified above, but only to the extent those communications are limited to matters relating to the conduct of Mr. Nelson's painting business.   All other communications and contact must be supervised by Ms. Vazquez and are subject to the conditions stated in the September 11, 2020 release order. Dkt. No. 1196-1.

All other the conditions as stated in the September 11, 2020 release order (Dkt. No. 1196-1) remain in effect.

The modifications ordered above may be implemented once Pretrial Services advises the Court and the parties that the required monitoring is in place, and upon written acknowledgement by Ms. Vazquez and Stephen Nelson that they do not object to the modifications.  Either party may seek review of this order by application to Judge Chen.

///

///

**IT IS SO ORDERED.**

Dated: February 17, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge