UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JONATHAN JOSEPH NELSON, et al.<br>Defendant. | Case No. 17-cr-00533-EMC-1<br><br>**PRETRIAL CONFERENCE ORDER** |

### I. INTRODUCTION

On March 18, 2022, the Court held a pretrial conference to address various issues raised by the parties in preparation for trial and to establish certain procedures, protocol, and schedule. The Court's rulings and instructions follow.

### II. JURY SELECTION PROCESS

The Court noted that the jury administrator is planning to send the questionnaires out during the last week of March. The responses should be back by March 30, 2022 or April 1, 2022. The Court proposed April 8, 2022 for reviewing the responses in court to determine who can be excused from reporting for voir dire. The Court plans on starting voir dire on April 1, 2022. The Court stated that each tranche will be approximately 50 people and noted that it intends to spend about 3 to 3.5 hours with each tranche. The Court plans to seat 12 jurors and have 6 alternates.

The jurors will be referred to by numbers rather than name. The parties will have the list with names. That list is subject to a protective order under which the names will be shared only with the prosecutors and Group One defendants and their counsel and legal team.

Mr. Philipsborn inquired as to whether the Court has an instruction that it will use as to the

use of an anonymous jury motif so as to minimize the effect and or concerns that the jurors may have.  The Court stated that it will entertain an instruction but noted that in some courts that procedure (of referencing jurors by number) is routine and that an instruction could raise a negative inference that would not otherwise be drawn.  The Court thus questioned the need for an instruction.  Mr. Philipsborn inquired as to whether the Court intended to use the number assigned to each respective juror throughout the trial.  The Court stated that it planned to use the number throughout.  Mr. Gohel joined in the objection to the use of an anonymous jury motif/number references to jurors and noted that in state court names are used.  The Court noted that for many jurors this will be their first experience sitting on a jury in federal court and thus use of juror numbers will not appear extraordinary to them.

### III.     ADDITIONAL PEREMPTORY CHALLENGES

The defense requested additional peremptory challenges in motions in limine and the Court inquired as to whether the defense objected to an increase in peremptory challenges for the Government.  Defense counsel did not object to an increase in peremptory challenges for the Government.  The Court noted the discretion it has in granting additional peremptory challenges and granted 4 additional peremptory challenges for the defense in total and 2 additional peremptory challenges to the prosecution.  The Court noted that that means 14 in total peremptory challenges to the defense and 8 in total for the Government.  The Government requested that it also be granted an additional 4 peremptory challenges.  The Court denied the request.

### IV.     INDIVIDUALIZED VOIR DIRE

The Court asked if there was something beyond the normal precautions taken during voir dire that the parties were seeking in regards to the defense request for individualized voir dire.  The defense noted situations in which it may be preferable for discussions to take place in private.  The Court stated that its intent is to take the lead from any juror who indicates a preference to answer certain questions privately.

### V.     VACCINATION STATUS

The Court inquired as to whether the Government knew if any of its witnesses were not fully vaccinated.  The Government stated that it has not yet inquired.  The Court proposed that any

witness, counsel, or party that is not fully vaccinated (and boosted according to CDC Guidelines) take a rapid test. Witnesses would take the rapid test before testifying. The Government is responsible for testing its witnesses. All counsel indicated they were fully vaccinated and boosted. Only one defendant is not fully vaccinated, Mr. Nelson. He will be tested at the beginning and mid-week of each week. The Court will explore whether CJA funds will be available to pay the cost of his testing. Defense counsel will be responsible for procuring and administering the tests.

The Court raised the issue of juror vaccination. The Court explained the potential disruption that might occur if, *e.g.*, an unvaccinated juror is exposed to someone with COVID-19 and has to quarantine for at least five (5) days under current CDC Guidelines. In contrast a fully vaccinated juror would not have to quarantine in the absence of symptoms. Further some prospective jurors may be reluctant to serve if they knew there were other jurors who were not vaccinated. The Government stated that it does not have an objection to requiring a fully vaccinated jury. Mr. Novak for Mr. Nelson objected. He directed the Court to a district court order out of Delaware and statistics indicating higher rates of not fully vaccinated individuals in Black and Hispanic communities in the Bay Area counties comprising the San Francisco District Court jury pool. The Court stated that this legal issue should be briefed prior to the meeting on April 8, 2022. The Court asked the parties to submit briefing on the issue by March 30, 2022. The Court requested simultaneous briefing on the parties' respective legal views. The Court's actual decision may await review of the returned juror questionnaires.

## VI.     MASKING

The Court noted that its prior practice was to have everyone in the courtroom masked, including the witness. The Court stated its current intent is to allow the witness to not be masked. Additionally, the Court noted that it would like to have the ability to not have the questioner masked. That is the Court's intent at this point, but the Court noted that it may revise its plan if health conditions change. Opening statements shall be allowed to be made unmasked absent change.

### VII. SOCIAL DISTANCING

The Court stated that it intends to maintain social distancing and some jurors will likely be in the pews.  The Court noted that it will be using Judge Chhabria's courtroom for trial and noted that the trial will be available for viewing by other defendants via on closed Zoom (*i.e.*, Zoom meeting, not webinar).  The Court stated that it is working on getting an overflow courtroom or viewing room for the public.

As for Mr. Foakes's presence, the Court noted that it is exploring with the U.S. Marshals the possibility he will be able to watch the trial from SRJ (although a classroom may not be available for the duration of the trial), the 20th floor, or another courtroom.

### VIII. TRIAL SCHEDULE

The Court stated that its trial schedule is 8:45 a.m. to 1:45 p.m., with Thursdays being dark.  The Court noted that if this trial goes slower than expected, it may have to extend some of those days to get in more hours.  It stated that there will be two twenty-minute (20) breaks daily.  The Court also noted that it has potential blackout dates in either May or June that will take in toto about a week's time:  April 29, May 2-3, May 27, June 1-3, June 24, July 18-20.  The Court expressed that some of these blackout dates may go away.  The case needs to be completed by the end of July.

### IX. ADVANCED NOTICE OF WITNESSES AND EXHIBITS

The Court noted that the issue of advanced notice was raised in the motions in limine.  The Government did not object to doing 48 hours/two court days in advance for notice of witnesses and exhibits.  The Government stated that it will doing everything it can, but asked for latitude for example, if someone's child gets sick, etc.  The Government asked that it be a good faith effort and not a hard-set requirement.  The Court found that **two court days** in advance is appropriate notice.  The Government must act with diligence and in good faith.  The Court reserves the authority to exclude witness for non-compliance.

### X. TRIAL BRIEFS

The Court ordered the parties to file trial briefs that outline the case (evidence and charges) filed by March 30, 2022 with the Court.

4

## XI. *JENCKS* AND *BRADY* OBLIGATIONS

The Court inquired as to whether the Government anticipated more interviews and *Jencks* statements. The Court noted that it previously ordered the Government to keep a record of these interviews and preserve notes. Mr. Novak stated that the defense would expect notes to be produced if there is *Brady* material which includes more than statements which are not limited to outright disavowal of prior statements. The Court noted the issue under *Jencks* is whether something is a statement of the witness. The Court ordered the Government to bring the notes/files so that if this issue arises, it can view the notes in camera if necessary.

## XII. DAILY TRANSCRIPT REQUESTS

The Court granted this request, but emphasized that there is a shortage of reporters so it will do its best to accommodate.

## XIII. NON-PARTY WITNESS EXCLUSION

The Court inquired as to any objection as to non-party witnesses' capacity for serving as a representative of the Government. Defendants did not object to Sgt. Harm and Agent Lane serving as the Government's representatives. However, the agents will be instructed not to discuss testimony that they have heard with other witnesses expected to testify. Defense indicated it is possible an investigator present at trial may need to testify. They will give advance notice so any issue can be dealt with.

## XIV. ADDITIONAL MOTIONS IN LIMINE

As for the request to file additional motions in limine and an additional hearing on such motions that was made in defense motions in limine, the Court stated that additional motions are subject prior approval based on good cause. The Court will entertain additional motions in limine if they address new material and could not have been brought earlier and will set an additional hearing if necessary.

## XV. RULE 16(B)

The Court noted that failure to comply (by either party) with the rule could result in consequences.

### XVI. MR. WENDT'S ALIBI DEFENSE DISCLOSURE

The Government stated that Mr. Wendt's statement does not suffice under Rule 12.1. The Government argued that this disclosure is late and emphasized that the Government still does not know what the alibi defense is going to be. Mr. Philipsborn stated that the defense is alerting the Government to facts which create reasonable doubt and is not strictly an alibi. The Court refused to exclude this evidence. The Court noted that the main point is that the Government has now been given notice of a possible defense to the alleged murder and possible witnesses and the substance of their testimony have been disclosed. The purpose of Rule 12.1 has been satisfied here. The defense will be prohibited from presenting evidence outside the scope of the defense it has disclosed.

### XVII. MOTION TO CONTINUE

As for Mr. Ott's continuance motion, the Court noted the details regarding Ms. Morrisey's fall and injury and stated that it is reluctant to grant a continuance for various reasons, stated on the record, including the fact that the case has already been continued numerous times, most recently from March to April 11, nearly all the pretrial work has been done, and Mr. Waggener has played a central role in this case and is well familiar with the facts. Mr. Ott has not demonstrated why Ms. Morrisey's unavailability resulting from her accident and surgery has impeded counsel's ability to prepare for trial. Ms. Morrisey has been off prescription pain medication for several days. Her ability to assist remotely is facilitated by technology, as much of her work has been done through remote communications; Ms. Morrisey resides in Los Angeles, and nearly all proceedings in this case since the pandemic have been virtual. On the other hand, the Government pointed out examples of prejudice it would suffer from further delay, including the fact that it has subpoenaed reluctant witnesses whose cooperation and compliance may be lost if the trial is continued again. The Court further notes that CIs and victims have now been identified and exposed and that the exposure period has already been prolonged by the continuance of the trial from March to April. The Court had already ordered the disclosure well in advance of the original trial date notwithstanding the Government's safety concern. Extending trial would increase that risk. Also, two defendants, one of whom is in Group One, have been in custody for well over 4

years; any further delay will prolong their pretrial detention. The parties have already raised significant due process concerns, concerns which grow with time. The Court also notes that because of the limit of the number of trials that can be held at any one time stemming from the pandemic and juror responses to summonses and the Court's allocation of trial time available to the judges of the Court, delaying trial by four weeks would substantially disrupt the scheduling and coordination of other trials already scheduled. The Court stated that if a doctor definitively certifies that Ms. Morrisey cannot travel for trial from Los Angeles to San Francisco under any circumstance, and thus cannot attend trial (Ms. Morrisey acknowledges she could obtain physical therapy in San Francisco), it might reconsider. The Court notes that even if Ms. Morrisey cannot attend, the Government has forcefully argued that Mr. Waggener is a veteran attorney very experienced in these kinds of complex criminal cases and is well prepared for this case. Furthermore, there are four other experienced attorneys (including two learned counsels) representing the two other defendants who for the most part have parallel overlapping interests with Mr. Ott. Thus, Mr. Ott will benefit from the defenses (and cross-examination of the government's witnesses) put on by the co-defendants; as the Government put it, Mr. Waggener is not "on an island." At this point, the motion to continue is denied, and the Court is disinclined to delay trial. *United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999) (noting that the district court has broad discretion when ruling on a continuance motion and holding that where a review of the record demonstrates care and patience exercised by the trial court, the Ninth Circuit could not say that the trial court failed to act within its broad discretion in denying a defendant's motion for continuance on the eve trial). But the Court does not preclude Mr. Ott from moving for reconsideration if a sufficient showing is made to warrant reconsideration.

### XVIII.    MR. PHILIPSBORN'S POTENTIAL CONFLICT

The Court noted the potential schedule conflict, but it does not appear to be an issue at this point.

### XIX.    EXHIBITS AND OBJECTIONS

The Court stated to the extent there are bulk exhibits that contain multiple files, the Government should clarify if it intends to introduce everything or just specific portions. The

Court urged the Government to use discretion now and vet large bulk exhibits.

As for the Court's requested bellwether exhibits and objections, each of the parties are to identify 15 exhibits specific for which they would like a ruling. Each party shall identify the 15 exhibits and any objections thereto within one week.

### XX.  FURTHER PRETRIAL CONFERENCE

The Court will convene again on April 6, 2022 for a further pretrial conference. It plans to address exhibit objections, vaccination issues, and jury instructions.

**IT IS SO ORDERED**.

Dated: March 22, 2022

_____
EDWARD M. CHEN
United States District Judge