1
2
3
4              UNITED STATES DISTRICT COURT
5             NORTHERN DISTRICT OF CALIFORNIA
6
7    UNITED STATES OF AMERICA,              Case No. 17-cr-00533-EMC-1
8                      Plaintiff,
9           v.                             **ORDER ON EXCUSING
                                           UNVACCINATED JURORS**
10   JONATHAN JOSEPH NELSON, et al.
11                    Defendants.
12
13
14            **I.       INTRODUCTION**
15          On April 8, 2022, the Court discussed with the parties preliminary excusals of prospective

16   jurors for hardship and/or for cause.  Docket No. 2559 ("Minute Order").  First, the Court excused

17   prospective jurors that the parties agreed should be excused for hardship and/or cause.  *Id.* at 2.

18   Next, the Court discussed various remaining prospective jurors in dispute and made

19   determinations as to whether excusal without the need for in-court voir dire was appropriate.  *Id.* at

20   2-3.  Finally, the Court excused seven prospective jurors – two of which the defense sought

21   excusal on other grounds – because they were not vaccinated against COVID-19.  Of the

22   remaining five prospective jurors, two were in a tranche just received and had not been reviewed

23   for cause and hardship; thus as to those prospective jurors reviewed by the parties and who were

24   not already subject to challenge, the Court excused three unvaccinated prospective jurors out of a

25   total of 240.  The Court excused these prospective jurors in order to minimize disruption to the

26   trial proceedings and ensure the safety and the viability of jury service by the overwhelming

27   majority of jurors who stated in the questionnaire that they would *not* be comfortable serving with

28   unvaccinated jurors.  *Id.* at 3-4.  This order provides further reasoning as to the Court's excusal of

United States District Court
Northern District of California

these unvaccinated jurors.

## II.    BACKGROUND

The venire originally consisted of 300 individuals.  On April 7, 2022, based on the 240 that had been submitted, the parties stipulated to many of those who should be excused from jury service based on hardship and/or cause.  On April 8, 2022, the Court discussed the stipulations with the parties.  First, the Court dismissed over 75 jurors that the parties agreed should be excused for hardship and/or cause.  Minute Order at 1.  Second, the Court discussed various other prospective jurors and excused an additional 35 for hardship and/or cause.  *Id.*  Finally, the Court excused four prospective jurors (Juror Nos. 91, 177, 123, 131) from that group that remained in the venire based on their unvaccinated status.  *Id.*  Two of those had been challenged by the defense on hardship/cause grounds.  The Court received a late traunche of over 50 more jurors when the parties had not had a chance to review.  The Court excused Juror Nos. 260, 264 and 278.  All other jurors in the venire who have completed jury questionnaires self-reported that they were fully vaccinated against COVID-19.

An overwhelming majority of prospective jurors indicated that they were not comfortable serving on a jury with unvaccinated individuals.  *Id.* at 3.  The government and Defendant Nelson both assented to the Court's excusal of the seven unvaccinated individuals, stating that the Court should be able to tell the remaining prospective jurors that all jurors who will be chosen to serve will include only those that have been vaccinated against COVID-19.  *Id.*  Defendants Ott and Nelson objected to the Court's excusal of the jurors based on vaccination status, standing on their briefing regarding import of the excusals on the Sixth Amendment.  *See* Docket Nos. 2508, 2511.

## III.    DISCUSSION

A.    Court's Authority to Excuse Unvaccinated Jurors

The Jury Selection and Service Act (the "JSSA") authorizes district courts to exclude from jury service any venire-person who is "likely to disrupt the proceedings."  28 U.S.C. § 1866(c)(2).  Several district courts have recently relied on this provision of the JSSA to exclude unvaccinated individuals from the venire.  *See, e.g., United States v. Cole*, 20-cr-424, 2022 WL 332083, at *5 (N.D. Ohio Feb. 3, 2022); *United States v. Elias*, 18-CR-33, 2022 WL 125721, at *4 (E.D.N.Y.

United States District Court
Northern District of California

1    Jan. 13, 2022*); *Joffe v. King & Spaulding LLP*, 2021 WL 5864427, at *4 (S.D.N.Y. Dec. 10,

2    2021); *United States v. Moses*, 2021 WL 4739789, at *3 (W.D.N.Y. Oct. 12, 2021); *United States*

3    *v. O'Lear*, 19-cr-349, 2022 WL 419947, at *3 (N.D. Ohio Feb. 11, 2022); *United States v.*

4    *McMillion*, 20-cr-242-JSW, Docket No. 222, at 6 (N.D. Cal. March 23, 2022).

5         The Court, like those courts, concludes that unvaccinated individuals are substantially

6    likely to cause disruption because they are considerably more likely to contract and spread

7    COVID-19, which would delay or suspend the proceedings while jurors isolate.  *See e.g., Joffe*

8    2021 WL 5864427 at *4; *In re National Prescription Opiate Litigation,* No. 18-OP-45032, 2022

9    WL 668434, at *6–7 (N.D. Ohio Mar. 7, 2022) ("The Court need only to look to the pre-trial

10   proceedings to support the conclusion that unvaccinated potential jurors were likely to be

11   disruptive—one unvaccinated venire-person had to be excused when he contracted COVID-19 just

12   days before jury selection began, and another unvaccinated venire-person was excused after he

13   was cleared for cause during voir dire because his wife contracted COVID-19. . . The Court. . .

14   excluded the unvaccinated potential jurors to minimize the risk of a mistrial.").  Under current

15   CDC guidelines, an unvaccinated individual who tests positive for COVID-19 or is exposed to a

16   close contact infected with COVID-19 is instructed to isolate or quarantine for a minimum of 5

17   days.  *See* Quarantine and Isolation, Centers for Disease Control and Prevention,

18   https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html (last updated

19   March 30, 2022).  In the event that a seated juror is required to isolate or quarantine, the Court will

20   be required to suspend the trial proceedings for the duration of the individual's absence.

21   Moreover, here, an overwhelming majority of prospective jurors indicated that they would not feel

22   comfortable serving on a jury in this case, which estimated to last for approximately three months,

23   with an unvaccinated juror.  There is a substantial risk that many will refuse to serve or would be

24   anxious and distracted if they are forced to serve with unvaccinated jurors.  Accordingly, the Court

25   determines that the excusals of seven unvaccinated prospective jurors is warranted on the basis

26   that their service "would be likely to disrupt the proceedings."  *See* 28 U.S.C. § 1866(c).

27   B.    Assessing Excusal of Unvaccinated Jurors

28         The Court also concludes its exclusion of these seven jurors out of a pool of nearly 300

United States District Court
Northern District of California

3

would not violate the Constitution.  Criminal defendants have a well-established right to a jury pool drawn from a fair cross-section of the community.  *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"); 28 U.S.C. § 1861 (codifying the right to "juries selected at random from a fair cross section of the community in the district or division wherein the court convenes").  This right applies to the jury pool but does not extend to the petit jury.  *Lockhart v. McCree*, 476 U.S. 162, 174 (1986).  The Court also considers the rights of the prospective jurors to serve because "all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States[.]"  28 U.S.C. § 1861.

In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court established the framework for evaluating claims that jury selection procedures violate the fair cross-section requirements safeguarded by the Constitution and the Jury Selection and Service Act (JSSA), 28 U.S.C. § 1861 *et seq*.  Under the *Duren* framework, the movant bears the initial burden of establishing a *prima facie* case for a violation by showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systemic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364.  If the movant satisfies this *prima facie* showing, then the burden shifts to the non-movant to demonstrate that the violation was justified because "a fair cross section [would] be incompatible with a significant state interest."  *Id.* at 368.

1.      Distinctive Group

The Court finds that jurors are not vaccinated against COVID-19 do not constitute a "distinctive group."  Under the first *Duren* element, a group is not "distinctive" simply because they have "shared attitudes" about a particular issue.  *Lockhart*, 476 U.S. at 175 (holding that people who are opposed to the death penalty are not a "distinctive group" and may be excluded from the venire in capital cases because viewpoints are subject to change).  While the Supreme

United States District Court
Northern District of California

4

Court has not specifically defined that term, it has only applied it to groups presenting "some immutable characteristic such as race, gender, or ethnic background." *Id.* at 175-76. The Court stated that the label did not apply to an attribute within the juror's control, that is, an opinion that the juror may change at some time. *Id*. at 176. "In our view, groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors . . . are not 'distinctive groups' for fair-cross-section purposes." *Id*. at 174. In *Lockhart,* the Court also clarified that

> the concept of "distinctiveness" must be linked to the purposes of the fair-cross-section requirement … (1) guarding against the exercise of arbitrary power and ensuring that the commonsense judgment of the community will act as a hedge against the overzealous or mistaken prosecutor, (2) preserving public confidence in the fairness of the criminal justice system, and (3) implementing our belief that sharing in the administration of justice is a phase of civic responsibility.

*Id.* (quoting *Taylor v. Louisiana*, 419 U.S. 522, 530-531 (1975)) (internal quotations and alterations omitted).

This Court agrees with other courts that have held that the "unvaccinated" do not compose a "distinctive" group within the meaning of *Duren* because, "an individual's vaccination status is within that individual's control, and the status can change in an instant, when the vaccine is taken," and because "the unvaccinated population lacks the necessary common attitude, idea, or experience to be considered a distinctive group because there is a "myriad of reasons" why someone may decline the vaccine." *In re National Prescription Opiate Litigation,* No. 18-OP-45032, 2022 WL 668434, at *8. Indeed, the objecting Defendants concede that there is no unifying rationale that connects all individuals who are unvaccinated so as to constitute a "distinctive group" within the meaning of the first *Duren* prong. Docket No. 2508 at 6 ("Group One understands that there may be tenable differences of opinion about whether individuals who hold certain beliefs that cause them to behave in given ways such as to forego a medical treatment, including vaccination during a specific pandemic, are a cognizable group."); *id.* at 7 ("Group One acknowledges that research on the description of the society of the unvaccinated continues.").

Further, a group that is "defined solely in terms of shared attitudes that would prevent or

United States District Court
Northern District of California

1  substantially impair members of the group from performing one of their duties as jurors,"

2  generally will not satisfy the first prong of the *Duren* test.  *Lockhart*, 476 U.S. at 174.  The *Elias*

3  and *Moses* courts also concluded that excluding unvaccinated jurors would not substantially

4  impair the rights of those individuals because it would preclude them from serving on other

5  criminal juries.  *Elias*, 2022 WL 125721, at *4; *Moses*, 2021 WL 4739789, at *4.  This Court

6  agrees.

7          2.      Underrepresentation

8          Moreover, the objecting Defendants do not expressly argue or present evidence that the

9  excusal of the seven unvaccinated prospective jurors has the effect of underrepresenting a

10  historically cognizable distinctive group, such as a gender, racial or ethnic group, from the jury

11  pool.  *Cf.* Docket No. 2508 at 6 (acknowledging that overall vaccination rates among persons over

12  the age of 18 in the San Francisco/Oakland jury exceed 80%).  Objecting Defendants do not

13  contend that the seven excusals here are a proxy for another distinctive group.  Even if objecting

14  Defendants were to advance such an argument, courts have rejected the supposition that

15  vaccination status is a proxy for a distinctive group, such as race or political ideology, finding

16  these assertions speculative or lacking support in data.  *See e.g., In re National Prescription*

17  *Opiate Litigation,* 2022 WL 668434. at *8-9 ("While Defendants are correct that the unvaccinated

18  population largely consists of political conservatives, their own statistics indicate that 8% of self-

19  identified Democrats and 32% of self-identified Independents, were unvaccinated around the time

20  of trial.  Thus, the unvaccinated population has a heterogenous mix of beliefs, even if left-leaning

21  or independent individuals are a statistical minority within the group.); *Moses*, 2021 WL 4739789,

22  at *4 ("The government has suggested that vaccination status may serve as a proxy for race,

23  because 'current data suggests that black citizens have comparatively lower vaccination rates.'

24  However, the government has provided no meaningful analysis of that issue, merely citing to

25  national and state data tracking websites that it concedes are incomplete.  This speculative

26  assertion is insufficient to demonstrate a violation of the fair cross-section requirement.").

27          Thus, in terms of vaccination status serving as a proxy for exclusion of a distinctive group,

28  the Court concludes there is no showing that the excusal of the seven prospective jurors from a

venire of 300 "exclude[s] individuals based along historically disenfranchised lines,"; nor is there any evidence that any distinctive group "would be disproportionately underrepresented in violation of the second element of the *Duren* test." *Elias*, 2022 WL 125721, at *5; *see also Duren*, 439 U.S. at 364. The impact on the representativeness of the jury pool as a result of the excusal of seven jurors from the venire of 300 is de minimis. Moreover, the Court has examined the racial/ethnic composition of the excluded individuals. Four are white, and three are Latinx. None are Black, the most underrepresented racial group in this Court's jury pool.

### 3. Systemic Exclusion

Even if the objecting Defendants had satisfied the first and second prongs of the *Duren* test (which they have not), they would fail on the third prong. Systematic exclusion requires a showing that "the underrepresentation is due to the system of jury selection itself, rather than external forces." *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996). The Court agrees with others courts that have held that "[t]he COVID-19 pandemic and the effects that it has had on in-person proceedings are external forces for the purposes of *Duren*." *Joffe*, 2021 WL 5864427, at *6; *In re National Prescription Opiate Litigation,* No. 18-OP-45032, 2022 WL 668434, at *9 (same); *Elias*, 2022 WL 125721, at *5 (same); *see also United States v. Charles*, 20-CR-41, 2021 WL 2457139, at *4 (S.D.N.Y. June 16, 2021) (holding that the Government's decision to indict the defendant in White Plains "arose as a result of the COVID-19 pandemic — not an inherent problem with the SDNY Jury Plan"); *United States v. Tagliaferro*, 19-CR-472, 2021 WL 1172502, at *5 (S.D.N.Y. Mar. 29, 2021) ("[U]nfortunate as these effects may be, one cannot seriously dispute the fact that the COVID-19 pandemic is an external force."). Moreover, as noted above, exclusion of the seven prospective jurors would not, in fact, effectuate a systematic exclusion in this case.

### 4. Significant State Interest

Finally, even if objecting Defendants had made out a prima facia showing under *Duren*, the Court concludes that there are significant interests that would be incompatible with including the seven unvaccinated jurors. *See Duren*, 439 U.S. at 368. The parties estimate that this trial will last approximately three months. As already noted, unvaccinated jurors present a significantly

elevated risk of being infected with COVID-19, which would then require an infected juror to isolate for a minimum of five days, or for as long as they remain symptomatic.  The Court would be forced to suspend proceedings for the duration of any juror's absence.  Moreover, based on the responses from an overwhelming majority of prospective jurors that they would not be comfortable sitting on a jury with an unvaccinated fellow juror, the Court determines that it may not be feasible to seat a jury from the already expanded venire if the unvaccinated jurors were not excused.  *See Elias*, 2022 WL 125721, at *6 ("The state has a compelling interest in preventing the spread of COVID-19, which has devastated communities and repeatedly overwhelmed the country's health infrastructure . . [T]he state also has a substantial interest in the adjudication of trial-ready cases to reduce the strain on the justice system created by the backlog of cases pending trial.  Empaneling a jury that includes unvaccinated jurors would directly contradict those significant interests by increasing the risk of COVID-19 transmission and the potential for disruption during trial, and by further delaying this court's administration of justice.  The court therefore concludes that, even if their exclusion were to amount to a fair cross-section violation, the decision would nonetheless be justified in service of the state's overwhelming interests in combatting the pandemic and advancing cases to trial.").

   Thus, the Court concludes the excusal of the seven unvaccinated jurors is warranted on the basis that their service "would be likely to disrupt the proceedings," 28 U.S.C. § 1866(c), and concludes that this excusal serves a significant state interest that would be rebut even a prima facie showing under *Duren*.

   **IT IS SO ORDERED**.

Dated: April 12, 2022

EDWARD M. CHEN
United States District Judge