1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,                 Case No.  17-cr-00533-EMC-1

8                    Plaintiff,

9            v.                                **ORDER ON POST-VERDICT
                                               CONTACT WITH JURORS**
10   JONATHAN JOSEPH NELSON, et al.

11                   Defendants.

12

13              I.        **INTRODUCTION**

14          On August 24, 2022, several jurors informed the Court that they were contacted at their

15   homes by private investigators ("PIs") employed by defense counsel ("Defense").  These jurors

16   expressed concern regarding the propriety of such post-verdict contact and as to how the PIs

17   obtained their addresses.  On August 25, 2022, the Court requested legal briefing from the parties

18   on the question of the propriety of conducting post-verdict jury interviews.  On August 26, 2022,

19   Defense Counsel Alexandra McClure filed an *ex parte* declaration including the reasons post-

20   verdict juror interviews were sought, the specific circumstances of each attempted contact, and a

21   request to conduct further post-verdict juror interviews.  Docket No. 2922 ("Def. Dec.").  Defense

22   filed an additional brief supporting the continuance of juror interviews.  Docket No. 2923 ("Def.

23   Brief").  The Government has filed a brief in opposition to Defense's request.  Docket No. 2924

24   ("Opp.").

25              II.        **DISCUSSION**

26          While there is "no specific prohibition, post-verdict interviews with jurors are not looked

27   on favorably in the Ninth Circuit."  *Martinez v. Shinn*, No. CV-20-00517-PHX-DJH, 2020 WL

28   3574594, at *2 (D. Ariz. July 1, 2020) (citing *Hard v. Burlington Northern R.R.*, 812 F.2d 482,

United States District Court
Northern District of California

485 (9th Cir. 1987), *abrogated on other grounds by Warger v. Shauers*, 574 U.S. 40 (2014)).  As

recognized by the Supreme Court's decisions on Federal Rule of Evidence 606(b), "long-standing

and very substantial concerns support the protection of jury deliberations from intrusive inquiry."

*Tanner v. United States*, 483 U.S. 107, 127 (1987); *see also Peña-Rodriguez v. Colorado*, 137 S.

Ct. 855, 866 (2017).  This evidentiary "no-impeachment rule" "promotes full and vigorous

discussion by providing jurors with considerable assurance that after being discharged they will

not be summoned to recount their deliberations, and they will not otherwise be harassed or

annoyed by litigants seeking to challenge the verdict."  *Mitchell v. United States*, 958 F.3d 775,

788 (9th Cir. 2020) (quoting *Peña-Rodriguez*, 137 S. Ct. at 865).

Rule 606(b) states as follows:

> (1) *Prohibited Testimony or Other Evidence.*  During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
>
> (2) *Exceptions*.  A juror may testify about whether:
>
> (A) extraneous prejudicial information was improperly brought to the jury's attention;
>
> (B) an outside influence was improperly brought to bear on any juror; or
>
> (C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).  The Ninth Circuit has clarified the parameters of the exceptions to Rule

606(b).  *Compare United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012) (personal life

experiences of jurors do not constitute "extraneous matter" under Rule 606(b) with *Sassounian v.

Roe*, 230 F.3d 1097 (9th Cir. 2000) (introduction of inculpatory evidence not admitted at trial was

improper extrinsic evidence).  In *Peña-Rodriguez*, the Supreme Court created an additional

exception to Rule 606(b) "where a juror makes a clear statement that indicates he or she relied on

racial stereotypes or animus to convict a criminal defendant."  137 S. Ct. at 869.

Defense counsel correctly notes that Rule 606(b) governs the admissibility of testimony

obtained though post-verdict juror contact and not juror contact itself.  Def. Decl. ¶ 36; Def. Brief at 3–4.  However, balanced against the right of a defendant to a fair trial are policy considerations which undergird the limitations of Rule 606(b)–considerations which apply to the issue at hand.  *See Mitchell*, 958 F.3d at 787–788.  "Because a verdict may not be impeached on the basis of the jury's internal deliberations or the manner in which it arrived at its verdict, the practice of counsel in propounding questions on these subjects to jurors after trial should be discouraged."  *Traver v. Meshriy*, 627 F.2d 934, 941 (1980).  Accordingly, "post-verdict jury interrogation may be appropriate to determine whether (1) extraneous prejudicial information was improperly brought to the jury's attention or (2) whether any outside influence was improperly brought to bear upon any juror," consistent with Rule 606(b), *Economou v. Little*, 850 F. Supp. 849, 851 (N.D. Cal. 1994), or juror racial animus under *Peña-Rodriguez*.

Thus, despite the lack of an outright prohibition, constraints on post-verdict juror contact are not uncommon.  *See Ellison v. Ryan*, No. CV-16-08303-PCT-DLR, 2017 WL 1491608, at *2 (D. Ariz. Apr. 26, 2017).  "Indeed, the Ninth Circuit has suggested that district courts have an affirmative duty to protect jurors from meritless post-verdict inquiries."  *Reeves v. Shinn*, No. CV-21-1183-PHX-DWL, 2021 WL 5771151, at *2 (D. Ariz. Dec. 6, 2021) (citing *Mitchell*, 958 F.3d at 787).  In most cases, a court's determination of the propriety of an attorney's post-verdict contact with a juror "is guided by state rules of professional ethics and local court rules."  *Mitchell*, 958 F.3d at 789 (quoting *Peña-Rodriguez*, 137 S. Ct. at 869).  In the Northern District, such contact is governed by the California Code of Professional Responsibility.  Specifically, Rule 3.5(g) of the California Code of Professional Responsibility provides:

> After discharge of the jury from further consideration of a case a lawyer shall not communicate directly or indirectly with a juror if (1) the communication is prohibited by law or court order; (2) the juror has made known to the lawyer a desire not to communicate; or (3) the communication involves misrepresentation, coercion, or duress, or is intended to harass or embarrass the juror or to influence the juror's actions in future jury service.

Although this rule does not expressly prohibit post-verdict juror contact, obtaining a juror's consent before such contact is a significant aspect of the rule, and it is well within the Court's discretion to limit post-verdict juror contact in a manner that ensures jurors' consent.  *See*

3

1   *Mitchell*, 958 F.3d at 787; *Martinez*, 2020 WL 3574594, at *2 ("district courts have wide

2   discretion to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing

3   attorneys.") (citing *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007)).  It is also

4   within the Court's discretion to ensure the scope of any investigation is consistent with the above

5   mentioned strictures and does not venture into, *e.g.*, internal jury deliberations.  *Cf. Tanner*, 483

6   U.S. 107 (concluding the entire jury system would be harmed if juror testimony regarding

7   deliberations were admitted outside of narrowly prescribed circumstances).

8          Defendants' request to continue unrestricted post-verdict juror interviews is **DENIED**.

9   Instead, the Court will send the following letter to jurors asking if they consent to being

10  interviewed by investigators for defense counsel.

11              Dear _____,

12          It has come to the Court's attention that investigators on behalf of
           defense counsel have attempted to interview jurors in the case.
13          Whether you decide to speak to the investigator is entirely up to you.
           As the Court stated at the end of trial, you are not obligated to speak
14          with any of the parties or their counsel.  On the other hand, you are
           not prohibited from speaking with the investigators.
15
            If you decide to speak with the investigators, the permissible inquiry
16          by the investigator shall be limited to determine whether (A)
           extraneous prejudicial information was improperly brought to the
17          jury's attention; (B) an outside influence was improperly brought to
           bear on any juror; (C) a mistake was made in entering the verdict on
18          the verdict form; or whether improper racial bias influenced the
           jury's verdict.
19
            Please respond by emailing the Court at emccrd@cand.uscourts.gov,
20          and indicate whether you wish to speak with the defense counsel's
           investigator.  Whether you speak with an investigator or not, you
21          may communicate with the Court directly if you feel you have
           information pertaining to any of the permitted topics of inquiry
22          listed above.

23

24      **IT IS SO ORDERED**.

25  Dated: September 1, 2022

26                                                  _____

27                                                  EDWARD M. CHEN
                                                    United States District Judge
28

United States District Court
Northern District of California