UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JONATHAN JOSEPH NELSON, et al.<br>Defendants. | Case No. 17-cr-00533-EMC-1<br><br>**ORDER GRANTING IN PART DEFENDANT FOAKES'S MOTION TO DISMISS COUNT ONE, AND DENYING GROUP TWO DEFENDANTS' MOTIONS TO SEVER**<br><br>Docket Nos. 3048, 3051, 3052, 3054 |

Pending before the Court is Defendant Raymond Foakes's motion to dismiss count one for breach of a plea agreement. *See* Docket No. 3054 ("Foakes MTD"). Also pending are Foakes's and his codefendants' (collectively "Group Two Defendants") motions to sever. *See* Docket No. 3052 ("Foakes Sev. Mot."); Docket No. 3051 ("Ranieri Sev. Mot."); Docket No. 3048 ("Burke Sev. Mot.").

## I.    FOAKES'S MOTION TO DISMISS COUNT ONE

In 2011, Defendant Raymond Foakes ("Foakes") pled guilty to mortgage fraud. In return for Foakes's guilty plea, the Government promised "not to file any additional charges that could be filed as a result of the investigation that led to the captioned indictment." *See* Docket No. 3054-4, Ex. A ("2011 Plea Agreement"). In 2017, the Government indicted Foakes for his participation in the Hells Angels Sonoma County ("HASC") racketeering enterprise—the Government listed the mortgage fraud to which Foakes previously pled guilty as the first overt act in the indictment. The question before the Court is whether the Government breached Foakes's 2011 plea agreement by including the mortgage fraud as an overt act in the 2017 indictment. The Court finds that it did, and **GRANTS IN PART** Foakes's motion.

A. <u>Breach</u>

The analysis for breach of a plea agreement begins with the fundamental rule that "[p]lea agreements are contractual in nature and are measured by contract law standards." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). Accordingly, courts "enforce their literal terms, construing any ambiguities in the defendant's favor." *United States v. Heredia*, 768 F.3d 1220, 1230 (9th Cir. 2014) (citing *United States v. Franco–Lopez*, 312 F.3d 984, 989 (9th Cir. 2002)).

The 2011 Plea Agreement provides: "The government agrees not to file any additional charges against the defendant that could be filed as the result of the investigation that led to the captioned Indictment." 2011 Plea Agreement ¶ 13. Therefore, the 2011 Plea Agreement is breached so long as the Government *could have brought* a RICO conspiracy charge against Foakes for his participation in the HASC racketeering enterprise *as a result of* the mortgage fraud investigation.

Whether the Government could have brought a RICO conspiracy charge against Foakes depends on the meaning of the phrase "as a result of" in the 2011 Plea Agreement. *Id.* "As a result of" is a causal phrase. The law recognizes various types of causation, *e.g.*, "but-for" causation, contributing factor causation, and predominant factor causation. *Compare Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) ("but-for" causation applies to sex discrimination under Title VII), *with, Rookaird v. BNSF Ry. Co.*, 908 F.3d 451 (9th Cir. 2018) ("contributing factor" causation applies to claims under the Federal Railroad Safety Act require), *and, Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 272–73 (2015) ("predominant factor" causation applies to claims of racial gerrymandering).

Here, the causal nature of the phrase "as a result of" is undefined. The government could have drafted the plea agreement so as to include the word "sole" as a result, but it did not. *Cf. Bostock*, 140 S. Ct at 1739 ("No doubt, Congress could have taken a more parsimonious approach. As it has in other statutes, it could have added 'solely' to indicate that actions taken 'because of' the confluence of multiple factors do not violate the law…Or it could have written 'primarily because of' to indicate that the prohibited factor had to be the main cause of the defendant's

challenged employment decision." (citations omitted)).  Therefore, it is unclear whether the mortgage fraud investigation must have been, for example, a "but-for" cause of the Government's ability to file a RICO conspiracy charge, *i.e.*, absent the mortgage fraud investigation, the Government would not have been able to file a RICO conspiracy charge, *see id.*; whether the mortgage fraud investigation must have been a contributing factor in the Government's ability to file a RICO conspiracy charge, *i.e.*, the mortgage fraud investigation was one factor, taken alone or in connection with other factors, that tended to affect the ability of the Government's ability to file a RICO conspiracy charge, *see Rookaird*, 908 F.3d at 461; or whether the mortgage fraud investigation must have been the predominant factor in the Government's ability to file the RICO conspiracy charge, *i.e.*, the mortgage fraud investigation was of peculiar importance in the Government's ability to file a RICO conspiracy charge, *see Alabama Legislative Black Caucus*, 575 U.S. at 272–73; or whether only charges resulting *solely* from the investigation were barred.  Thus, "the court should look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement." *Clark*, 218 F.3d at 1095.

       Based on the facts of the case, the Court concludes that it was reasonable for Foakes to believe that the Government would not be able to charge him for the same conduct to which he previously pled guilty simply because said conduct has been recast in the context of RICO conspiracy.  *See United States v. Carr*, No. 216CR00265GMNCWH, 2018 WL 10016170, at *2 (D. Nev. Sept. 21, 2018) (dismissing a RICO conspiracy charge against the defendant because among the overt acts was a conspiracy to which the defendant had previously pled guilty).  Thus, even though the Government now asserts it did not intend the 2011 Plea Agreement to bar a subsequent RICO conspiracy charge, it was not unreasonable for Foakes to believe the 2011 Plea Agreement would have such a preclusive effect.  Put another way, the facts of the case suggest Foakes and the Government may be considered "ships passing in the night," each carrying reasonable, albeit distinct, interpretations of the 2011 Plea Agreement when it was entered.

       Because the extrinsic evidence does not cure the ambiguity in the 2011 Plea Agreement, it must be construed against the government and in Foakes's favor.  *See Heredia*, 768 F.3d 1220, 1230; *Clark*, 218 F.3d 1092, 1095 ("If, after [a court has] examined the extrinsic evidence, [it] still

3

1  find[s] ambiguity regarding what the parties reasonably understood to be the terms of the
2  agreement, then the government ordinarily must bear responsibility for any lack of clarity.").  For
3  that reason, the Court concludes the Government breached the 2011 Plea Agreement by charging
4  the mortgage fraud as an overt act in Count One.

B. <u>Remedy</u>

Where the Government breaches a plea agreement, "[t]he two available remedies are rescission of the agreement and specific performance." *Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003).  If the defendant has already upheld their portion of the agreement and "cannot conceivably be returned to the status quo *ante*[,]" specific performance is the only remedy for a breach.  *See Brown*, 337 F.3d at 1162.

Here, Foakes has upheld his side of the 2011 Plea Agreement by serving his time of incarceration.  Thus, specific performance is the only remedy for the Government's breach.  *Id.*  In granting specific performance, the Court may, *inter alia*, entirely dismiss Count One as to Foakes, or in the alternative, limit the Government's use of Overt Act 22(a).  *Compare United States v. Pressley*, 865 F. Supp. 2d 606, 614–15 (D.N.J. 2012) (dismissing an entire count because the Government obtained the indictment by presenting evidence to the grand jury despite the evidence being barred by the plea agreement), *with, United States v. Morales*, 465 F. App'x 734, 739 (9th Cir. 2012) (limiting the use of evidence as against defendants because non-prosecution provisions in earlier plea agreements barred subsequent charges based on that evidence).

"Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124 (1979). ").  Accordingly, "[a] court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice, and where no lesser remedial action is available." *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (quotation and citation omitted).  *Accord Morales* 465 F. App'x at 739–40.  A defendant suffers prejudice sufficient to justify dismissal "only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *United States v. Isgro*, 974 F.2d 1091, 1098 (9th Cir.

4

1992), *as amended on denial of reh'g* (Nov. 25, 1992) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). Otherwise, it is for the district court to fashion a "lesser remedial action." *See United States v. Bundy*, 968 F.3d 1019, 1043 (9th Cir. 2020).

Here, it is unlikely that among the sixteen or so overt acts charged in Count One, Overt Act 22(a) "substantially influenced the grand jury's decision to indict[.]" *Isgro*, 974 F.2d at 1098. Thus, a less drastic remedy must be applied. The Court therefore concludes the Government is barred from introducing evidence relating to Overt Act 22(a) as against Foakes.

In consequence, looking to Federal Rule of Evidence 403, the Court further concludes that the Government may not present evidence of Overt Act 22(a) against any Group Two Defendant. *See* Fed. R. Evid. 403. First, Overt Act 22(a) is not merely inapplicable as to Foakes, but inadmissible. Thus, Foakes will suffer significant prejudice if Overt Act 22(a) is introduced against his codefendants in the same trial in which he is tried. Second, the connection between Foakes's codefendants and Overt Act 22(a) is minimal. Only one of Foakes's codefendants is implicated in the HASC racketeering conspiracy, and there is no indication that he was involved in, or had knowledge of, Overt Act 22(a). Thus, the probative value of Overt Act 22(a) is almost nonexistent. The Court therefore finds that the use of Overt Act 22(a) would be more prejudicial than probative and excludes it under FRE 403.

For the foregoing reasons, the Court **GRANTS IN PART** Foakes's motion and prohibits the Government from presenting evidence of Overt Act 22(a) against all Group Two Defendants.

## II.   MOTIONS TO SEVER

Foakes moves to sever his trial from that of Ranieri. *See* Foakes Sev. Mot. Ranieri moves to sever his trial from that of Foakes and Burke. *See* Ranieri Sev. Mot. Burke moves to sever his trial from that of Foakes and Ranieri. *See* Burke Sev. Mot. For the foregoing reasons, the Court **DENIES** Group Two Defendants' motions to sever.

A.   Raymond Foakes

Foakes claims his trial should be severed from that of Ranieri's because Overt Act 22(a) of the RICO conspiracy charge, although inadmissible as to him, is admissible as to Ranieri. *See* Foakes Sev. Mot. at 5–7. However, because the Court concludes Overt Act 22(a) cannot be

5

1 admitted against any of the Group Two Defendants, Foakes's first argument is no longer relevant.

2 Foakes's next argument relates to Special Sentencing Factor One—conspiracy to commit murder. *See id.* at 7–8. Both Foakes and Ranieri are subject to Special Sentencing Factor One but under different theories. *See id.* Foakes therefore claims he will suffer prejudice because the jury will be unable to distinguish the separate theories under which he and Ranieri are subject to Special Sentencing Factor One.

The Court disagrees. The charges against each of the two defendants relative to Special Sentencing Factor One are clear and distinct. The Court can cure any potential prejudice by giving the jury a limiting instruction, and "juries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 504; *United States v. Roselli*, 432 F.2d 879, 902 (9th Cir. 1970) (the Court can cure any prejudice by "carefully instruct[ing] the jury about the compartmentalization of the evidence as to each defendant").

For the foregoing reasons, the Court **DENIES** Foakes's motion to sever.

B. Christopher Ranieri

Ranieri moves to sever his trial from that of Foakes and Burke. Ranieri's first argument is the same as Foakes's second argument, *i.e.*, the jury will be confused because different evidence will be used against Foakes and Ranieri in assessing Special Sentencing Factor One. Ranieri's argument is unpersuasive for the same reasons that Foakes's argument is unpersuasive: the distinction in the evidence is clear, and a limiting instruction will sufficiently cure any possible prejudice.

Next, Ranieri argues severance is required because there is far more evidence, and far more damaging evidence, against Foakes and Burke than there is against him. Ranieri Sev. Mot. at 13. Ranieri highlights the "uniquely weak nexus between [himself] and the HASC criminal enterprise," as well as the overt acts committed in furtherance thereof. *Id.*

Ranieri's argument is without merit. To begin, "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*,

6

388 F.3d 1199, 1242 (9th Cir. 2004). Further, Count One of the Superseding Indictment charges Ranieri (and several others) with conspiring to violate 18 U.S.C. § 1962(c), *i.e.*, conspiring "to conduct . . . the affairs of the HASC enterprise through a pattern of racketeering activity," in violation of § 1962(d). *See* Superseding Indictment ¶ 20. The indictment defines the HASC enterprise as "including its leadership, members, *and associates*," *id.* ¶ 11 (emphasis added), and identifies HASC associates as including "members of the Boston…chapter[] of the Hells Angels" such as Ranieri. *Id.* ¶ 1. The indictment further states, at multiple points, that both "members and associates" share a common purpose, means, and method in carrying out the enterprise's criminal affairs. *Id.* ¶¶ 12–17. Ranieri fails to explain why these allegations are insufficient to plead his affiliation with the HASC enterprise, especially given that the RICO Act defines an "enterprise" as encompassing "any union or group of individuals associated in fact" and contains no formal-membership requirement. *See* 18 U.S.C. § 1961(4); *see also Boyle v. United States*, 556 U.S. 938, 946 (2009) (holding that an association-in-fact enterprise need only possess "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose").

    The Government, in any event, is not required to prove that Ranieri himself participated in the conduct of the HASC enterprise as either a member or an associate, since Count One charges him and others with conspiracy to violate § 1962(d), rather than a substantive RICO offense. *See* Superseding Indictment ¶¶ 19–21; *see also Salinas v. United States*, 522 U.S. 52, 65 (1997) ("[A] conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself."). Evidence of other HASC members' and associates' unlawful conduct is equally relevant against all alleged conspirators to prove the existence and scope of the racketeering enterprise, as well as the conspirators' agreement to further the objectives of that enterprise. Thus, Ranieri's objection based on the *relative* absence of overt acts ascribed specifically to him in the indictment is without merit because a "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." *See United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir. 1991).

1    Furthermore, this is not a case where one defendant asserts prejudice because of a huge
2 disparity in culpability compared to others based on his far less culpable conduct. *See*, *e.g.*,
3 *United States v. Gary Joe Littrell*, 02-CR-0938-CJC (C.D. Cal. Jan. 29, 2007), Docket No. 4469.
4 Here, Ranieri is charge with participation in premeditated murder, the most serious act alleged in
5 this case.
6    Finally, the Court can cure any prejudice by "carefully instruct[ing] the jury about the
7 compartmentalization of the evidence as to each defendant." *United States v. Roselli*, 432 F.2d
8 879, 902 (9th Cir. 1970).
9    For the foregoing reasons, the Court **DENIES** Ranieri's motion to sever.

10   C.   Brian Burke

11   Like Ranieri, Burke believes he will be prejudiced by the evidence of overt acts presented
12 against Foakes and Ranieri. Burke Sev. Mot. at 2–3. However, as noted above, "disparity in the
13 quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by
14 themselves do not warrant a severance." *Cardascia*, 951 F.2d at 483; *Fernandez*, 388 F.3d at
15 1242. Importantly, Burke is not charged with RICO and that can be made clear to the jury. There
16 is no reason to assume the jury cannot compartmentalize the evidence as it will be instructed to do.
17   Burke also argues that his case presents the rare circumstance in which severing a trial will
18 conserve judicial resources. Burke explains that a joint trial will last about six to eight weeks, but
19 if severed, his separate trial on Count Eleven will last at most a week.
20   Nevertheless, Burke fails to recognize that severance will require victims and witnesses to
21 testify in a third trial. As the Government explains, "[f]orcing victims to testify more than one
22 additional time in the Group Two trial would be unfair to them and would needlessly subject them
23 to the trauma of reliving the violence that they suffered." *See* Docket No. 3069 at 4 ("Sev.
24 Opp'n") (citing 18 U.S.C. § 3771(a)(8)); *see also id.* (citing *Singh-Kaur v. I.N.S.*, 183 F.3d 1147,
25 1151 (9th Cir. 1999) for the proposition that discomfort and nervousness is inherent to testifying at
26 trial).
27   For the foregoing reasons, the Court **DENIES** Burke's motion to sever.
28

### III. CONCLUSION

The Court **GRANTS IN PART** Foakes's motion and prohibits the Government from presenting evidence of Overt Act 22(a) against all Group Two Defendants.

The Court **DENIES** Group Two Defendants' motions to sever.

This order disposes of Docket Nos. 3048, 3051, 3052, and 3054.

**IT IS SO ORDERED**.

Dated: January 25, 2023

_____
EDWARD M. CHEN
United States District Judge