RICHARD G. NOVAK (SBN 149303)
P.O. Box 5549
Berkeley, CA 94705
626-578-1175 (voice)
Richard@RGNLaw.com

JAI M. GOHEL (SBN 170782)
819 Eddy Street
San Francisco, CA 94109
415-771-6714 (voice)
JaiGohel@rocketmail.com
**Attorneys for Defendant**
**JONATHAN JOSEPH NELSON**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:17-cr-00533-EMC |
| Plaintiff, | **DEFENDANT JONATHAN JOSEPH NELSON'S OBJECTIONS AND RESPONSE TO UNITED STATES' THIRD AMENDED APPLICATION FOR PRELIMINARY ORDER OF FORFEITURE; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION, AND EXHIBITS THERETO** |
| vs. | |
| JONATHAN JOSEPH NELSON, | |
| Defendant. | |

Defendant JONATHAN JOSEPH NELSON, by and through his counsel of record, hereby files his Objections and Response to the United States' Third Amended Application for Preliminary Order of Forfeiture.

Dated: July 16, 2024

Respectfully submitted,

**/s/ Richard G. Novak**
RICHARD G. NOVAK
JAI M. GOHEL
Attorneys for Jonathan Joseph Nelson

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**DEFENDANT JONATHAN JOSEPH NELSON'S**

**OBJECTIONS AND RESPONSE TO UNITED STATES' THIRD AMENDED**

**APPLICATION FOR PRELIMINARY ORDER OF FORTFEITURE**

**I.**

### Introduction

The United States has applied for forfeiture of certain items of personal property seized from three locations associated with Mr. Nelson: 1) his residence, 2) buildings utilized by his painting business and 3) the Sonoma County Hells Angels' clubhouse.  The statutory authority under which the United States proceeds is 18 U.S.C. § 1963.  (Application at 2, ll. 1-12)[1]

Mr. Nelson objects to the forfeiture of some, but not all, of the objects specifically identified in the application.  As set forth in his declaration, he does *not* object to the forfeiture of any firearms or ammunition or "whips" seized from the three locations associated with him. (Nelson Decl. at ¶¶ 2-5)

Mr. Nelson does object, however, to the forfeiture of his 2003 Harley Davidson Super Glide motorcycle and his racing team jacket, as set forth more fully below.  He also objects to the forfeiture of certain Hells Angels jackets, vests, and patches.  His objections are based, first, on the absence of evidence to support forfeiture under the applicable statute and, second, on his rights under the First and Eighth Amendments to the United States Constitution, and article III, §3, clause 2 of the Constitution which prohibits "forfeiture of estate."

---

[1] The United States also refers briefly to other statutory authorities: 1) 18 U.S.C. §924(d), which only authorizes the forfeiture of firearms; 2) 18 U.S.C. §981(a)(1)(C), which establishes bases and procedures for *civil* forfeiture proceedings based on a "proceeds" theory, and 3) 28 U.S.C. §2461(c) and §853 which relate only to procedural matters. (Application at 16, ll. 12-21.)

**II.**

**The Government's Effort to Forfeit Mr. Nelson's**

**Motorcycle and Racing Jacket Fails on Statutory Grounds**

The forfeiture statute upon which the United States proceeds here generally provides for forfeiture, upon conviction, of seized property:1) which is the *proceeds* of racketeering activities or 2) which afforded a *source of influence* over the charged racketeering enterprise.

The government's application emphasizes, as it must, the *source of influence* prong, because there was no evidence presented at trial nor otherwise cited in the government's application that Mr. Nelson's motorcycle or racing jacket are the proceeds of or were derived from the proceeds of the conduct charged in the operative indictment.

Lest there is any doubt about that, Mr. Nelson's declaration sets forth how he purchased in 2011, and has maintained since then, his motorcycle, as well as his racing jacket.  He purchased them with funds he earned through his work as a union painter and later through his family owned painting business, and he maintained his motorcycle with those same legitimate funds.  He never used his position as a member or officer in the Hells Angels to obtain free or discounted parts or labor associated with his motorcycle, and neither his membership nor his status as an officer allowed him to use Hells Angeles club funds for the maintenance of his motorcycle.  (Nelson Decl. ¶¶ 6-12)   There is no evidence to the contrary.  Therefore, forfeiture cannot proceed on the *proceeds* prong.

Nor was there any evidence at trial that Mr. Nelson's ownership and use of his motorcycle was a *source of influence* over the charged enterprise.  Nor does the government's application cite to any investigative materials or hearsay statements by witnesses that he used his motorcycle as a source of influence.  Surely, members of motorcycle clubs own and ride motorcycles, but that is not the same, for statutory

3

1  analysis purposes, as a motorcycle being a "source of influence" over a racketeering

2  enterprise.

3        It is also notable that while the government seeks to use the racketeering

4  forfeiture statute to forfeit Mr. Nelson's motorcycle and his motorcycle racing jacket

5  on a *source of influence* theory, it does not cite to a single example of decisional law

6  in which a court has determined *after a jury trial* that §1963 authorizes the forfeiture

7  of a motorcycle owned by a defendant convicted of a racketeering offense where one

8  of the common characteristics of the individuals who participated in the charged

9  enterprise was their membership in a motorcycle club and, therefore, their ownership

10  and use of a motorcycle.[2]  A defendant's stipulation to forfeit their motorcycle, as

11  part of a plea agreement, as has occurred with other defendants in this case, is not a

12  source of legal authority that §1963 authorizes forfeiture, over a timely objection, in

13  these circumstances.

14        Acknowledging, apparently, the lack of legal authority to support the

15  proposed forfeiture of Mr. Nelson's motorcycle itself under the *source of influence*

16  prong of §1963, the government's application focuses primarily on the "Hells

17  Angels Symbols" affixed to it and to the other items of property it seeks to forfeit.

18        This effort to effectuate forfeiture of items on which Hells Angels "symbols"

19  or even (as in the case of Mr. Nelson's racing jacket) the words "Hells Angels"

20  appear, is a legally dubious effort to make an end run around the well-reasoned 2019

21  decision of District Judge David Carter in *United States v. Mongol Nation*, and the

22  Ninth Circuit opinion affirming his ruling, both of which rejected the government's

23  efforts to forfeit the "marks" of another motorcycle club in which members and the

24  club itself were prosecuted and convicted under the racketeering statute.

25        In *United States v. Mongol Nation*, the Ninth Circuit affirmed the totality of

26
27  [2] Nor is undersigned counsel aware, after diligent research, of any such decisional law.

28                          4

1  Judge Carter's published decision denying the government's efforts to forfeit the

2  trademarks of the Mongols Nation.  *United States v. Mongol Nation*, 56 F.4th 1244

3  (9th Cir. 2023), affirming *United States v. Nation*, 370 F.Supp.3d 1090 (C.D.CA

4  2019).  While the government does not, here, explicitly seek to force the Hells

5  Angels to forfeit their marks, it seeks an order than Mr. Nelson must forfeit his

6  motorcycle only because it has that mark on certain parts.

7        Interestingly, the jury in the *Mongol Nations* case, after finding the entity

8  guilty of racketeering offenses, rejected the government's effort to forfeit motorcycle

9  parts that had the Mongols' mark attached to them *Id.* Moreover, while Judge

10 Carter's opinion refers to the forfeiture of motorcycles by the individual Mongols

11 members who had earlier been indicted on an individual basis, he emphasized that

12 none of those individuals exercised their right to a jury trial.  *Id.* at 1098, & n.18. As

13 in this case, it is likely that those who forfeited their motorcycles in that case did so

14 only as part of a plea agreement.

15       There is no evidence that Mr. Nelson's motorcycle or his racing jacket were

16 used as a source of influence over the charged enterprise.  Even the excerpts of trial

17 testimony which appear in the government's application fail to explain how a

18 motorcycle is a source of influence, aside from the presence of a mark on it, nor do

19 those excerpts address specifically how Mr. Nelson utilized his motorcycle to

20 influence the charged enterprise.

21       On statutory grounds alone, the application to forfeit Mr. Nelson's motorcycle

22 and his racing jacket should be denied.

23 //

24 //

25 //

26 //

27 //

28                                          5

1
2
3

### III.

### Constitutional Limitations on the Forfeiture Statute

### As a Basis for Forfeiting Objects That Bear a Hells Angels' Mark

4
5
6

"[T]he district court must avoid unconstitutional results by fashioning forfeiture orders that stay within constitutional bounds." *United States v. Busher*, 817 F.2d 1409, 1415 (9th Cir. 1987).

7

### A.

8
9

### The First Amendment Prohibits Forfeiture of Mr. Nelson's Motorcycle and His Racing Jacket Merely Because They Bear Hells Angels Marks or Nomenclature

10
11
12
13
14
15
16
17
18
19

As Judge Carter explains in the *Mongol Nation* case, forfeiture of marks, even if the government merely labels its action as an effort to forfeit objects that happen to have marks affixed to them, violates the First Amendment rights of the entity and its members. *United States v. Nation*, 370 F.Supp.3d at 1102.  Though the symbol may, at times, function as a mouthpiece for unlawful or violent behavior, this is not sufficient to strip speech of its First Amendment protection. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253, 122 S.Ct.1389, 152 L.Ed.2d 403 (2003) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it. . . First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end.").

20
21

Quoting Judge Cooper, to whom the Mongols case was assigned until her passing, Judge Carter noted:

22
23
24
25
26
27

Prohibiting speech of this nature constitutes an attack on a particular viewpoint. *Sammartano v. First Judicial District Court, in and for the County of Carson City*, 303 F.3d 959, 971-72 (9th Cir.2002). In *Sammartano*, the Carson City courthouse enacted a rule to prohibit admission of those with "clothing, attire or 'colors' which have symbols, markings or words indicating an affiliation with street gangs, biker or similar organizations," because "such clothing or attire can be extremely disruptive and intimidating, especially when members of different groups are in the building at the same time."

28

6

303 F.3d at 964. The Ninth Circuit reasoned that the rule singles out bikers and similar organizations for the message their clothing is presumed to convey and held that the rule impermissibly discriminates against a particular point of view—the view of biker clubs as opposed to garden clubs and gun clubs. *Id.* at 971-72. In this case, the Government targets an even narrower group of individuals, a single motorcycle club. In addition, the Government has been seizing property, which imposes a greater restriction on individual rights than the denial of access to a public facility. Accordingly, the seizure of property bearing a Mongols membership mark should be considered viewpoint discriminatory.

The Government's ability to seize property bearing the trademark acts as a prior restraint and cannot stand without a judicial determination that the speech is harmful, unprotected, or otherwise illegal. No such determination was ever sought by the Government, and no such determination was ever made by the Court. The seizure of property is also viewpoint or content-based, which triggers strict scrutiny. *See Crawford v. Lungren*, 96 F.3d 380, 384 (9th Cir. 1996) ("If the statute is content-based, we apply strict scrutiny to determine whether the statute is tailored to "serve a compelling state interest and is narrowly drawn to achieve that end."). Though it is arguable whether a compelling reason exists to prevent the display of the Mongols trademark, the seizure of all property bearing the mark cannot be considered the least restrictive alternative. For these reasons, the Court observes that the lack of statutory authority to seize Plaintiffs property is consistent with the First Amendment's right to freedom of association, which acts to protect Plaintiffs right to display the Mongols collective membership mark.

*United States v. Nation*, 370 F.Supp.3d at 1102.

**B.**

**The Eighth Amendment Also Precludes**

**Forfeiture of Mr. Nelson's Motorcycle and Racing Jacket**

Forfeiture under RICO is punishment subject to the limits imposed by the eighth amendment. *United States v. Busher*, 817 F.2d 1409, 1413-14 (9th Cir. 1987). When a defendant "makes a prima facie showing that the forfeiture may be excessive, the district court must make a determination, based on appropriate findings, that the interest ordered forfeited is not so grossly disproportionate to the offense committed as to violate the eighth amendment." *United States v. Feldman*,

7

1   853 F.2d 648, 663 (9th Cir. 1988).

2   Forfeiture of Mr. Nelson's motorcycle constitutes an excessive fine prohibited

3   by the eighth amendment specifically because there is no evidence that he personally

4   used his motorcycle to exercise control over the charged enterprise or to commit any

5   of the offenses of conviction.  No offense was committed through the use or display

6   of his motorcycle.  As explained in *Feldman*, the protections of the excessive fines

7   clause is typically at issue when the government seeks to forfeit assets that are the

8   *proceeds of* a racketeering offense.  Where there are no proceeds, as here, forfeiture

9   of a long-held asset primarily used for purposes that having no connection with the

10  charged enterprise constitutes an excessive fine.

11                                        **C.**

12          **As Applied to Mr. Nelson's Motorcycle and Racing Jacket,**

13          **Forfeiture Under §1963 Would Violate Mr. Nelson's Rights**

14            **Under Article III of the United States Constitution**

15          It is Mr. Nelson's view that this Court need not reach the complicated

16  question of whether the effort to forfeit Mr. Nelson's motorcycle and racing jacket

17  violate his rights under article III, §3, clause 2 of the Constitution, because the facts

18  do not support forfeiture under the statute and because forfeiture would also violate

19  his rights under the first and eighth amendments.

20          However, the United States Constitution has, since 1790, protected citizens

21  against "forfeiture of estate," a right that was subsequently codified at 18 U.S.C. §

22  3563.  It is not clear that the later adopted racketeering statute's forfeiture provisions

23  can effectuate a repeal of this long standing statute without constituting a violation

24  of Mr. Nelson's rights under that Article.  *United States v. Grande*, 620 F.2d 1026,

25  1037-38 (4th Cir. 1980).

26  //

27  //

28                                        8

**IV.**

**Jackets, Vests and Patches**

While the decision in *United States v. Nation* affirmed the jury's ruling that vests and patches were properly forfeited, the Court is acting, here, as the trier of fact in the first instance. The government has not presented sufficient evidence to this Court as to how Mr. Nelson's Hells Angels jackets, vests, and patches operated as a *source of control* over the charged enterprise. Mr. Nelson objects to the forfeiture of these items.

Dated: July 16, 2024                    Respectfully submitted,

**/s/ Richard G. Novak**
RICHARD G. NOVAK
JAI M. GOHEL
Attorneys for Jonathan Joseph Nelson

9

## <u>DECLARATION OF JONATHAN JOSEPH NELSON</u>

I, Jonathan Joseph Nelson, declare as follows:

1.    I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.  This declaration is filed in support of my partial opposition to the United States' *Third Amended Application for Preliminary Order of Forfeiture of Property* ("the application") (Doc. No. 3751)

2.    I have carefully reviewed the application with my counsel.  I do not object to the forfeiture of any firearms, ammunition, or "whips" which are listed in the application as having been seized from the following locations:

(a)    my residence, at 2765 Antelope Lane, Santa Rosa, CA, on November 15, 2017,

(b)    the buildings occupied by my painting business, at 91 Bailhache Road, Healdsburg, CA on November 18, 2017, and

(c)    the Hells Angeles Sonoma County Clubhouse, at 516 Frazier Avenue, Santa Rosa, CA, on November19, 2017.   Additionally, I do not believe that I personally have any property interest in any of the objects listed in the application as having been seized at any other locations.

3.    I do oppose and object to forfeiture, for the reasons set forth in the memorandum of points and authorities filed by my counsel and for the reasons set forth below, to the following objects which the application states were seized from my residence:

(a)    my Harley Davidson motorcycle, license plate number 20H2093;

(b)    my "Hells Angels Racing Team Jacket;"

(c)    a "Boston Hells Angels Filthy Few Vest;"

(d)    a "Sonoma County Hells Angeles Vest," and

(e)    "Three patches for Hells Angels jacket or vest."

4.      Further, I do oppose and object to forfeiture, for the reasons set forth in the memorandum of points and authorities filed by my counsel and for the reasons set forth below, to the following object which the application states was seized from the buildings occupied by my painting business:

(a)      "One leather Hells Angels jacket".

5.      Further, I do oppose and object to forfeiture, for the reasons set forth in the memorandum of points and authorities filed by my counsel and for the reasons set forth below, to the following object which the application states was seized from the Hells Angels Sonoma County Clubhouse:

(a)      "Four Hells Angels vests and jackets".

**My Motorcycle**

6.      My motorcycle is a black 2003 Harley Davidson Super Glide.   I purchased it from a private party as a used vehicle in 2011 and documented the transfer of ownership with the California Department of Motor Vehicles.  The Certificate of Title is attached hereto as Exhibit A.  I have owned this motorcycle continuously since I purchased it in 2011.

7.      Since purchasing this motorcycle in 2011 and until its seizure in 2017, I regularly used it as a form of personal transportation.  When I worked as a union painter in San Francisco before opening my own painting business, I rode it to work on a regular basis.  After opening my own painting business and purchasing trucks and vans for operating that business, I continued to use my motorcycle as a form of personal transportation.  There have been times when I also owned another vehicle which I also used for personal transportation, especially in inclement weather, but I have always relied upon my motorcycle as a form of personal transportation.

8.      The funds used to purchase and maintain my motorcycle and to pay registration and licensing fees have always come from my earnings as a painter.  I have never used any funds that belonged to the Hells Angeles Sonoma Charter or any other

2

charter to pay for repairs, maintenance, parts, fuel, or any other expenses related to my motorcycle.

9.     Officers of the Hells Angels Sonoma Charter do not receive compensation or a stipend for their service.  Therefore, I have not used my position as an officer to pay for any expenses associated with my motorcycle.   Nor are membership dues paid by charter members redistributed to officers or members in order to finance the maintenance of motorcycles.

10.     Every single dollar I have ever spent on my motorcycle has come from my legitimate earnings as a painter.  My motorcycle is not in any way connected with any "proceeds" that the "enterprise" may have received.

11.     Nor have I ever used my status as a member or officer of the Hells Angels to encourage, compel, or influence anyone to provide me with motorcycle repair services at a reduced cost.

12.     Nor have I ever used my motorcycle as a source of influence over the Hells Angels Sonoma Charter or any other Hells Angeles charter, any person or any other group, including the "enterprise" as it has been defined in this matter.

**My Racing Jacket**

13.     The "Hells Angels Racing Team Jacket" seized from my residence was used by me only when I was actually engaging in official motorcycle racing events in which I participated from approximately the year 2000 until 2010.

14.     I have raced in multiple racing associations, including the NHRA, for which I used other professional racing bikes, and the AHDRA, which is a racing association in which all racers race on Harley Davidson motorcycles.

15.     I never wore this racing jacket in connection with official or unofficial Hells Angels meetings, activities, or events, or at events sponsored by other motorcycle clubs, other than while racing in official races.  It is a piece of safety equipment, like a helmet or boots, that was utilized only in connection with races.

3

16.     Nor did the fact that my jacket states that I am a member of the "Hells Angels Racing Team" ever allow me to encourage, compel, or influence anyone to do anything or not do anything.  I paid for this jacket with funds I earned as a licensed painting professional.

17.     This jacket did not provide me with a source of influence over the Hells Angels Sonoma Charter or any other Hells Angeles charter, any person or any other group, including the "enterprise" as it has been defined in this matter.  The Hells Angels never financially supported my motorcycle racing activities.

**My Vests, Jackets and Patches**

18.     The vests, jackets, and patches seized from my residence, my painting business, and the clubhouse signify my membership in a motorcycle club and do not provide me with a source of influence over anyone or anything.  They do not signify my participation in a racketeering enterprise.

19.     I purchased my vests and jackets with funds earned from my work as a painting professional.  Patches I choose to affix to a jacket or vest, or which were otherwise in my possession, signify my membership in my Charter or my support of another charter, but do not signify any source of influence over what is referred to in this case as a racketeering enterprise.

20.     Leather jackets and vests are universally worn as safety equipment, as are helmets and boots, by individuals who ride motorcycles.

4

1      I declare under penalty of perjury under the laws of the United States of America

2  that the foregoing is true and correct.  Executed on this 11th day of July 2024.

3

4                                          JONATHAN JOSEPH NELSON

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

TO PROTECT YOUR CREDIT – DO NOT USE THIS SIDE

SECTIONS A-J MUST BE COMPLETED IN FULL    PRINT IN CAPITAL LETTERS – USE BLACK OR BLUE INK

## NOTICE OF TRANSFER AND RELEASE OF LIABILITY

MAIL THIS FORM TO DMV

DMV MICROGRAPHICS USE ONLY

A. NEW OWNER'S *LAST NAME* (OR) COMPANY NAME    FIRST

B. NEW OWNER'S ADDRESS    APT NUMBER    C. ODOMETER READING (NO TENTHS)

D. CITY    STATE    ZIP CODE    E. DATE OF SALE OR LEASE RETURN    MO    DAY    YR

F. SELLER'S OR LESSEE'S *LAST NAME* (OR) COMPANY NAME    FIRST    G. SELLING PRICE (NO CENTS) WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS    APT NUMBER    I. SELLER'S OR LESSEE'S SIGNATURE

X

J. CITY    STATE    ZIP CODE

VEHICLE ID NUMBER    YR. MODEL    MAKE    PLATE NUMBER

1HD1GLV353K333094    2003 HD    20H2093

REG 138A (REV. 8/2007)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE    VEHICLE HISTORY

V93120725FC

MOTORCYCLE

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
| --- | --- | --- | --- | --- |
| 1HD1GLV353K333094 | | 2003 | HD | 20H2093 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
| --- | --- | --- | --- | --- | --- | --- |
| RS | | | G | 12/14/11 | $263 | 06/22/2013 |

| YR 1ST SOLD | CLASS | *YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
| --- | --- | --- | --- | --- | --- |
| 2003 | AH | 2011 | TV | | 08/03/12 |

| MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING |
| --- | --- | --- |
| GLV3333094 | 12/14/2011 | 8250 MI |
| | ACTUAL MILEAGE | |

REGISTERED OWNER(S)

NELSON J JON
1083 VINE ST 111
HEALDSBURG CA 95448

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
DATE    SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
DATE    SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

**WARNING**    ☐ Odometer reading is **not** the actual mileage.    ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE    TRANSFEROR/SELLER SIGNATURE(S)    DATE    TRANSFEREE/BUYER SIGNATURE(S)
X    X
PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY    PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

2. X
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

CA138996674
018555    REG. 17.30RS (REV.6/10)

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

KEEP IN A SAFE PLACE - VOID IF ALTERED

HADOCS-007450