1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6

7    UNITED STATES OF AMERICA,              Case No.  17-cr-00533-EMC
8                       Plaintiff,
9            v.                             **ORDER GRANTING IN PART AND
                                            DENYING IN PART GOVERNMENT'S
10   JONATHAN JOSEPH NELSON, et al.          THIRD AMENDED APPLICATION
                                            FOR PRELIMINARY ORDER OF
11                      Defendants.           FORFEITURE**

12                                          Docket No. 3751
13
14                    I.        **INTRODUCTION**

15          Pending before the Court is the Government's Third Amended Application for Preliminary

16   Order of Forfeiture from Defendants Joseph Nelson, Russell Ott, and Brian Wendt.  *See* Docket

17   No. 3751 ("Mot. for POF").  The Government seeks forfeiture of property from Defendants

18   pursuant to 18 U.S.C. §§ 1963(a), 924(d), and 981(a)(1)(c), and 28 U.S.C. § 2461(c).

19          On June 22, 2022, a jury convicted Defendants Jonathan Nelson, Russell Ott, and Brian

20   Wendt of conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act

21   ("RICO"), 18 U.S.C. § 1962(d); conspiracy to commit murder in violation of the Violent Crimes

22   in Aid of Racketeering Activity ("VICAR"), 18 U.S.C. § 1959(a)(5); and murder in violation of

23   VICAR, 18 U.S.C. § 1959(a)(1).  *See* Docket No. 2886 ("Jury Verdict").  In addition, Jonathan

24   Nelson was convicted of assault with a dangerous weapon in aid of racketeering in violation of 18

25   U.S.C. § 1959(a)(3), and use of a firearm during a crime of violence in violation of 18 U.S.C. §

26   941(c).  *Id.*

27          The Hells Angels Motorcycle Club ("Hells Angels" or "HA") is what the Government

28   refers to as an Outlaw Motorcycle Gang.  *See* Trial Transcript ("TT") at 3856.  Within the Hells

Angels umbrella, there are various charters designated by location. *Id.* at 3855. Hells Angels Sonoma County ("HASC") is a charter that operates in Sonoma County. *Id.* at 5057. Defendants were affiliated with HASC, *id.* at 4220, 4195–96, 1994, which a jury found was a RICO enterprise. *See* Docket No. 3764 ("Gov't Reply") at 3. The Government seeks the forfeiture of motorcycles, vests, and other items with Hells Angels insignia and logos from the Defendants, among other things. *See* Mot. for POF at 7–15.

Defendants object to the forfeiture of the items bearing Hells Angels marks. Mr. Nelson objects to the proposed forfeiture of his 2003 Harley Davidson Super Glide motorcycle, racing team jacket, certain Hells Angels jackets, vests, and patches. *See* Docket No. 3756 ("Nelson Opp'n") at 2. Mr. Ott objects to the proposed forfeiture of a Harley Davidson motorcycle, a license plate number, and a Hells Angels leather vest. *See* Docket No. 3755 ("Ott Opp'n") at 2. Mr. Wendt objects to the proposed forfeiture of his Fresno Hells Angels vest, patches, and belt. *See* Docket No. 3757 ("Wendt Opp'n") at 2. Defendants do not contest the forfeiture of firearms and ammunition.

For the following reasons, the Court **DENIES** the Government's Third Amended Application for Preliminary Order of Forfeiture as to the motorcycles and items bearing Hells Angels marks. The Court **GRANTS** the requested forfeiture of firearms and ammunition.

## II.    ANALYSIS

Where the government seeks criminal forfeiture of specific property, the factfinder must determine whether the Government has "established the requisite nexus between the property and the offense." *United States v. Mongol Nation*, 56 F.4th 1244, 1252 (9th Cir. 2023) (quoting Fed. R. Crim. P. 32.2(b)(1)(A)). Under 18 U.S.C. § 1963, a defendant convicted of racketeering activity shall forfeit to the United States any interest in property (1) acquired or maintained in violation of RICO, (2) affording a source of influence, or (3) constituting or derived from proceeds of racketeering activity. 18 U.S.C. §§ 1963(a)(1)-(3). The RICO forfeiture statute in § 1963 is purposefully broad as the purpose of RICO was "to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots." *See U.S. v. Busher*, 817 F.2d 1409, 1412 (9th Cir. 1987) (quoting *Russello v. United States*, 464 U.S. 16, 26 (1983)). When the

United States District Court
Northern District of California

2

factfinder finds such a nexus, RICO provides no discretion and forfeiture is mandatory. *Mongol Nation*, 56 F.4th at 1252 (citing *Busher*, 817 F.2d at 1415). Nevertheless, "the district court must avoid unconstitutional results by fashioning forfeiture orders that stay within constitutional bounds." *Busher*, 817 F.2d at 1415.

Here, the evidence at trial does not establish the requisite nexus between the property to be forfeited and the Defendants' RICO related criminal conduct. As explained below, the required nexus is informed by First Amendment considerations.

### A. Standing

Article III standing requires a plaintiff to have suffered an injury in fact, for there to be a causal connection between the injury and conduct complained of, and for it to be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish standing to object to forfeiture under § 1963 and Federal Rule of Criminal Procedure 32.2, a claimant "must show that he has a colorable ownership or possessory interest" in the subject property. *United States v. Mongol Nation*, 370 F. Supp. 3d 1090, 1110 (C.D. Cal. 2019) (quoting *Arevalo v. United States*, No. 05-110, 2011 WL 442054, at *3 (E.D. Pa. Feb. 8, 2011)). "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture…. The court must enter the order without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(2)(A).

Here, there may be third parties holding reversionary interests in some of the proposed items for forfeiture. *See* Gov't Reply at 8. Notwithstanding potential third-party interests, Defendants have current possessory interests in their motorcycles and Hells Angels jackets, vests, and patches to object to the proposed forfeiture. The fact that the HASC may have contingent reversionary interests in property with the Hells Angels mark does not negate Defendants' standing to oppose the forfeiture. *Cf. United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980) (finding standing for non-owner to challenge a law enforcement search because he "had both permission to use his friend's automobile and the keys to the ignition and the trunk, with which he could exclude all others, save his friend, the owner."); *United States v. Davis*, 932 F.2d 752, 757 (9th Cir. 1991) (holding that a party without a legal interest in a friend's home had

1   standing to challenge a search because he both stored items in a safe and paid part of the rent for

2   the apartment in which the safe was kept); *U.S. v. Crews*, 502 F.3d 1130, 1134 n.3 (9th Cir. 2007)

3   ("[A]s an undisputed resident of Apartment 3, Manus does have standing to challenge the search

4   and seizure.").

5          If indeed a third party like HASC holds a reversionary interest in some of the items, the

6   third party may pursue recovery of its interest in ancillary proceedings.  *See* Fed. R. Crim. P.

7   32.2(b)(2)(A) ("Determining whether a third party has such an interest must be deferred until any

8   third-party files a claim in an ancillary proceeding under Rule 32.2(c).").  Therefore, Defendants

9   have standing to object to the proposed forfeiture.

10         B.  RICO Forfeiture

11         After a guilty verdict in a criminal case, a district court "must determine what property is

12  subject to forfeiture under the applicable statute."  Fed. R. Crim. P. 32.2(b)(1)(A).  Where the

13  government seeks criminal forfeiture of specific property, the factfinder must determine whether

14  the Government has "established the requisite nexus between the property and the offense."

15  *Mongol Nation*, 56 F.4th at 1252 (quoting Fed. R. Crim. P. 32.2(b)(1)(A)).  Under the RICO

16  forfeiture statute,

17         [w]hoever violates any provision of section 1962 . . . shall forfeit to
           the United States . . .
18         (1) any interest the person has acquired or maintained in violation of
           section 1962;
19         (2) any (A) interest in; (B) security of; (C) claim against; or (D)
           property or contractual right of any kind affording a source of
20         influence over; any enterprise which the person has established,
           operated, controlled, conducted, or participated in the conduct of, in
21         violation of section 1962; and
           (3) any property constituting, or derived from, any proceeds which
22         the person obtained, directly or indirectly, from racketeering activity
           or unlawful debt collection in violation of section 1962.

23  18 U.S.C. § 1963(a).  The Government here relies on (2).

24         To determine whether a property affords a "source of influence" under § 1963(a)(2)(D),

25  courts have found there must be some "substantial connection" between the property and a

26  defendant's violation of § 1962.  *United States v. Pelullo*, 14 F.3d 881, 901 (3d Cir. 1994) (citing

27  18 U.S.C. § 1963(a)).  To find a substantial connection, courts have looked to whether the

28

United States District Court
Northern District of California

4

property is "used to further the affairs of the enterprise" or where "use of the property made the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Neff*, 303 F. Supp. 3d 342, 349 (E.D. Pa. 2018) (quoting *United States v. Angiulo*, 897 F.2d 1169, 1214 (1st Cir. 1990) and *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010)).

District courts across several circuits have applied the "source of influence" test. *See, e.g.*, *United States v. Oil Tanker Bearing International Maritime Organization Number 9116512*, 480 F. Supp. 3d 39, 46 (D.D.C. 2020) ("In RICO-based forfeitures, courts look to whether the property was 'used to further the affairs of the enterprise' or 'made the prohibited conduct less difficult.'") (quoting *Neff*, 303 F. Supp. 3d at 349); *United States v. Bokhari*, 185 F. Supp. 3d 254, 275 n.13 (D. Mass. 2016) ("Properties that are owned by a RICO participant and used by him to further the affairs of a RICO enterprise afford the owner/participant a source of influence over the enterprise and are thus subject to forfeiture under 18 U.S.C. § 1963(a)(2)[D].").

In each of the cases cited by the parties, property found to afford a source of influence was used to further a defendant's crime, or, in other words, used as an instrumentality:

- In *Neff*, the defendant's home office was forfeitable, because it was used to conduct legal activity and "instrumental" to the success of criminal enterprise (*e.g.*, money laundering). *Neff*, 303 F. Supp. 3d at 349–50.

- In *United States v. Gjeli*, the court held that the liquor license of a bar afforded a source of influence because (1) it found ample evidence that the defendant used it to facilitate the RICO enterprise's gambling and loansharking operations; and (2) it found the "liquor license provided a 'façade of legitimacy' that helped to conceal the gambling and loansharking operations." *United States v. Gjeli*, No. cr 13-421-1, 2019 WL 8373425, at *6–7 (E.D. Pa. Nov. 25, 2019).

- In *United States v. Hallinan*, the defendant's private home was forfeitable, because it was used to shelter the activities of the conspiracy and used as the place of business for the head of the RICO enterprise for several months per year. *United States v. Hallinan*, No. cr 16-130-01, 2018 WL 3141533, at *15 (E.D. Pa. June 27, 2018).

United States District Court
Northern District of California

United States District Court
Northern District of California

- In *United States v. Angiulo*, the First Circuit sustained a jury's forfeiture verdict on the ground that the defendant's coffee shop was used to hold meetings and resolve business disputes related to transactions of the criminal enterprise (*e.g.*, loansharking). *Angiulo*, 897 F.2d at 1214–15.

The source of influence test, however, has limits. For instance, in *United States v. Bangiyev*, the court concluded that a bank account was not subject to forfeiture under § 1963(a)(2) because "the Government ha[d] not explained how exactly the account was utilized as an instrumentality or how it gave [defendant] additional influence over the conspiracy." *United States v. Bangiyev*, 141 F. Supp. 3d 589, 599 (E.D. Va. 2015). Although in *Neff*, that the defendant's use of his home office to conduct legal activity for the criminal enterprise created a "substantial connection" between the property and his violation of § 1962, the court found the defendant's home being used as the address for the registered agent for the criminal enterprise did not because the defendant "could have used any address as the address for the registered agent and the use of the particular property did not further the affairs of the enterprise." 303 F. Supp. 3d at 349. *See also United States v. Nicolo*, 597 F. Supp. 2d 342, 357 (W.D.N.Y. 2009) (finding an insufficient connection for forfeiture where defendant used his properties as a mailing address, because it was "merely incidental or fortuitous" in relation to his money laundering offenses); *United States v. King*, 231 F. Supp. 3d 872, 897 (W.D. Okla. 2017) (finding defendant's sporadic use of his home to facilitate illegal activity "may make a crime easier to commit in some trivial or incidental way, which is not enough."); *United States v. Hallinan*, 2018 WL 3141533, at *15 (emphasizing that the defendant's use of his home as the address for corporate filings was not a sufficient connection for RICO forfeiture, because the designation of an address did not further the affairs of the enterprise).

Here, the Government presents a novel theory that the property generally furthered the affairs of HASC because Hells Angels marks generally threatened and intimidated other HA members, non-members and the public. *See* Gov't Reply at 4–5. The Hells Angels marks served to advertise Defendants' influence and membership status to members, non-member associates, rival outlaw motorcycle gangs, and the public. *See* Mot. for POF at 3. The Government

6

1    highlighted evidence that certain patches communicated a wearer's "toughness," *see* Gov't Reply

2    at 5, and what they were "willing to do for HASC." *See* Mot. for POF at 3.  In sum, the use of the

3    Hells Angels and HASC marks in general was emblematic of the criminal enterprise's mission of

4    intimidating others and facilitating crimes.

5         This argument has a basis in the evidence presented at trial.  There was evidence that other

6    HASC defendants' display of the Hells Angels' mark was used to intimidate robbery victims.  It

7    was also used *e.g.* to warn trespassers on a member's marijuana grow.

8         But the Government did not present evidence that *any of the properties which are the*

9    *subject of the Government's forfeiture motion* had any role in any specific criminal acts of any of

10   the three Defendants involved herein.  It does not, for instance, assert that the motorcycles at issue

11   were used in any way in the murder of victim Silva or the brutal beating of Conte or any of the

12   other beating victims who testified at trial.  Indeed, there is no evidence that Defendant's

13   motorcycles and Hells Angels marks were used as an instrumentality to commit any particular

14   crime.  In fact, as respects the purported role of the mark in intimidating others, the victims of

15   beatings and killing in which the three Defendants engaged were internal to the HA enterprise;

16   they were members or prospects of the Hells Angels who did not need symbols or logos to

17   understand the influence, rules, or power of the HASC.  In short, the motorcycles and other items

18   bearing Hells Angels marks were not instrumental to Defendant's RICO-related criminal acts.

19        In contrast to all the cases cited by the parties described above wherein the forfeited

20   property played a direct role in criminal acts, being essential or instrumental to such acts, the

21   Government in this case seeks to broaden the rule to apply to a more amorphous nexus.  It argues

22   that display of the property with HA marks generally furthered the overall mission of the HASC to

23   use intimidation to obtain power, exercise control, and facilitate criminal acts.  In asserting this

24   broad nexus, the Government asks this Court to go beyond current precedence.  Even if such an

25   extension to encompass a general theory of influence under 18 U.S.C. § 1963(a)(2)(D) could be

26   theoretically be countenanced, the Court is reluctant to accept that extension in this case where the

27   proposed forfeiture involves expressive activity which implicates First Amendment interests.

28        C.  The First Amendment

United States District Court
Northern District of California

7

"'[I]mplicit in the right to engage in activities protected by the First Amendment' is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Boy Scouts of America v. Dale*, 530 U.S. 640, 647 (2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). "Clothing identifying one's association with an organization is generally considered expressive conduct entitled to First Amendment protection." *Mongol Nation*, 370 F. Supp. 3d at 1112 (citing *Church of American Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 206 (2d Cir. 2004)). A collective membership mark acts as a symbol that communicates a person's association and support for an organization. *Rivera v. Carter*, No. 2:09-cv-2435-FMC, 2009 WL 8753486, at *11 (C.D. Cal. July 31, 2009). "Though the symbol may at times function as a mouthpiece for unlawful or violent behavior, this is not sufficient to strip speech of its First Amendment protection." *Id.* (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2003)). Prohibiting speech by limiting expressive conduct denoting an association constitutes an attack on a particular viewpoint. *Id.* (citing *Sammartano v. First Judicial District Court, in and for the County of Carson City*, 303 F.3d 959, 971–72 (9th Cir. 2002)).

In *Rivera*, a plaintiff contested forfeiture of items displaying the membership mark of Mongols Motorcycle Club ("Mongol Nation"). *Id.* at *1. The plaintiff was a member of Mongol Nation, but not among the members charged with violating RICO. *Id.* The court stated that "the seizure of property bearing a Mongols membership mark should be considered viewpoint-discriminatory. The Government's ability to seize property bearing the trademark acts as a prior restraint and cannot stand without a judicial determination that the speech is harmful, unprotected, or otherwise illegal." *Id.* at 11. Having determined that the seizure of property was viewpoint-discriminatory, the court in *Rivera* applied strict scrutiny. *Id.* (citing *Crawford v. Lungren*, 96 F.3d 380, 384 (9th Cir. 1996)). It noted that it was arguable whether a compelling reason existed to prevent the display of the Mongols membership mark, but that "the seizure of all property bearing the mark cannot be considered the least restrictive alternative." *Id.* The court held that allowing this type of forfeiture would be inconsistent with the First Amendment's right to freedom of association. *Id.* at 10.

1        Even if seizure of property on the basis of the HA mark were deemed content-based rather

2  than viewpoint-based discrimination, close scrutiny would apply.  The means adopted by the

3  Government must be narrowly tailored.  *See Crawford v. Lungren*, 96 F.3d at 384 ("If the statute

4  is content-based, we apply strict scrutiny to determine whether the statute is tailored to 'serve a

5  compelling state interest and is narrowly drawn to achieve that end.'"). Here, the Government

6  proposed forfeiture on its broad theory of "source of influence" is not sufficiently narrowly

7  tailored in light of the First Amendment.  No case has allowed such forfeiture under comparable

8  circumstances.  The Government has not established the "requisite nexus between the property and

9  the offense."  *Mongol Nation*, 56 F.4th at 1252.

10        This is not to say the forfeiture of property on the basis of expression thereon is never

11  permitted.  Where specific property is used as an instrumentality of a crime, forfeiture is allowed.

12  *See, e.g.*, *Alexander v. United States*, 509 U.S. 544, 550–51 (1993) (rejecting an argument that a

13  RICO forfeiture order for an adult entertainment business violated the First Amendment because

14  "the RICO forfeiture order in this case does not forbid petitioner from engaging in any expressive

15  activities in the future, nor does it require him to obtain prior approval for any expressive

16  activities. It only deprives him of specific assets that were found to be related to his previous

17  racketeering violations.").  In *Alexander*, the criminal enterprise was an adult entertainment

18  business.  The defendant argued the "forfeiture of expressive materials and the assets of businesses

19  engaged in expressive activity was a prior restraint on speech," but the Court reiterated the

20  difference between a prior restraint on speech and a permissible subsequent punishment and

21  rejected defendant's argument that the result should be different because the RICO predicate acts

22  were obscenity offenses.  That is not the case here.

23        D.  Proportionality

24        The Government argues the motorcycles should be forfeitable because "forfeiture…

25  extends to the convicted person's entire interest in the enterprise."  *See* Gov't Reply at 4 (quoting

26  *U.S. v. Busher*, 817 F.2d 1409, 1413 (9th Cir. 1987)).  The Government asserts that the

27  motorcycles are considered property that is "in" the enterprise solely based on the argument that it

28  is common sense since the RICO enterprise is an outlaw motorcycle club.  *Id.*  However, this

United States District Court
Northern District of California

United States District Court
Northern District of California

1 quoted language from *Busher* does not apply to property outside of the enterprise.[1]  "In contrast,

2 the forfeiture of interests outside the enterprise, including 'property that affords a source of

3 influence over an enterprise,' is subject to a rule of proportionality."  *Bangiyev*, 141 F. Supp. 3d at

4 593–94 (quoting *Angiulo*, 897 F.2d at 1211).

5        The rule of proportionality applies to the "source of influence" theory.  *Angiulo*, 897 F.2d

6 at 1212 ("[T]he 'source of influence' theory pertains to the forfeiture of interests outside the

7 enterprise, and a proportionality instruction [is] required.").  Under the "rule of proportionality,"

8 property affording a source of influence over a RICO enterprise pursuant to 18 U.S.C. §

9 1963(a)(2)(D) is only subject to forfeiture "to the extent [it is] tainted by the racketeering activity."

10 *Id.*  In *Neff*, the court ordered forfeiture of defendant's interest in 12.11% of his residential

11 property (which is the portion of the property which was determined to have afforded a source of

12 influence over the RICO enterprise).  *Neff*, 303 F. Supp. 3d at 350.

13        Here, the Government is advancing a source of influence theory under § 1963(a)(2)(D) and

14 the rule of proportionality applies.  Even if the First Amendment were not implicated, there would

15 be a proportionality problem with the forfeiture of the motorcycles.  Under the Government's

16 theory, the true nexus to the criminal enterprise would be the Hells Angels mark on the

17 motorcycle.  Motorcycles have value and other uses for transportation in absence of the mark.

18 Notably, Mr. Ott's motorcycle does not have a Hells Angel mark visible to the general public on

19 it.  *See* Docket No. 3755 Exhibit 10.  Forfeiture of an entire motorcycle, when the theory is that

20 the mark afforded a source of influence over the enterprise, would be disproportionate.  Therefore,

21 forfeiture of the motorcycles would be additionally improper under the rule of proportionality.[2]

22 _____

23 [1] Also, in *Busher*, the defendant did not challenge the forfeitability of his property interests in two corporations under RICO and there was no dispute that his property was "in" the enterprise.  *Id.* at

24 1412.
[2] "The Excessive Fines Clause [of the Eighth Amendment] limits the government's power to

25 extract payments, whether in cash or in kind, as punishment for some offense."  *Alexander v. United States*, 509 U.S. 544 at 558 (quoting *Austin v. United States*, 509 U.S. 602, 609–610

26 (1993).  "[C]riminal forfeiture operates in personam against a defendant" and is imposed "as punishment following conviction of a substantive offense."  *United States v. Lazarenko*, 476 F.3d

27 642, 647 (9th Cir. 2007).  "The eighth amendment prohibits only those forfeitures that, in light of all the relevant circumstances, are grossly disproportionate to the offense committed."  *Busher*,

28 817 F.2d at 1415.  Here, the proposed forfeiture is rejected on § 1963 and First Amendment

United States District Court
Northern District of California

### III.   CONCLUSION

The Court **DENIES** the Government's Third Amended Application for Preliminary Order of Forfeiture from Defendants Joseph Nelson, Russell Ott, and Brian Wendt as to the motorcycles and items bearing Hells Angels marks.  The Court **GRANTS** the requested forfeiture of firearms and ammunition.

This Order disposes of Docket No. 3751.


**IT IS SO ORDERED**.


Dated: September 5, 2024

_____
EDWARD M. CHEN
United States District Judge

---

grounds.  If it were not, Eighth Amendment considerations such as (1) the harshness of the total penalty (not just forfeiture) in light of the gravity of the offense, (2) sentences imposed for other offenses; and (3) sentences imposed for similar offenses in other jurisdictions would need to be analyzed.  *Id.* at 1415 (citing *Solem v. Helm*, 463 U.S. 277, 292 (1983)).

11